Joseph & Norinsberg
Fighting for Employee Justice

**Downtown Manhattan Office**
One World Trade Center, 85th Floor
New York, New York 10007

**Midtown Manhattan Office**
825 Third Avenue, Suite 2100
New York, New York 10022

**Newark Office**
One Gateway Center, Suite 2600
Newark, New Jersey 07102

**Philadelphia Office**
1650 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103

**Boston Office**
225 Franklin Street, 26th Floor
Boston, Massachusetts 02110

**Orlando Office**
300 N. New York Avenue, Suite 832
Winter Park, Florida 32790

September 28, 2026

**VIA ECF**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 21B
New York, NY 10007

**Re: Rana v. JPMorgan Chase Bank, N.A. et al.; Case No. 1:26-cv-06351 (LAK)**

Dear Judge Kaplan:

We represent Plaintiff Chirayu Rana and write jointly with Defendants' counsel pursuant to Your Honor's direction at the September 15, 2026 conference that the parties meet and confer about the non-party subpoenas served by Defendants JPMorgan Chase Bank, N.A. ("JPMC") and Lorna Hajdini ("Hajdini") and file a joint submission to this Court by September 28, 2026 to provide an update on the parties' positions.

## I. Plaintiff's Position

### A. Background

As alleged in the Complaint, Mr. Rana's career at JPMC ended because he was subjected to unlawful sexual violence, harassment, discrimination, and retaliation. On August 26, 2026, Defendant JPMC sent Plaintiff notices for seven of Plaintiff's former employers, while Defendant Hajdini sent Plaintiff a subpoena notice for one of Plaintiff's former employers. In addition to the employer subpoenas, Defendant Hajdini sent a subpoena notice for the complete content of all of Plaintiff's telephone records, text message records, voicemails, billing records, and location data for an almost two-year period of time. Finally, Defendant JPMC subpoenaed Plaintiff's ex-partner for incredibly intimate details related to her relationship with Plaintiff, including requesting reproductive health information. Plaintiff's counsel promptly objected to service of the subpoenas on August 27, 2026, stated an intention to move to quash and requested that service be stayed until

the issue was resolved by the Court. However, Defendants' counsel confirmed that most subpoenas had been served on the same date Plaintiff received notice or were in the process of service being effectuated. The parties conducted a meet and confer on September 1, 2026 but were unable to reach resolution on the issued subpoenas.

Pursuant to Your Honor's direction, the parties held an additional meet and confer on September 23, 2026. While the parties were unable to reach consensus on all outstanding issues related to the non-party subpoenas, we were able to further narrow some of the disputes. However, the disputes outlined herein remain.

**B. <u>Former Employer Subpoenas Issued by Defendants JPMC and Hajdini</u>**

Defendant JPMC subpoenaed seven[1] of Plaintiff's employers to demand that the following documents be produced:

1. Plaintiff's personnel file;
2. Documents sufficient to identify the dates of Plaintiff's employment or engagement with the employer and the position(s) he held;
3. Documents sufficient to show the compensation and benefits received by Plaintiff from employer;
4. Documents sufficient to identify any warning, reprimand, demotion, discipline and/or corrective action Plaintiff was subject to while an employee of, or engaged by, employer;
5. Documents sufficient to identify whether Plaintiff requested any leave(s) of absence as well as the duration and reason(s) for any such leaves requested and/or taken by Plaintiff;
6. All Documents relating to any complaints made by Plaintiff during or after his employment or engagement with employer, including without limitation any complaint regarding discrimination, harassment, assault, retaliation, or equal pay;
7. Documents sufficient to identify the reason for Plaintiff's separation from employer; and
8. Any and all settlement, severance, and/or separation agreements entered into between employer and Plaintiff.

Defendant JPMC has asserted that the information is relevant because it bears on Plaintiff's credibility, his assertion that he was successful and highly compensated in the industry, and his damages. Defendant JPMC further argues that it is relevant because Plaintiff allegedly made similar allegations against a prior employer.

The parties were able to significantly narrow the dispute related to Defendant Hajdini's employer subpoena to one of Plaintiff's former pre-JPMC employers. However, similar to Plaintiff's objections to Defendant JPMC's requests, Plaintiff's objections to Requests 11 and 12 remain: Request 11 seeks any separation/release/severance agreement contemplated or entered into between Plaintiff and employer and Request 12 seeks the reason(s) for Plaintiff's separation

[1] In addition to the request identified herein, JPMC's subpoena to Plaintiff's post-JPMC employer also includes three additional requests to which Plaintiff is no longer objecting.

from the employer, including whether the separation was voluntary or involuntary, whether it was related to any complaint, investigation, alleged misconduct by or concerning Plaintiff, performance issue, disciplinary issue, settlement, separation agreement, severance agreement, release, resignation, termination, layoff, or negotiated exit.

The Second Circuit routinely holds that seeking such information from prior employers is harassing, damaging, prejudicial, and improper. See e.g., Vuona v. Merrill Lynch & Co., 2011 U.S. Dist. LEXIS 131491, at *23 (S.D.N.Y. Nov. 11, 2011) (quashing subpoena seeking records from former employers); Henry v. Morgan's Hotel Grp., Inc., 2016 U.S. Dist. LEXIS 8406, at *10 (S.D.N.Y. Jan. 25, 2016) (same); Dowling v. New York-Presbyterian/Weill Cornell Med. Ctr., 2020 U.S. Dist. LEXIS 47001, at *3 (S.D.N.Y. Mar. 16, 2020) (quashing subpoena to Plaintiff's non-party former employer seeking all employment records where "Defendants did not assert at the time of Plaintiff's employment termination that Plaintiff had misled Defendants in her report of her prior employment."); Guercia v. Equinox Holdings, Inc., 2013 U.S. Dist. LEXIS 71215, at *4 (S.D.N.Y. May 20, 2013) (former employer subpoena quashed because "[w]hen [Defendant] made the decisions challenged in this lawsuit, it must have done so on the basis of information it actually possessed.").

In Vuona, the defendant subpoenaed the plaintiffs' records from a former employer on the basis that the plaintiffs had "assert[ed] they were successful at other financial institutions." Vuona, 2011 U.S. Dist. LEXIS 131491, at *23. The Court held:

> The Court is completely unconvinced that these documents are relevant to this dispute . . . An employee's performance evaluations at one job and work environment may, or may not, bear on his or her success at a future job. Simply put, the issue here is whether [defendant's] decision-making as to Plaintiffs was based on valid considerations or was influenced by gender bias. On the record before the Court, Plaintiffs' work histories have nothing to do with that. And any peripheral relevance the requested documents might conceivably have is decisively outweighed by the potential for harassment or reputational injury presented by a subpoena to such a former employer. [Defendant's] request to subpoena documents from Plaintiffs' prior employers is, therefore, denied in its entirety.

Further, with respect to the argument that former employer records are necessary to test Plaintiff's credibility, the Second Circuit has also made clear that even if former employer records hold some relevance as to credibility, "the marginal benefit…is [] small, and outweighed by the harm that would be done by obtaining them by subpoena from [Plaintiff's] former employers." Guercia v. Equinox Holdings, Inc., 2013 U.S. Dist. LEXIS 71215, at *14 (S.D.N.Y. May 20, 2013). See also Rodriguez v. NNR Global Logistics USA Inc., 2016 U.S. Dist. LEXIS 46093, at *15-16 (E.D.N.Y. Mar. 31, 2016) (granting motion to quash as "prior employment records are not likely to lead to the discovery of admissible evidence — such evidence, as Defendants describe it, would be inadmissible under Federal Rule of Evidence 404(a), which provides that '[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith.'").

For all of these reasons, Plaintiff requests that the non-party employer subpoenas issued by Defendant JPMC are quashed in their entirety, and that Requests 11 and 12 of the non-party employer subpoena issued by Defendant Hajdini are similarly quashed. None of these categories of information are relevant to establishing whether Mr. Rana suffered from sexual violence, harassment, discrimination, and retaliation *while employed at JPMC*. See e.g. Rodriguez v. NNR Global Logistics USA Inc., 2016 U.S. Dist. LEXIS 46093, at *14 (E.D.N.Y. Mar. 31, 2016) (plaintiff's performance at former jobs bears no relevance to pending claims when defendants "have never asserted that [their] decision to terminate Plaintiff was influenced by her prior employment").

### C. Defendant Hajdini Improperly Seeks All Phone Records and Location Tracking

Defendant Hajdini's subpoena to Verizon seeks the following information:

1. Records of all incoming and outgoing calls for Plaintiff's telephone number from March 1, 2024 to December 31, 2025, including, but not limited to, the location of the cell phone at the time calls were placed/received, originating number, terminating number, call date, call time and call duration.
2. Records of all incoming and outgoing text messages sent or received by the telephone number from March 1, 2024 to December 31, 2025, including, but not limited to, the location of the cell phone at the time messages were sent/received, originating number, terminating number, message date and message time.
3. Any billing records associated with the telephone number from March 1, 2024 to December 31, 2025 (personal financial-account numbers and payment-card numbers may be redacted).
4. Records regarding any data used by any device associated with the telephone number from March 1, 2024 to December 31, 2025, including location of the cell phone at the time of data usage.
5. Records regarding any devices associated with the telephone number from March 1, 2024 to December 31, 2025, including the dates of association and any IMEI, IMSI, ICCID, SIM, ESN, MEID, MAC address, or other device or network identifier.
6. Records identifying any other carrier or provider if the Plaintiff's telephone number was ported, transferred, or not serviced by Verizon during any portion of the period from March 1, 2024 to December 31, 2025, including the effective date of each port, transfer, activation, or deactivation.
7. The complete content of all:
    - SMS, MMS, and other carrier-based text messages sent from or received by Plaintiff's telephone number from March 1, 2024 through December 31, 2025, including all text, images, videos, audio files, attachments, and other media transmitted with such messages; and
    - Voicemail or visual-voicemail messages left for, received by, sent from, or stored in connection with the Rana Telephone Number from March 1, 2024 through December 31, 2025, including any associated audio files, transcripts, caller information, timestamps, metadata, and records

> reflecting when each voicemail was received, accessed, saved, forwarded, downloaded, or deleted.

A subpoena commanding a non-party telecommunications provider to produce "all phone records" is "plainly overbroad and impermissible…[and] [t]he overbreadth of the subpoena is…an independent basis to quash it." Morocho v. Stars Jewelry by The A Jeweler Corp., 345 F.R.D. 292, 294 (S.D.N.Y. 2024). Not only is the overbreadth of the subpoena plain on its face, but the subpoena also constitutes an extraordinary intrusion into Plaintiff's privacy and the privacy of every other individual who exchanged communications with Plaintiff during the requested time period. Defendant Hajdini's position that such data is relevant to establish the specific dates, approximate time ranges, and locations of each incident alleged in the Complaint is speculative at best. Neither Defendant Hajdini nor Mr. Rana has produced responsive documents or been deposed. As the parties discussed, to the extent Defendant maintains the position that such data will be lost if not requested at this juncture, it is Plaintiff's position that a preservation letter is an adequate avenue to pursue.

**D. Seeking Intimate and Reproductive Health Information from a Non-Party Is Unwarranted**

Finally, Defendant JPMC seeks extraordinarily private information from a non-party who was once in a relationship with Plaintiff regarding information for which Plaintiff has a privacy interest, including whether she engaged in monogamy while in a relationship with Plaintiff and the status of her reproductive health during their relationship – even going so far as to request her medical records. Defendant JPMC should not be permitted to interfere with a non-party's privacy as a vehicle to interfere with Plaintiff's privacy in order to harass him. It is Plaintiff's understanding that such requests may be moot given Defendant JPMC's representations during the September 15, 2026 court conference; however, to the extent that is not the case, Plaintiff's objections remain.

## II. Defendant JPMC's Position

JPMC's subpoenas[2] are narrowly tailored to seek relevant, discoverable information that Plaintiff himself put in controversy through his Complaint, including that:

- He was "[o]nce one of the private credit industry's leading deal originators, with annual compensation will over $2,000,000…" Compl. ¶ 29;
- Defendants "sought…to erase him from an industry in which he had spent more than a decade building his reputation…" and "have made him effectively unemployable." *Id.* ¶¶ 239; 243;
- He had a "remarkable career." *Id.* ¶ 244;

[2] Plaintiff incorrectly states that "[o]n August 26, 2026, Defendant JPMC sent Plaintiff notices for seven of Plaintiff's former employers." This is not accurate. Counsel for JPMC served notice six former employer subpoenas on August 25, with the exception the subpoena Plaintiff's post-JPMC employer, Bregal Sagemount, of which notice was provided on August 26.

- After leaving JPMC, he "secured comparable employment at Bregal Sagemount" "in a position with a total annual compensation of approximately $2.5 million," where he "quickly became the top producer on the credit team." *Id.* ¶¶ 205; and

- Defendants have caused him to suffer "lost business and employment opportunities, and permanent reputational and career harm." *Id.* ¶ 300;

Counsel for JPMC pointed to these allegations and offered a reasonable compromise: if Plaintiff omits these allegations from his Complaint and agrees not to make such representations during the course of these proceedings, then JPMC could consider limiting the scope of its subpoenas. Plaintiff's counsel declined the offer.

Having defined the relevant scope of information in this lawsuit through his extraordinarily detailed allegations in his 320-paragraph Complaint, Plaintiff should not now be permitted to prevent JPMC from testing those allegations or seeking information bearing on their truth. Plaintiff effectively asks this Court to require JPMC to accept his allegations as true without permitting discovery regarding them. That would be akin to requiring Plaintiff to accept JPMC's denials of those allegations without permitting further discovery. Plaintiff's attempt at one-sided discovery is improper and should not stand. JPMC's subpoenas seek only relevant, non-privileged information proportional to the needs of the case and therefore should not be quashed.

**A. The Former Employer Subpoenas are Directly Relevant to Plaintiff's Own Allegations and JPMC's Defenses**

Information about Plaintiff's performance and compensation at other employers in the financial services industry is directly relevant to liability and damages because his Complaint alleges that Defendants harmed his professional reputation, career, compensation, and potential earnings. Unlike in *Vuona v. Merrill Lynch & Co.*, where the court held that "an employee's performance evaluations at one job and work environment may, or may not, bear on his or her success at a future job," JPMC does not seek information regarding Plaintiff's prior work performance to substantiate the quality of his performance at JPMC. 2011 WL 5553709, at *9 (S.D.N.Y. Nov. 15, 2011).[3] Instead, JPMC issued discovery regarding Plaintiff's own characterizations of his career trajectory and performance record in the industry.

Plaintiff's prior employment records are also relevant because JPMC has evidence that Plaintiff made allegations against at least one prior employer similar to those raised here. Such complaints are discoverable because they bear on Plaintiff's credibility and JPMC's defenses. *See Padilla*, 2021 WL 4429785, at *1–3 (denying motion to quash subpoena seeking personnel records and documents reflecting internal complaints from a prior employer, holding that "[t]o the extent that any such complaints exist, they may speak to Plaintiff's motive and/or credibility in filing the instant lawsuit against Defendants."); *see also Ireh v. Nassau Univ. Med. Ctr.*, 2008 WL 4283344, at *6 (E.D.N.Y. Sept. 17, 2008) (allowing subpoena to require prior employer to produce

[3] *Dowling* and *Rodriguez* are readily distinguishable for the same reason—JPMC does not seek information from Plaintiff's prior employers to suggest he has a propensity for certain performance deficiencies. 2020 WL 1243780, at *3 (S.D.N.Y. Mar. 16, 2020); 2016 WL 11673310, at *5 (E.D.N.Y. Mar. 31, 2016).

documents "regarding any internal or external complaints of race or national origin discrimination made by Plaintiff" against the former employer).

JPMC also has reason to believe Plaintiff misrepresented his employment history on his job application, which is relevant to its after-acquired evidence defense that may limit his available remedies. *See e.g.*, *Padilla*, 2021 WL 4429785, at *3 (refusing to quash subpoena seeking personnel records from prior employers since such records "will allow Defendants to determine whether Plaintiff lied on her employment application") *citing Greene v. Coach, Inc.*, 218 F. Supp. 2d 404, 412 (S.D.N.Y. 2002). Indeed, two of Plaintiff's former employers already have produced documents suggesting that Plaintiff was not truthful in his representations to JPMC regarding the reasons he left those former employers and the dates of his employment.[4]

Plaintiff offers no evidence that service of these subpoenas on entities with whom he was formerly employed would cause him harm, reputational or otherwise, particularly given his allegation that his career has already been "irreparably destroyed" and that he has been "effectively blackballed" from the industry. Compl. ¶ 29. *See Ghonda v. Time Warner Cable, Inc.*, 2017 WL 395111, at *3 (E.D.N.Y. Jan. 27, 2017) (denying motion to quash subpoena to plaintiff's former employer, finding the plaintiff's claim of harm to be "conclusory and speculative.").

Finally, Plaintiff objects to the subpoena to his post-JPMC employer, Bregal Sagemount, but on September 8, counsel for Plaintiff provided a copy of a subpoena to that *same entity* in "advance of anticipated service." That subpoena includes a request for all communications Bregal Sagemount has in its possession regarding Plaintiff —a clear admission as to the relevance of the documents JPMC seeks.

For these reasons, JPMC's subpoenas to Plaintiff's former employers seek relevant, discoverable information and should not be quashed.

### B. Plaintiff's Objection to the Ex-Partner Subpoena is Largely Moot and Otherwise Meritless

The subpoena to Plaintiff's former partner likewise seeks relevant evidence regarding Plaintiff's own allegation that "[a]t all relevant times" he was "in a committed, monogamous, live-in relationship with his girlfriend," i.e., the subpoena recipient. Compl. ¶ 72. Plaintiff made his relationship status relevant to his claims and cannot in good faith assert a "privacy interest" in information he himself made publicly available through his Complaint.

The subpoena to the former partner also seeks documents sufficient to establish whether the recipient and Plaintiff were expecting and/or had a child during his employment with JPMC. As counsel for JPMC has explained repeatedly to counsel for Plaintiff, Plaintiff requested parental leave while employed at JPMC, that is, during the same period he purports to have been in a "monogamous" relationship with the subpoena recipient. JPMC has reason to believe he submitted false documentation to the firm in order to obtain leave to which he was not entitled, a terminable offense. The subpoena seeks information bearing directly on this issue, on Plaintiff's credibility,

---

[4] *Henry v. Morgan's Hotel Group* is inapposite because JPMC has far more than "wholesale speculation" supporting its position that Plaintiff made false representations. 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016).

and on JPMC's after-acquired evidence defense. *See e.g., Ahing v. Lehman Bros*., 2000 WL 460443, at *11 (S.D.N.Y. Apr. 18, 2000) *citing McIntosh v. Cadbury Beverages, Inc.,* 1999 WL 643661,*16 (D. Conn. Aug. 10, 1999) ("The after-acquired evidence doctrine limits damages when an employer discovers evidence of prior employee misconduct after the employee's actual or constructive discharge, if that misconduct is 'of such severity that the employee would have been terminated on those grounds alone if the employer had known of it at the time of discharge.").

As prefaced during the September 15, 2026 hearing, and reiterated during the parties' September 23, 2026 conferral, JPMC expects the particular issue of the former partner producing sensitive reproductive health information may become moot because the subpoena recipient's counsel represented that no documents or communications responsive to that request exist. The subpoena should not be quashed or modified on this basis, however, as the absence of responsive records is in and of itself salient to JPMC's defenses.

## III. Defendant Hajdini's Position

Plaintiff Chirayu Rana accuses Defendant Lorna Hajdini, a female banking colleague he incorrectly characterizes as his "supervisor," of secretly administering the perfect cocktail of a date rape drug to incapacitate him and an erection-enabling drug, and then raping him, and committing other sexual assaults at multiple locations. These are extraordinary allegations of criminal conduct; and they are categorically ***false***. Ms. Hajdini ***never*** had a romantic relationship with Plaintiff, never had sexual contact with him, never drugged him, and never entered the residence where he says the rapes occurred. Nor did she engage in any of the other misconduct Plaintiff falsely attributes to her. Sexual assault cases are difficult—and often devolve into a "he said, she said" dispute. But this case need not turn solely on competing accounts. Objective third-party evidence exists that can test Plaintiff's allegations, and he should not be permitted to place those allegations at the center of this case while blocking discovery into them.

### A. The Morgan Stanley Subpoena

The Morgan Stanley subpoena goes directly to the credibility and plausibility of Plaintiff's extraordinary, and false, allegations.[5] In addition to accusing Ms. Hajdini, Plaintiff wrote in an online chat, under his own name, that a ***male*** manager at ***Morgan Stanley*** had drugged and raped him, and that a separation agreement—signed "under duress"—prevented him from pursuing claims against Morgan Stanley. Amid the media attention generated by Plaintiff's accusations, reporters from *The Juggernaut* confronted Plaintiff with those Morgan Stanley rape allegations. Plaintiff initially disclaimed knowledge, calling the post a "Deepfake"—i.e., "a digital image, video, voice, etc. that has been convincingly generated or altered to misrepresent someone as doing or saying something that was not actually done or said." *See* "*Deepfake*," Merriam-Webster.com Dictionary (2026), https://tinyurl.com/m492n2uw. But after Ms. Hajdini alleged in state court that Plaintiff had authored the posting, Plaintiff changed course and admitted that he had. NYSCEF

[5] As indicated in Plaintiff's position above, Plaintiff concedes the relevance of Request Nos. 1-6 and 10 of the Morgan Stanley subpoena, and is challenging only Request Nos. 11 and 12. Ms. Hajdini, for purposes of this motion and based on the parties' conferral, is not currently pursuing Request Nos. 7-9 or the aspects of Request 10 that do not relate to Plaintiff's attempts to transfer positions and/or locations while employed at Morgan Stanley.

Doc. 134 at 3, 9. He then went further, specifically averring that the Morgan Stanley rape allegations were not about Morgan Stanley at all, but were instead "camouflag[e]" for his experience with Ms. Hajdini at JPMC.

That explanation is false and does not square with either the posting or Plaintiff's actual Morgan Stanley employment. The posting identifies Morgan Stanley and a male former boss and recites facts specific only to Morgan Stanley: Plaintiff worked in California, sought an internal transfer, was investigated by HR, and entered a separation agreement that he said prevented him from pursuing claims against the firm. Those facts do not map onto his allegations concerning Ms. Hajdini or JPMC. Rather, Ms. Hajdini contends—and Morgan Stanley's records together with other third-party evidence, including the website's records, will confirm—that Plaintiff falsely accused a male Morgan Stanley manager of the same extraordinary misconduct he now attributes to Ms. Hajdini: rape, sexual assault, and forced drug use.

That gives Plaintiff an obvious reason to distance himself from the Morgan Stanley rape allegations. The allegations do not merely resemble one another; they follow the exact same extraordinary pattern. Plaintiff claims that, at two major financial institutions, different workplace superiors—one male, one female—raped and drugged him. The striking similarity, and remarkable recurrence of this highly unusual pattern bears directly on Plaintiff's credibility and the plausibility of his allegations here. *See, e.g., Tomaino v. O'Brien*, 315 F. App'x 359, 361 (2d Cir. 2009) (affirming admission of prior accusations where "strikingly similar claims" supported an inference that the plaintiff's later testimony "was not credible"); *cf. United States v. Henthorn*, 864 F.3d 1241, 1252 & n.8 (10th Cir. 2017) (describing as a "common sense observation" that "a string of improbable incidents is unlikely to be the result of chance").

Against that backdrop, Plaintiff rightly concedes that nearly all of the Morgan Stanley subpoena is proper. *Supra* n.2. The only remaining dispute concerns Requests 11 and 12, which seek Plaintiff's Morgan Stanley separation agreement and documents concerning the reasons and circumstances of his separation. Plaintiff thus accepts discovery into his Morgan Stanley rape allegations and transfer efforts, but seeks to withhold the agreement he made part of those allegations and the circumstances surrounding his departure. Both are directly relevant. The agreement (No. 11) and termination records (No. 12) can help show whether the post was about Morgan Stanley, and not "camouflage" for allegations concerning Ms. Hajdini and JPMC. They may also confirm whether there was a separation agreement and what allegations or claims it resolved.

This is not the generalized former employer-related discovery addressed in Plaintiff's authorities, where prior work histories had "nothing to do with" the claims at issue. *Supra* at 3 (citing *Vuona v. Merrill Lynch & Co.*, 2011 U.S. Dist. LEXIS 131491, at *23 (S.D.N.Y. Nov. 11, 2011)). Here, Requests 11 and 12 seek objective records concerning a Morgan Stanley episode that Plaintiff himself tied directly to this case by claiming his Morgan Stanley rape allegations were "camouflage" for allegations concerning Ms. Hajdini. *See Gardner v. Cape Cod Healthcare, Inc.*, 344 F.R.D. 127, 134 (D. Mass. 2023) (permitting former employer discovery where "specific facts . . . directly connect" the prior employment event to the disputed issue). The Court should permit the targeted discovery sought by Requests 11 and 12 of the Morgan Stanley subpoena.

**A. <u>The Verizon Subpoena</u>**

The Verizon subpoena likewise seeks objective third-party evidence concerning allegations Plaintiff himself has placed at issue. Plaintiff alleges sexual assaults and other sexual misconduct at multiple locations, including rapes at a family member's Manhattan apartment. Compl. ¶¶ 79–97. He also has produced a perjured affidavit—from a biased witness—that purports to place Ms. Hajdini at an apartment on an unidentified date where he claims he was sexually assaulted. Yet, despite being asked repeatedly by JPMC and Ms. Hajdini, he does not identify that apartment's location or specify with any meaningful precision when several of the alleged incidents occurred. *Id.* Ms. Hajdini categorically denies those allegations. She has never had romantic or sexual contact with Plaintiff, entered his or any family member's residence, or engaged in any of the misconduct alleged. Verizon location records can therefore provide objective evidence as to whether the parties were even in the same place when Plaintiff claims these events occurred. *See Clay v. Lambert*, 2017 WL 4755152, at *3–5 (D. Colo. Oct. 20, 2017). Plaintiff should not be permitted to make serious and extraordinary allegations that he was drugged and raped at multiple locations, provide a false affidavit of a biased third party to supposedly confirm Ms. Hajdini's presence at one of those locations, and then deprive Ms. Hajdini of objective third-party data that would refute those false allegations. If Plaintiff was really involuntarily drugged and then raped, one would think that he would want to obtain location documents that could put the alleged rapist in the same location as him. It comes as no surprise that it is Ms. Hajdini who wants the production of this third-party, objective evidence and it is Plaintiff who is seeking to block it.

Nonetheless, Ms. Hajdini has already offered to narrow the location-data requests to the specific dates, approximate times, and locations of the alleged incidents once Plaintiff identifies them. Plaintiff has refused to do so. He should not be permitted to withhold the particulars needed to narrow the request and then invoke overbreadth to quash it. *See Waters v. Hall*, 2020 WL 12948069, at *3 (S.D. Ala. Apr. 21, 2020) (finding cell-phone records "relevant to determining the location" of the subscriber and permitting production of "incoming and outgoing call and text logs" and "GPS and active cell tower coordinates"). If further narrowing is warranted, the Court should direct Plaintiff to immediately provide those particulars and permit Ms. Hajdini to conform the subpoena.

The remaining Verizon records also concern allegations central to Plaintiff's claims. Plaintiff alleges a campaign of anonymous threatening calls, voicemails, and texts that he attributes to JPMC personnel. Compl. ¶¶ 147–154. He claims those communications contained nonpublic information known to JPMC employees, reached his personal number—which he says was not public—and, in the case of the September texts, were preserved with "originating metadata." *Id.* ¶¶ 149–154. Verizon records concerning the originating and terminating numbers, timing, devices, and account activity can independently test those allegations and Plaintiff's attribution of the communications to JPMC. *E.g.*, *Systems Products & Solutions, Inc. v. Scramlin*, 2014 WL 3894385, at *9–10 (E.D. Mich. Aug. 8, 2014) (refusing to quash AT&T subpoena seeking "all usage records for outgoing and incoming calls" where that information "would touch on matters that fall within the heartland of what is relevant").

Moreover, Plaintiff also told *The Juggernaut* that he possessed supporting evidence, including "forensic device analysis." When the publication later sought the promised materials, Plaintiff did not provide them and instead asserted that his account had been "compromised." *Id.* Verizon records concerning the devices and identifiers associated with Plaintiff's number, as well as account activity that could reflect unauthorized access or compromise—including activation, deactivation, or device or SIM changes—can test that explanation. Plaintiff cannot premise claims on the source and authenticity of telephone communications, invoke metadata and forensic evidence in support, and then block discovery from the provider capable of testing those assertions.

Taken together, Ms. Hajdini has offered incident-specific narrowing of the location data requests, and the remaining categories seek records tied to Plaintiff's own allegations concerning anonymous communications, metadata, forensic evidence, and a supposedly compromised account. These materials are therefore discoverable, and any residual privacy concerns can be addressed through appropriate discovery protocols and a protective order; not by foreclosing the discovery altogether.[6] The Court should therefore permit the Verizon subpoena as served or, alternatively, require Plaintiff to immediately identify the date, approximate time, and location of each alleged sexual assault so the location requests can be narrowed accordingly.

Respectfully submitted,

*/s/ Jon L. Norinsberg*
Jon Norinsberg, Esq.
Joseph & Norinsberg, LLC
825 Third Ave., Suite 2100
New York, NY 10022
Tel.: (212) 227-5700
jon@employeejustice.com

*Attorneys for Plaintiff*

*/s/ Samuel S. Shaulson*
Samuel S. Shaulson, Esq.
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6000
sam.shaulson@morganlewis.com

*Attorneys for Defendant Lorna Hajdini*

*/s/ Cardelle B. Spangler*
Cardelle B. Spangler, Esq.
Winston Taylor LLP
300 N. LaSalle Dr.
Chicago, Illinois 60654
Telephone: (312) 558-7541
cardelle.spangler@winstontaylor.com

*Attorneys for Defendant JPMC*

[6] Nor is Plaintiff's proposed preservation letter an adequate substitute. While that may help ensure evidence is not lost, it does not provide Ms. Hajdini access to evidence needed to test allegations already at issue, including in upcoming depositions.