UNITED STATES U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHIRAYU S. RANA,

Plaintiff,

-against-

JPMORGAN CHASE BANK, N.A., LORNA HAJDINI, BRANDON GRAFFEO, JON WOLTER, and KELLY CROWE,

Defendants.

Case No. 26-cv-06351-LAK

**DEFENDANT LORNA HAJDINI'S ANSWER TO PLAINTIFF'S COMPLAINT, DEFENSES, AND COUNTERCLAIMS**

Defendant/Counterclaim Plaintiff Lorna Hajdini ("Ms. Hajdini"), by and through her undersigned counsel, respectfully submits her Answer, Defenses, and Counterclaims to Plaintiff/Counterclaim Defendant Chirayu Rana's ("Plaintiff") Complaint.

Ms. Hajdini categorically and unequivocally denies each and every allegation of unlawful conduct, including any allegations of sexual harassment, sexual assault, gender discrimination, retaliation, drugging, and racial discrimination asserted by Plaintiff. These allegations are entirely false, malicious, and fabricated, and were concocted for the improper purpose of Plaintiff's personal enrichment at the expense of Defendants and others. Indeed, Ms. Hajdini has never engaged in any sexual or romantic conduct of any kind with Plaintiff and has never even been to the apartment where Plaintiff alleges Ms. Hajdini supposedly sexually assaulted him. Plaintiff's conduct is not an isolated incident but appears to be part of a broader pattern and scheme in which he has repeatedly advanced knowingly false and some of the most offensive accusations imaginable for personal gain. By way of example, Plaintiff has falsely claimed in writing that his father died to obtain paid bereavement leave when, in fact, his father was and remains alive. Plaintiff also made up eerily similar fabricated allegations of sexual and other misconduct against

a supervisor at a prior place of employment—specifically, that Plaintiff's supervisor drugged and raped him. As a direct and proximate result of Plaintiff's conduct, Ms. Hajdini has suffered severe and lasting harm to her reputation, career, personal relationships, and emotional well-being, including the enduring stigma associated with these false allegations in an increasingly permanent digital environment. Through the defeat of Plaintiff's falsified claims in this action and the prosecution of her counterclaims, Ms. Hajdini seeks to vindicate her name, mitigate the substantial damage inflicted upon her, and hold Plaintiff accountable for his depraved and unlawful conduct.

Ms. Hajdini hereby responds to the allegations in the Complaint of Plaintiff in accordance with the numbered paragraphs as follows:

1. Denied.

2. Denied.

3. Denied.

4. Denied.

5. Ms. Hajdini denies ever referring to Plaintiff as "brown boy." The allegations in paragraph 5 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the alleged comments attributed to Mr. Goodrich. Ms. Hajdini denies the remaining allegations in paragraph 5.

6. The allegations in paragraph 6 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 6.

7. Denied.

8. The alleged photograph and image included in paragraph 8 reflect and refer to written and/or printed documents that speak for themselves. Ms. Hajdini denies the remaining allegations in paragraph 8.

9. The alleged and depicted group chat message is a written document that speaks for itself. Ms. Hajdini denies the remaining allegations in paragraph 9.

10. Denied.

11. The allegations in paragraph 11 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the alleged comments attributed to Mr. Goodrich. Ms. Hajdini denies the remaining allegations in paragraph 11.

12. Denied.

13. Denied.

14. The allegations in paragraph 14 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the alleged comments attributed to Mr. Goodrich. Ms. Hajdini denies the remaining allegations in paragraph 14.

15. The allegations in paragraph 15 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 15.

16. Denied. The depicted graphic/image in paragraph 16 is a written and/or printed document that speaks for itself. To the extent a further response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations concerning what "[e]very

manager and every member of the team" purportedly knew and how Plaintiff allegedly felt. Ms. Hajdini denies the allegations in paragraph 16.

17. Ms. Hajdini denies that Plaintiff was not "accepted as a valued colleague" or that he was "singled out, reduced to his race and national origin, and treated as an outsider from the day he joined the team." The remaining allegations in paragraph 17 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. Ms. Hajdini lacks knowledge or information sufficient to admit or deny those remaining allegations in paragraph 17.

18. Denied.

19. The allegations in paragraph 19 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that that Plaintiff, through counsel, submitted a written complaint on approximately May 20, 2025, which is a written document that speaks for itself. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 19 concerning Plaintiff's leave from JPMC.[1] Ms. Hajdini denies subjecting Plaintiff to any "sexual coercion" of any kind or engaging in any kind of sexual or romantic conduct of any kind with Plaintiff and denies the remaining allegations in paragraph 19.

20. Ms. Hajdini denies subjecting Plaintiff to any retaliation of any kind. The alleged June 5, 2025 email complaint is a written document that speaks for itself. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations concerning alleged statements attributed to others. Ms. Hajdini denies the remaining allegations in paragraph 20.

---

[1] Herein, Ms. Hajdini refers to Defendant JPMorgan Chase Bank, N.A. as "JPMC," "JPMorgan," or the "Company."

21. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 21.

22. Any alleged recorded conversation is a document or file that speaks for itself. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 22.

23. Ms. Hajdini denies ever targeting, racially intimidating, or threatening Plaintiff or his family for any reason, including sending or having any involvement whatsoever regarding the "threat warning" referenced in paragraph 23, which is a document that speaks for itself. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 23.

24. Ms. Hajdini denies ever threatening Plaintiff for any reason or referring to Plaintiff as "brown" or "brown boy," including but not limited to in the "group chats" referenced in paragraph 24, which are written documents that speak for themselves. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations concerning alleged statements attributed to others. Ms. Hajdini denies the remaining allegations in paragraph 24.

25. Ms. Hajdini denies ever mocking or ridiculing Plaintiff on the basis of his Nepali heritage and denies ever threatening Plaintiff for any reason, including sending or having any involvement whatsoever regarding the "threats" referenced in paragraph 25, which are documents that speak for themselves. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations concerning alleged conduct attributed to others. Ms. Hajdini denies the remaining allegations in paragraph 25.

26. Ms. Hajdini denies ever mocking or ridiculing Plaintiff on the basis of his Nepali heritage and denies ever threatening Plaintiff for any reason, including sending or having any

involvement whatsoever regarding the "anonymous threats" referenced in paragraph 26, which are documents that speak for themselves. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 26.

27. Ms. Hajdini denies ever mocking or ridiculing Plaintiff on the basis of his Nepali heritage and denies ever threatening Plaintiff for any reason, including sending or having any involvement whatsoever regarding the "threats" referenced in paragraph 27, which are documents that speak for themselves. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 27.

28. Ms. Hajdini lacks knowledge or information sufficient to admit or deny whatever Plaintiff may be "seek[ing]" in this action. Ms. Hajdini denies the remaining allegations in paragraph 28.

29. Denied.

30. Ms. Hajdini admits that Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, which is a document that speaks for itself. Ms. Hajdini denies forcing Plaintiff from JPMC and denies retaliating against Plaintiff or "destroy[ing his] new employment." Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations concerning conduct attributed to others. Ms. Hajdini denies the remaining allegations in paragraph 30.

31. The allegations in paragraph 31 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that Plaintiff's Complaint asserts the alleged claims and Plaintiff seeks the alleged relief. Ms. Hajdini denies engaging in any unlawful conduct and denies that Plaintiff is entitled to any of the alleged relief he seeks. Ms. Hajdini denies the remaining allegations in paragraph 31.

**JURISDICTION AND VENUE**

32. The allegations in paragraph 32 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that Plaintiff purports to invoke this Court's subject matter jurisdiction.

33. The allegations in paragraph 33 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that Plaintiff purports to invoke this Court's subject matter jurisdiction.

34. The allegations in paragraph 34 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that Plaintiff purports to invoke venue in this Court, that Plaintiff worked in JPMC's New York offices, and that JPMC conducts business in this District.

**PROCEDURAL HISTORY**

35. The allegations in paragraph 35 consist of legal conclusions to which no response is required. To the extent a response is required, the Charge and Dismissal and Notice of Rights referenced in paragraph 35 are documents that speak for themselves. Ms. Hajdini denies the remaining allegations in paragraph 35.

36. The allegations in paragraph 36 consist of legal conclusions to which no response is required. To the extent a response is required, the complaint, discontinuance papers and order referenced in paragraph 36 are documents that speak for themselves. Ms. Hajdini denies that "[n]o other action arising from the facts alleged herein is pending" and avers that Ms. Hajdini filed counterclaims against Plaintiff in the action he commenced in the Supreme Court of the State of

New York, New York County, Index No. 155620/2026 (the "New York Action"), which is a document that speaks for itself.[2]

37. The allegations in paragraph 37 consist of legal conclusions to which no response is required. Ms. Hajdini denies the remaining allegations in paragraph 37.

38. The allegations in paragraph 38 consist of legal conclusions to which no response is required. To the extent a further response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 38.

**PARTIES**

39. The allegations in paragraph 39 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that Plaintiff was employed with JPMC for a period of time. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 39.

40. The allegations in paragraph 40 consist of legal conclusions to which no response is required.

41. The allegations in paragraph 41 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that she is an Executive Director at JPMC and that she resides in New York. Ms. Hajdini denies that she "exercised direct supervisory authority over" Plaintiff.

42. The allegations in paragraph 42 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that Mr. Graffeo is a

---

[2] Together with this Answer and pursuant to a stipulation entered into by Ms. Hajdini and Plaintiff and filed in the New York Action, Ms. Hajdini is filing counterclaims, *infra*, against Plaintiff in this action and, thereafter, will voluntarily discontinue her counterclaims pending in the New York Action. *See Rana v. JPMorgan Chase & Co.*, *et al*, Index No. 155620/2026, Doc. No. 136. As further reflected in the stipulation, the parties agree to treat Ms. Hajdini's counterclaims filed in this action as having been filed when they were filed in the New York Action.

Managing Director at JPMC who led the team on which Plaintiff was employed. Ms. Hajdini denies the remaining allegations in paragraph 42.

43. The allegations in paragraph 43 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that Mr. Wolter is a Managing Director at JPMC. Ms. Hajdini denies the remaining allegations in paragraph 43.

44. Ms. Hajdini admits that Ms. Crowe is an Associate on the TSF[3] team at JPMC. Ms. Hajdini lacks knowledge or information sufficient to admit or deny Plaintiff's allegation that Ms. Crowe resides in New York.

45. Denied.

## FACTUAL ALLEGATIONS

46. Ms. Hajdini admits that Plaintiff joined JPMC's TSF team in or about March 2024. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 46 concerning the details of Plaintiff's purported work, deals, transactions or related communications thereof. Ms. Hajdini denies the remaining allegations in paragraph 46.

47. Denied.

48. Ms. Hajdini admits that Mr. Graffeo reported to Mr. Droogan and that Ms. Hajdini previously worked under Mr Droogan. Ms. Hajdini denies the remaining allegations in paragraph 48.

49. Denied.

50. Denied.

[3] Ms. Hajdini further avers that, during the relevant period, the team that Ms. Hajdini and Plaintiff served on together at JPMorgan Chase Bank, N.A. was referred to as the Technology Sponsor Finance ("TSF") team. Ms. Hajdini therefore uses the term "TSF" herein to refer to this team.

51. Ms. Hajdini lacks knowledge or information sufficient to admit or deny whether Plaintiff was "barred" from providing formal performance reviews for anyone. Ms. Hajdini denies the remaining allegations in paragraph 51.

52. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 52.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 58 regarding Plaintiff's alleged visit or conversation with Mr. Wolter. Ms. Hajdini denies the remaining allegations in paragraph 58.

59. Denied.

60. Denied.

61. The alleged "communications" and depicted emails in paragraph 61 are written documents that speak for themselves. Ms. Hajdini denies the remaining allegations in paragraph 61.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 72.

73. Denied.

74. Denied.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 90 concerning statements Plaintiff alleges he made "to the witness." Ms. Hajdini denies the remaining allegations in paragraph 90.

91. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 91 concerning what Plaintiff alleges he "told the witness." Ms. Hajdini denies the remaining allegations in paragraph 91.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 98 concerning Plaintiff's alleged communications with others. Ms. Hajdini denies the remaining allegations in paragraph 98.

99. Denied.

100. Denied.

101. The alleged and depicted group chat message is a written document that speaks for itself. Ms. Hajdini denies the remaining allegations in paragraph 101.

102. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 102 regarding alleged actions by governmental authorities. Ms. Hajdini denies the remaining allegations in paragraph 102. By way of further response, Plaintiff fabricated

his allegations of Ms. Hajdini's conduct for his personal enrichment, and neither the Manhattan District Attorney's Office nor any other law enforcement personnel have pursued any of Plaintiff's claims or allegations against Ms. Hajdini.

103. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 103. By way of further response, Plaintiff fabricated his allegations of Ms. Hajdini's alleged conduct for his personal enrichment, and neither the Manhattan District Attorney's Office nor any other law enforcement personnel have pursued any of Plaintiff's claims or allegations against Ms. Hajdini.

104. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 104. By way of further response, Plaintiff fabricated his allegations of Ms. Hajdini's alleged conduct for his personal enrichment, and neither the Manhattan District Attorney's Office nor any other law enforcement personnel have pursued any of Plaintiff's claims or allegations against Ms. Hajdini.

105. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 105. By way of further response, Plaintiff fabricated his allegations of Ms. Hajdini's alleged conduct for his personal enrichment, and neither the Manhattan District Attorney's Office nor any other law enforcement personnel have pursued any of Plaintiff's claims or allegations against Ms. Hajdini.

106. Denied.

107. Denied.

108. Denied.

109. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 109 concerning alleged statements and/or conduct attributed to others. Ms. Hajdini denies the remaining allegations in paragraph 109.

110. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 110.

111. The alleged “communications” and “messages reproduced in the Preliminary Statement” are written documents that speak for themselves. Ms. Hajdini denies the remaining allegations in paragraph 111.

112. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 112 concerning alleged comments attributed to Mr. Graffeo. Ms. Hajdini denies the remaining allegations in paragraph 112.

113. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations concerning the alleged statement attributed to Mr. Goodrich. Ms. Hajdini denies the remaining allegations in paragraph 113.

114. Ms. Hajdini lacks knowledge and information sufficient to admit or deny the allegations concerning alleged statements attributed to Ms. Crowe. Ms. Hajdini denies the remaining allegations in paragraph 114.

115. Denied.

116. Denied.

117. Ms. Hajdini lacks knowledge and information sufficient to admit or deny the alleged statement attributed to Ms. Crowe. Ms. Hajdini denies the remaining allegations in paragraph 117.

118. The alleged message referenced in paragraph 118 is a document that speaks for itself. Ms. Hajdini denies the remaining allegations in paragraph 118.

119. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 119 concerning alleged actions or inactions attributed to others. Ms. Hajdini denies the remaining allegations in paragraph 119.

120. The allegations in paragraph 120 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 120 concerning alleged statements attributed to others. Ms. Hajdini denies the remaining allegations in paragraph 120.

121. The allegations in paragraph 121 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 121.

122. The allegations in paragraph 122 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 122.

123. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 123 concerning any alleged complaint or investigation thereof relating to any alleged statements by Mr. Goodrich. Ms. Hajdini denies the remaining allegations in paragraph 123.

124. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 124 concerning actions or inactions attributed to others. Ms. Hajdini denies the remaining allegations in paragraph 124.

125. Denied.

126. Denied.

127. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 127 concerning actions or inactions attributed to others. Ms. Hajdini denies the remaining allegations in paragraph 127.

128. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 128 concerning actions or inactions attributed to others. Ms. Hajdini denies the remaining allegations in paragraph 128.

129. Ms. Hajdini denies that any "double standard" existed. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 129.

130. The allegations in paragraph 130 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 130.

131. The allegations in paragraph 131 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 131.

132. The allegations in paragraph 132 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 132.

133. The allegations in paragraph 133 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 133.

134. The allegations in paragraph 134 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 134.

135. Ms. Hajdini denies portraying anything "to the press" with respect to Plaintiff or his alleged FMLA leave. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 135.

136. The allegations in paragraph 136 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 136.

137. The allegations in paragraph 137 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 137.

138. The allegations in paragraph 138 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 138.

139. The allegations in paragraph 139 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 139.

140. The allegations in paragraph 140 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 140.

141. The allegations in paragraph 141 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini denies that she engaged in any of the

conduct alleged in paragraph 141 or that she violated the FMLA. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 141.

142. The allegations in paragraph 142 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini denies that she approved any leave for Plaintiff and that she had the authority to do so. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 142.

143. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 143.

144. The allegations in paragraph 142 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that that Plaintiff submitted a written complaint on approximately May 20, 2025, which is a written document that speaks for itself. Ms. Hajdini denies the remaining allegations in paragraph 144.

145. The alleged complaint is a written document that speaks for itself. Ms. Hajdini denies that she engaged in any alleged misconduct.

146. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 146.

147. Ms. Hajdini denies making, or having any involvement with, the alleged call referenced in paragraph 147. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 147.

148. Ms. Hajdini denies leaving, or having any involvement with, the alleged voicemails referenced in paragraph 148, which are documents and/or recordings that speak for themselves. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 148.

149. Ms. Hajdini denies making, or having any involvement with, the alleged texts referenced in paragraph 149, which are documents that speak for themselves. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 149.

150. Ms. Hajdini denies making, or having any involvement with, the alleged texts referenced in paragraph 150, which are documents that speak for themselves. Ms. Hajdini further denies making the alleged statements in paragraph 150 and denies threatening Plaintiff in any manner. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 150.

151. Ms. Hajdini denies making, or having any involvement with, the alleged "threats" referenced in paragraph 151, which are documents that speak for themselves. Ms. Hajdini further denies making the alleged statements in paragraph 151 and denies threatening Plaintiff in any manner. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 151.

152. Ms. Hajdini denies making, or having any involvement with, the alleged "threats" or "slurs" referenced in paragraph 152, which are documents that speak for themselves. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 152.

153. The alleged "group chats" are documents that speak for themselves. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 153 concerning conduct or statements attributed to others. Ms. Hajdini denies the remaining allegations in paragraph 153.

154. The alleged "threats" are documents that speak for themselves. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 154 concerning

conduct or statements attributed to others. Ms. Hajdini denies the remaining allegations in paragraph 154.

155. The alleged email is a document that speaks for itself. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 155 concerning conduct or statements attributed to others. Ms. Hajdini denies the remaining allegations in paragraph 156.

156. The allegations in paragraph 156 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, the alleged email is a document that speaks for itself. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 156.

157. The allegations in paragraph 157 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 157.

158. The allegations in paragraph 158 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 158.

159. The allegations in paragraph 159 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 159.

160. The allegations in paragraph 160 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 160.

161. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 161.

162. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 162.

163. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 163.

164. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 164.

165. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 165.

166. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 166.

167. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 167. To the extent a further response is required, Ms. Hajdini denies the allegations in paragraph 167.

168. The allegations in paragraph 168 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 168.

169. The allegations in paragraph 169 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 169.

170. Ms. Hajdini admits that, during the relevant period alleged, she continued working at JPMorgan. Ms. Hajdini admits, upon information and belief, that Mr. Graffeo and Mr. Walter continued working at JPMorgan during the relevant period alleged and lacks sufficient knowledge

or information concerning the alleged access to JPMorgan's systems, clients or offices to admit or deny those allegations. Ms. Hajdini denies the remaining allegations in paragraph 170.

171. Ms. Hajdini admits that JPMC made her aware of certain of Plaintiff's allegations about her in connection with JPMC's investigation into them but denies that she had access to Plaintiff's "personal information." Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 171.

172. The allegations in paragraph 172 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 172.

173. The allegations in paragraph 173 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini states that the alleged September 16, 2025 letter is a written document that speaks for itself. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 173. By way of further response, Plaintiff fabricated his allegations of Ms. Hajdini's alleged conduct for his personal enrichment, and neither the Manhattan District Attorney's Office nor any other law enforcement personnel have pursued any of Plaintiff's claims or allegations against Ms. Hajdini.

174. The allegations in paragraph 174 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 174.

175. The allegations in paragraph 175 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 175.

176. The allegations in paragraph 176 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 176.

177. The allegations in paragraph 177 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 177.

178. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 178. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 178.

179. Ms. Hajdini denies engaging in any conduct targeting Plaintiff's livelihood, including any of the conduct alleged in paragraph 179. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 179.

180. The allegations in paragraph 180 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 180.

181. The allegations in paragraph 181 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini states that the email referenced in paragraph 181 is a written document that speaks for itself. By way of further response, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 181.

182. The allegations in paragraph 182 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 182.

183. The allegations in paragraph 183 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini states that the alleged "formal written request" is a written document that speaks for itself. By way of further response, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 183.

184. Ms. Hajdini denies engaging in any act of retaliation against Plaintiff. The remaining allegations in paragraph 184 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini states that the alleged "threatening email" is a written document that speaks for itself. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 184.

185. The allegations in paragraph 185 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 185.

186. The allegations in paragraph 186 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 186.

187. The allegations in paragraph 187 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 187. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 187.

188. Ms. Hajdini admits that she was an employee of JPMC during the relevant period alleged. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 188.

189. The allegations in paragraph 189 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 189.

190. Ms. Hajdini denies threatening or retaliating against Plaintiff or his family. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 190.

191. The allegations in paragraph 191 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies sexually harassing or assaulting Plaintiff. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 191.

192. The allegations in paragraph 192 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 192. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 192.

193. The allegations in paragraph 193 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 193. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 193.

194. The allegations in paragraph 141 consist of legal conclusions to which no response is required. To the extent a response is required, the allegations in paragraph 194 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 194.

195. Plaintiff's resignation letter is a written document that speaks for itself. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 195.

196. Ms. Hajdini denies engaging in any unlawful conduct and denies discriminating or retaliating against Plaintiff in any manner. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 196.

197. Denied.

198. Denied.

199. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 199.

200. Denied.

201. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 201. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 201.

202. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 202. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 202.

203. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 203. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 203.

204. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 204. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 204.

205. Ms. Hajdini denies engaging in any conduct to sabotage Plaintiff's career. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 205.

206. The allegations in paragraph 206 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 206.

207. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 207. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 207.

208. The allegations in paragraph 208 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 208.

209. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 209. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 209.

210. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 210. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 210.

211. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 211. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 211.

212. Ms. Hajdini denies interfering with any of Plaintiff's prospective employment and business opportunities or engaging in any of the conduct alleged in paragraph 212. Ms. Hajdini

lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 212.

213. Ms. Hajdini denies engaging in any "campaign" with respect to Plaintiff or engaging in any of the conduct alleged in paragraph 213. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 213.

214. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 214.

215. Any alleged "text messages" are written documents that speak for themselves. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 215. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 215.

216. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 216.

217. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 217.

218. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 218.

219. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 219.

220. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 220.

221. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 221.

222. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 222. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 222.

223. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 223. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 223.

224. The alleged "contemporaneous text message" is a written document that speaks for itself. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 224.

225. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 225. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 225.

226. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 226. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 226.

227. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 227.

228. Denied. To the extent a further response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 228.

229. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 229.

230. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 230. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 230.

231. The EEOC Charge referenced in paragraph 231 is a document that speaks for itself. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 231.

232. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 232.

233. Ms. Hajdini denies that she "intended" any alleged result or engaged in any of the conduct alleged in paragraph 233. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 233.

234. Ms. Hajdini denies having had any contact with Bregal Sagemount concerning Plaintiff. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 234.

235. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 235.

236. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 236. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 236.

237. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 237.

238. The allegations in paragraph 238 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 238.

239. Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 239. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 239.

240. Denied.

241. The allegations in paragraph 241 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 241. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 241.

242. The allegations in paragraph 242 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini denies engaging in any of the conduct alleged in paragraph 242. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 242.

243. Denied.

244. Denied.

## CAUSES OF ACTION

### COUNT I
### Race and Ancestry Discrimination — 42 U.S.C. § 1981
### (Against All Defendants)

245. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

246. The allegations in paragraph 246 consist of legal conclusions to which no response is required. To the extent a response is required, Section 1981 is a statute that speaks for itself.

Ms. Hajdini lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 246.

247. Denied.

248. Denied.

**COUNT II**
**Retaliation — 42 U.S.C. § 1981**
**(Against JPMorgan, Hajdini, Graffeo, and Wolter)**

249. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

250. The allegations in paragraph 250 consist of legal conclusions to which no response is required. To the extent a response is required, Section 1981 is a statute that speaks for itself and the May 20, 2025 complaint and Charge referenced in paragraph 250 are documents that speak for themselves. Ms. Hajdini denies the remaining allegations in paragraph 250.

251. Denied.

**COUNT III**
**FMLA Interference — 29 U.S.C. § 2615(a)(1)**
**(Against JPMorgan)**

252. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

253. The allegations in paragraph 253 consist of legal conclusions to which no response is required. To the extent a response is required, the allegations in paragraph 253 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 253 regarding FMLA leave. Ms. Hajdini denies the remaining allegations in paragraph 253.

254. The allegations in paragraph 254 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that the FMLA is a statute

that speaks for itself. The allegations in paragraph 254 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini lacks knowledge or information sufficient to admit or deny the allegations in paragraph 254 regarding FMLA leave. Ms. Hajdini denies the remaining allegations in paragraph 254.

255. The allegations in paragraph 255 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 255.

**COUNT IV**
**FMLA Retaliation — 29 U.S.C. § 2615(a)**
**(Against JPMorgan)**

256. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

257. The allegations in paragraph 257 consist of legal conclusions to which no response is required. To the extent a response is required, the allegations in paragraph 257 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 257.

258. The allegations in paragraph 258 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 258.

259. The allegations in paragraph 259 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 259.

**COUNT V**
**Discrimination and Hostile Work Environment (Race and National Origin) — Title VII, 42 U.S.C. § 2000e *et seq.***
**(Against JPMorgan)**

260. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

261. The allegations in paragraph 261 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that Title VII is a statute that speaks for itself. The allegations in paragraph 261 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 261.

262. The allegations in paragraph 262 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 262.

**COUNT VI**
**Sex Discrimination and Sexual Harassment — Title VII, 42 U.S.C. § 2000e *et seq.***
**(Against JPMorgan)**

263. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

264. The allegations in paragraph 264 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that Title VII is a statute that speaks for itself. Ms. Hajdini denies the remaining allegations in paragraph 264.

265. Denied.

**COUNT VII**
**Retaliation — Title VII, 42 U.S.C. § 2000e-3(a)**
**(Against JPMorgan)**

266. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

267. The allegations in paragraph 267 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that Title VII is a statute that speaks for itself. The allegations in paragraph 267 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 267.

268. The allegations in paragraph 268 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 268.

**COUNT VIII**
**Gender Discrimination and Sexual Harassment — N.Y. Exec. Law § 296**
**(Against JPMorgan)**

269. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

270. The allegations in paragraph 270 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that the NYSHRL is a statute that speaks for itself. Ms. Hajdini denies the remaining allegations in paragraph 270.

271. The allegations in paragraph 271 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 271.

**COUNT IX**
**Retaliation — N.Y. Exec. Law § 296(7)**
**(Against JPMorgan)**

272. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

273. The allegations in paragraph 273 consist of legal conclusions to which no response is required. To the extent a response is required, the allegations in paragraph 273 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini admits that the NYSHRL is a statute that speaks for itself. Ms. Hajdini denies the remaining allegations in paragraph 273.

274. The allegations in paragraph 274 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 274.

**COUNT X**
**Aiding and Abetting — N.Y. Exec. Law § 296(6)**
**(Against Hajdini, Graffeo, Wolter, and Crowe)**

275. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

276. The allegations in paragraph 276 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that the NYSHRL is a statute that speaks for itself.

277. Denied.

278. Denied.

279. Denied.

**COUNT XI**
**Race Discrimination — N.Y.C. Admin. Code § 8-107**
**(Against All Defendants)**

280. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

281. The allegations in paragraph 281 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that the NYCHRL is a statute that speaks for itself. Ms. Hajdini denies the remaining allegations in paragraph 281.

282. Denied.

**COUNT XII**
**Gender Discrimination and Sexual Harassment — N.Y.C. Admin. Code § 8-107**
**(Against JPMorgan, Hajdini, Graffeo, and Wolter)**

283. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

284. The allegations in paragraph 284 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that the NYCHRL is a statute that speaks for itself. Ms. Hajdini denies the remaining allegations in paragraph 284.

285. Denied.

**COUNT XIII**
**Retaliation — N.Y.C. Admin. Code § 8-107(7)**
**(Against All Defendants)**

286. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

287. The allegations in paragraph 287 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that the NYCHRL is a statute that speaks for itself. Ms. Hajdini denies the remaining allegations in paragraph 287.

288. Denied.

**COUNT XIV**
**Gender-Motivated Violence — N.Y.C. Admin. Code § 10-1101 *et seq.***
**(Against Hajdini and JPMorgan)**

289. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

290. The allegations in paragraph 290 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that the New York City Victims of Gender-Motivated Violence Protection Law is a statute that speaks for itself. Ms. Hajdini denies the remaining allegations in paragraph 290.

291. Denied.

**COUNT XV**
**Caregiver Status Discrimination — N.Y.C. Admin. Code § 8-107**
**(Against JPMorgan)**

292. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

293. The allegations in paragraph 293 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that NYCHRL is a statute that speaks for itself. The allegations in paragraph 293 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the remaining allegations in paragraph 293.

294. The allegations in paragraph 294 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that the NYCHRL is a statute that speaks for itself. The allegations in paragraph 294 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the remaining allegations in paragraph 294.

295. The allegations in paragraph 295 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 295.

**COUNT XVI**
**Tortious Interference With Prospective Economic Advantage**
**(Against JPMorgan, Hajdini, Graffeo, and Wolter)**

296. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

297. Denied.

298. Denied.

299. Denied.

300. Denied.

301. Denied.

**COUNT XVII**
**Defamation and Defamation *Per Se***
**(Against JPMorgan, Graffeo, and Wolter)**

302. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

303. The allegations in paragraph 303 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 303.

304. The allegations in paragraph 304 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 304.

305. The allegations in paragraph 305 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 305.

**COUNT XVIII**
**Sexual Assault and Battery**
**(Against Hajdini)**

306. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

307. Denied.

308. Denied.

309. Denied.

310. The allegations in paragraph 310 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 310.

**COUNT XIX**
**Failure to Pay Wages and Unlawful Deductions — N.Y. Labor Law § 193**
**(Against JPMorgan)**

311. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

312. The allegations in paragraph 312 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that the New York Labor Law is a statute that speaks for itself. The allegations in paragraph 312 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the remaining allegations in paragraph 312.

313. The allegations in paragraph 313 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 313.

314. The allegations in paragraph 314 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 314.

315. The allegations in paragraph 315 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 315.

**COUNT XX**
**Retaliation — N.Y. Labor Law § 215**
**(Against JPMorgan)**

316. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

317. The allegations in paragraph 317 consist of legal conclusions to which no response is required. To the extent a response is required, Ms. Hajdini admits that the New York Labor Law is a statute that speaks for itself. The allegations in paragraph 317 do not pertain to Ms. Hajdini and, therefore, no response is required from Ms. Hajdini. To the extent a response is required, Ms. Hajdini denies the allegations in paragraph 317.

**COUNT XXI**
**Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

318. Ms. Hajdini re-alleges and incorporates her responses to every preceding paragraph with the same force and effect as though fully set forth herein at length.

319. Denied.

320. Denied.

## PRAYER FOR RELIEF

Ms. Hajdini repeats and re-alleges her responses to every allegation above with the same force and effect as though herein at length, specifically denies all the allegations and assertions contained in the "Prayer for Relief" section, including subparts (a)-(k) thereof, and denies that Plaintiff is entitled to relief of any kind whatsoever, including any of the relief sought in the "Prayer for Relief" section, including subparts (a)-(k) thereof.

## GENERAL DENIAL

Ms. Hajdini denies each and every allegation of fact, conclusion of law, or other matter set forth in the Complaint that has not been expressly admitted herein.

## RESERVATION OF RIGHTS

Ms. Hajdini reserves the right to amend this Answer and Defenses, including her responses to the allegations in the Complaint, and to add any and all additional defenses or counterclaims as they become known through discovery or investigation.

## DEFENSES

Ms. Hajdini asserts the following defenses without conceding that she bears the burden of proof as to any of them. Ms. Hajdini reserves the right to assert such additional defenses that may appear and prove applicable during this litigation and its continued investigation, which is ongoing.

1. Plaintiff fails to state a cause of action upon which relief may be granted against Ms. Hajdini.

2. Plaintiff's claims may be barred, in whole or in part, to the extent that he failed to timely exhaust his administrative remedies or prerequisites prior to the commencement of this action.

3. To the extent Plaintiff is pursuing a claim that is broader than the Charge he filed with the Equal Employment Opportunity Commission or pursues claims against individuals or entities he did not name before the Equal Employment Opportunity Commission, Plaintiff has failed to properly exhaust his administrative remedies.

4. Plaintiff's claims are barred in whole or in part by the equitable doctrines of unclean hands, unjust enrichment, laches, offset and/or set off and/or estoppel, or any inequitable or wrongful conduct by Plaintiff.

5. Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of waiver.

6. All of Ms. Hajdini's actions toward Plaintiff were taken in good faith, for good cause, and for legitimate, non-discriminatory and non-retaliatory reasons, and without any other motive, intent, malice, or reckless disregard of Plaintiff's rights.

7. Ms. Hajdini did not treat Plaintiff less well on the basis of any protected category.

8. Ms. Hajdini denies the existence of any purported prospective business relationship of Plaintiff, denies knowledge of any such relationship, denies interfering with any such relationship in any way, let alone solely out of malice or by wrongful means, denies but-for causation regarding any alleged lost, purportedly prospective business relationship, and pleads economic justification, lawful competition privilege, truth, and legal right as applicable. To the extent Plaintiff alleges any purported prospective business relationship or associated economic loss, any such relationship or loss was speculative, contingent, uncertain, and insufficiently definite to support liability or an award of damages.

9. Plaintiff is not entitled to duplicative recovery for the same alleged injuries under overlapping federal, state, city, and common-law theories, and any award must be structured or reduced as necessary to prevent an impermissible double recovery.

10. To the extent Plaintiff allegedly suffered injury, which Ms. Hajdini expressly denies, subject to proof through discovery, Plaintiff's acts or omissions, not Ms. Hajdini's acts or omissions, were the factual, legal, and/or proximate cause of such injury.

11. To the extent Plaintiff allegedly suffered any injury or damages, which Ms. Hajdini expressly denies, any such injury or damages were caused, in whole or in part, by the acts or omissions of third parties over whom Ms. Hajdini had no control, and not by any act or omission of Ms. Hajdini.

12. Plaintiff did not engage in protected conduct.

13. Even if Plaintiff had engaged in protected conduct, which Ms. Hajdini expressly denies, no protected conduct by Plaintiff or any other impermissible factor played any role in any employment decisions relating to Plaintiff.

14. To the extent that, during the course of the litigation, Ms. Hajdini acquires any evidence of wrongdoing by Plaintiff, such after-acquired evidence shall bar or limit Plaintiff's claims for liability and/or damages, assuming *arguendo*, Plaintiff is able to establish liability.

15. Plaintiff's Complaint is barred in whole or in part because Plaintiff has not appropriately or adequately mitigated his alleged damages or otherwise avoided harm. To the extent that Plaintiff has failed to mitigate any alleged damages and/or he have received any income from other sources, any alleged damages should be reduced by Plaintiff's failure to mitigate or the income they have earned. Plaintiff had, and continues to have, the ability and opportunity to mitigate the damages alleged with respect to the subject matter of this action and has failed and/or refused to mitigate those damages.

16. Plaintiff's claims are barred, in whole or in part, because Plaintiff has provided false information and made misrepresentations to the Court.

17. Plaintiff's claims are barred, in whole or in part, because Plaintiff committed fraud on the court.

18. Plaintiff's claims, or some of them, are barred, in whole or in part, by the applicable statutes of limitation.

19. Plaintiff's claims are barred because he has not suffered any injury or damages or cannot demonstrate facts sufficient to warrant an award of damages.

20. To the extent that Plaintiff's causes of action allow for punitive damages, he is not entitled to such an award because at all relevant times Ms. Hajdini made a good faith effort to comply with all applicable statues and laws.

21. Plaintiff's claims for damages are barred or limited, in whole or in part, to the extent that the damages alleged are speculative, contingent, uncertain, or otherwise incapable of reasonable ascertainment.

22. Plaintiff's claims are frivolous, unreasonable, and groundless and, accordingly, Defendant is entitled to recover all costs and attorneys' fees incurred herein based on, *inter alia*, the United States Supreme Court's decision in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978).

23. An award of punitive damages under the circumstances of this case would constitute an excessive fine and otherwise would be in violation of Ms. Hajdini's due process and other rights under the United States Constitution.

24. Plaintiff's allegations do not rise beyond petty slights and trivial inconveniences.

25. Plaintiff's claims or remedies are diminished or barred to the extent that he has not sustained a cognizable injury.

26. Plaintiff's claims for sexual assault and battery are barred, in whole or in part, because Plaintiff cannot establish that Ms. Hajdini intentionally subjected Plaintiff to any unlawful, harmful, offensive, or nonconsensual physical contact.

27. To the extent Plaintiff's aiding-and-abetting claim is premised solely upon conduct allegedly committed by Ms. Hajdini herself, the claim is barred because an individual cannot aid and abet her own alleged violation.

28. Any emotional distress, mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, or loss of reputation purportedly suffered by Plaintiff was not caused by Ms. Hajdini.

29. Plaintiff's claim for intentional infliction of emotional distress is barred, in whole or in part, to the extent it is duplicative of Plaintiff's other statutory or common-law claims or is premised upon conduct encompassed by traditional tort remedies.

30. Plaintiff's aiding-and-abetting claim is barred, in whole or in part, because there was no underlying violation of the New York State Human Rights Law and Ms. Hajdini did not participate in, aid, abet, incite, compel, or coerce any alleged unlawful conduct.

31. Plaintiff's claim under the New York City Gender-Motivated Violence Act is barred, in whole or in part, because Plaintiff cannot establish a qualifying crime of violence, the requisite gender-based motivation or animus, or that Ms. Hajdini committed, directed, enabled, participated in, or conspired in any conduct actionable under the statute.

32. Plaintiff's claims are barred, in whole or in part, because the parties entered into a valid and enforceable written agreement requiring mandatory binding arbitration of the disputes alleged in the Complaint.

## COUNTERCLAIMS

Defendant/Counterclaim Plaintiff Lorna Hajdini ("Ms. Hajdini"), by and through her undersigned counsel, respectfully submits the following Counterclaims to Plaintiff/Counterclaim Defendant Chirayu S. Rana ("Plaintiff").

## NATURE OF ACTION

1. Plaintiff's claims in this action continue a multi-year campaign to smear Ms. Hajdini in her workplace, to third parties, and in the press through fabricated, false, and heinous accusations casting her as a dangerous, predatory criminal.

2. By falsely accusing Ms. Hajdini of being a racist sexual predator who raped, drugged, sexually assaulted, stalked, blackmailed, and threatened him, Plaintiff has sought to destroy her reputation, inflict severe emotional distress, and create institutional, professional, and public pressure that he could leverage to extract millions of dollars from Ms. Hajdini and JPMorgan Chase Bank, N.A. ("JPMC" or the "Company"). ***Plaintiff's accusations are false.***

3. This is not the only time Plaintiff has made extraordinary accusations of sexual misconduct against an alleged superior at a global financial services firm.

4. In 2023, while employed at Morgan Stanley, Plaintiff falsely accused a male manager of sexual harassment.

5. As part of advancing those allegations, Plaintiff unsuccessfully sought to recruit one or more coworkers to corroborate his false account.

6.

7. Plaintiff suggested that a coworker could make a lot of money by being part of a lawsuit.

8. When asked whether Plaintiff felt remorse because the people he was accusing had

families and children, Plaintiff responded in sum or substance: why would I care; I care about my livelihood?

9. Plaintiff went so far as to misrepresent his sexual orientation to make his allegations against his male boss more plausible.

10. According to Plaintiff, he exited Morgan Stanley with a separation agreement.

11. Plaintiff, however, apparently had buyer's remorse and set out on a plan to further shake down Morgan Stanley.

12. Plaintiff stated on an online chat website that his former male Morgan Stanley boss had "raped, sexually assaulted, harassed, and forced [him] to do drugs" and that he wanted to assert these allegations against Morgan Stanley.

13. But he recognized expressly that he could not bring these claims against Morgan Stanley because he had already signed a separation agreement.

14. Plaintiff is now employing against Ms. Hajdini and JPMC the same common plan, scheme, or design reflected in the Morgan Stanley episode: accuse a colleague of grave sexual and other misconduct that is false; claim corroborating evidence that is false; and use the resulting institutional, legal, and reputational pressure in pursuit of substantial personal financial gain.

15. Plaintiff's accusations against Ms. Hajdini are ***false***. Ms. Hajdini never had any romantic involvement or sexual contact with Plaintiff, never drugged him, never entered the apartment where Plaintiff claims the alleged assaults occurred, and never engaged in any of the other wrongdoing attributed to her.

16. Because Plaintiff claims these acts happened to him personally, he knows that his accusations are false.

17. Plaintiff's actionable accusations were deliberate and malicious and have caused

substantial reputational, professional, and emotional harm to Ms. Hajdini. Ms. Hajdini therefore brings claims for defamation and defamation *per se*, intentional infliction of emotional distress, prima facie tort in the alternative, and tortious interference with business relations to put an end to Plaintiff's malicious campaign and recover damages, including compensatory and punitive damages where available.

## PARTIES

18. Ms. Hajdini is an individual who resides in New York, New York.

19. Plaintiff is an individual who alleges that he resides in New York, New York.

## JURISDICTION AND VENUE

20. This Court has supplemental jurisdiction over these Counterclaims under 28 U.S.C. § 1367(a) because they arise from the same case or controversy as Plaintiff's federal claims, including the same alleged workplace interactions, the same accusations concerning Ms. Hajdini, and the same dispute over whether those accusations are true or false.

21. Venue is proper in this District because a substantial part of the allegations, events and omissions giving rise to Plaintiff's claims and these Counterclaims occurred in this District.

## FACTS RELEVANT TO COUNTERCLAIMS

### I. Ms. Hajdini and Plaintiff Were Co-Workers at JPMC

22. Ms. Hajdini joined JPMC full-time in 2011 and has worked there for over 15 years. Since then, she has worked in various roles in several of JPMC's businesses, including Leveraged Finance ("LevFin"), a line of its investment banking business.

23. Effective February 1, 2021, Ms. Hajdini was promoted to the position of Executive Director on the LevFin team, most recently in the Media & Communications vertical.

24. Effective April 16, 2024, Ms. Hajdini transitioned to the position of Executive Director on the newly created Technology Sponsor Finance team, which was initially organized

under JPMC's Capital & Advisory Solutions group and was moved organizationally under the Technology vertical of LevFin in April 2025 and renamed Technology Strategic Finance ("TSF") in July 2025. At all times in that role, Ms. Hajdini reported to Brandon Graffeo, Managing Director and Group Head.

25. In approximately March 2024, Plaintiff was employed as a Vice President in JPMC's TSF group, reporting to Jon Wolter, Managing Director.

26. Ms. Hajdini was never Plaintiff's supervisor.

27. While Plaintiff and Ms. Hajdini were colleagues, they had no reporting relationship and Ms. Hajdini had no authority or influence over his employment.

28. Ms. Hajdini did not hire Plaintiff.

29. Ms. Hajdini did not prepare Plaintiff's performance reviews.

30. Ms. Hajdini did not determine Plaintiff's compensation (including any bonus or other incentive compensation).

31. Ms. Hajdini did not determine Plaintiff's eligibility for promotion.

32. Ms. Hajdini had no authority to promote Plaintiff or terminate his employment.

## II. Plaintiff's Fabricated Internal Complaint

33. On approximately May 20, 2025, Plaintiff delivered an Internal Complaint to JPMC (the "Internal Complaint") falsely communicating in bad faith and with malice, among other things, that Ms. Hajdini had sexually harassed and sexually assaulted him on numerous occasions since May 2024, shortly after they began working together, and conveying that Ms. Hajdini subjected him to racial discrimination in the form of racist comments and epithets based on his Nepalese heritage and the color of his skin.

34. Specifically, in his Internal Complaint, Plaintiff conveyed that Ms. Hajdini subjected him to numerous acts of sexual harassment, sexual assault, and discrimination—all of

which statements Plaintiff knew were completely false and all of which were made in bad faith and with malice. For example, in his Internal Complaint, Plaintiff falsely communicated that Ms. Hajdini:

- began making unwanted sexual advances toward him shortly after joining the team;
- sexually assaulted him;
- forcibly performed oral sex on him;
- inappropriately touched him, including grabbing his genitals and buttocks, rubbing his leg, squeezing his calf, and groping, kissing, and/or licking Plaintiff's leg, buttocks, groin, penis, genitals, ears, and/or neck on multiple occasions, often in public or in front of coworkers;
- threatened his job if he did not submit to her sexual advances, saying things like she would "ruin" him;
- made racist comments to and used racial epithets with Plaintiff, such as referring to Plaintiff as "brown," "brownie," and "brown boy;"
- routinely drank alcohol to excess and pressured Plaintiff to do the same; and
- accessed Plaintiff's accounts and/or JPMC's employee surveillance system to monitor Plaintiff's spending and general whereabouts.

35. Each accusation described in the preceding paragraph was false and fabricated by Plaintiff. The alleged sexual assaults, forced sexual acts, unwanted touching, career threats, racial epithets, and other alleged misconduct ***did not occur***.

36. Ms. Hajdini also had no access or ability to access Plaintiff's private personal accounts or to use JPMC's systems to monitor Plaintiff's spending or Plaintiff's whereabouts.

37. For these accusations, Plaintiff did not claim secondhand information or uncertainty. He claimed that he personally experienced the sexual assaults, forced oral sex, unwanted touching, and career threats, and personally heard the racial epithets attributed to Ms. Hajdini.

38. Ms. Hajdini never sexually assaulted Plaintiff, coerced sexual conduct, drugged or forced Plaintiff to use drugs, entered his or any of his family members' apartments and committed the misconduct alleged there, threatened his career to obtain sexual conduct, retaliated against him for refusing sexual demands, made the racial slurs attributed to her, or stalked or blackmailed him. ***None of that happened.***

39. Plaintiff nevertheless provided the Internal Complaint to JPMC in bad faith and with malice, knowing full well that each representation was false and completely made up by Plaintiff. ***Because those acts did not occur and those words were not spoken, Plaintiff knew those accusations were false when he made them.***

40. Moreover, Plaintiff did not merely report the foregoing accusations to JPMC. His Internal Complaint presented the accusations as supported by documentary evidence and witness testimony, demanded that JPMC immediately investigate the alleged misconduct and preserve relevant evidence, and warned of legal consequences if JPMC failed to act. Plaintiff thus deliberately invoked JPMC's investigative processes and sought immediate institutional action on accusations he knew were false.

## III. Plaintiff Repeated His Lies About Ms. Hajdini

41. In addition, Plaintiff repeated some or all of the foregoing false allegations set forth above to third parties, including the individuals who have provided anonymous affirmations supporting his claims.

42. Specifically, in support of his motion to proceed anonymously, Plaintiff submitted

a redacted affirmation from an individual ("Affiant A") who stated that Plaintiff had told Affiant A that Ms. Hajdini was "harassing" and "trying to blackmail" Plaintiff, and also "was making [Plaintiff's] life hell." Affiant A stated that Plaintiff made those statements in approximately the middle of 2024.

43. Plaintiff also purportedly showed "a profile picture" of Ms. Hajdini to Affiant A and "told [Affiant A]" that the picture was of Ms. Hajdini.

44. Plaintiff's statements about Ms. Hajdini are false and Plaintiff knew them to be false when he had the aforementioned conversation with Affiant A.

45. Further, in support of his motion to proceed anonymously, Plaintiff submitted another redacted affirmation from an individual ("Affiant B") who stated that Plaintiff had told Affiant B that Ms. Hajdini was the name of a woman with whom Plaintiff had returned to an apartment in New York where Affiant B was staying one evening in September 2024. On that evening, Plaintiff told Affiant B that Ms. Hajdini "constantly harassed him," frequently "forced him to engage in sexual behavior with her," and was threatening to harm Plaintiff's career.

46. "In later conversations" with Affiant B, Plaintiff "reiterated" to Affiant B that Ms. Hajdini was "blackmailing [Plaintiff] and forcing him to engage in sexual acts" and "constantly threaten[ing] to harm his career if he did not." Plaintiff also told Affiant B that Ms. Hajdini had shown "him naked pictures of herself" and had "sexually assaulted" Plaintiff on the above-described evening in September 2024.

47. Plaintiff's statements to Affiant A and Affiant B about Ms. Hajdini were false, and Plaintiff knew them to be false when he made them because they concerned conduct Plaintiff claimed was happening to him or acts he claimed Ms. Hajdini committed against him personally that did not occur.

## IV. Plaintiff Engaged in a Similar Course of Conduct While Employed at Morgan Stanley

48. This is not the first time Plaintiff has lodged grave accusations of sexual and other workplace misconduct against an employer and a colleague.

49. In 2023, while employed at Morgan Stanley, Plaintiff accused a male manager of sexual harassment, intimidation, and threats to his career.

50. After his Morgan Stanley employment ended, Plaintiff accused his "former boss at Morgan Stanley" of rape, sexual assault, and forced drug use on www.askalawyeroncall.com (the "Website") as described below.

51. Plaintiff is now deploying against Ms. Hajdini and JPMC the same common plan, scheme, or design reflected in his false allegations about Morgan Stanley: accuse a colleague of serious sexual and other misconduct; portray himself as the victim of retaliation and career destruction; claim the existence of evidence corroborating those accusations; and then use the resulting institutional, legal, and reputational pressure in pursuit of substantial personal financial or employment-related benefit.

52. As part of advancing his allegations, Plaintiff unsuccessfully sought to recruit one or more coworkers to corroborate his account.

53. Plaintiff suggested that a coworker could make a lot of money by being part of a lawsuit.

54. When asked whether Plaintiff felt remorse because the people he was accusing had families and children, Plaintiff responded in sum or substance: why would I care; I care about my livelihood?

55. Plaintiff's allegations of sexual misconduct were false.

56. Plaintiff's own text messages were contrary to his claims, witness accounts

contradicted those claims, and Plaintiff twisted benign situations into something nefarious.

57. After the termination of Plaintiff's employment relationship with Morgan Stanley, Plaintiff visited the Website.

58. Plaintiff communicated with the Website about his employment at Morgan Stanley.

59. Plaintiff identified himself to the Website by the name "Chirayu Rana."

60. Plaintiff's communications with the Website were published on the Website in writing.

61. In Plaintiff's communications with the Website, he stated that he had been raped, sexually assaulted, harassed, and forced to do drugs by his former boss at Morgan Stanley.

62. In Plaintiff's communications with the Website, he referred to his former boss at Morgan Stanley using male pronouns, including by stating that "he threatened" Plaintiff, "he became hostile," "he said he would ruin my career," and "he started spreading lies about me."

63. Plaintiff further stated in the Website publication that he was also retaliated against "for seeking to move groups internally at the firm[.]"

64. Plaintiff stated in the Website that his former boss "threatened [him]," "made [him] really scared," "spread[] lies about [him]," and told a "false narrative about [him]."

65. Plaintiff stated in the Website that he had "been struggling mentally since then." He also claimed that he had recorded calls with the former boss and had "AMPLE evidence."

66. In Plaintiff's communications with the Website, he stated that he "signed a Separation Agreement" with Morgan Stanley.

67. In Plaintiff's communications with the Website, he stated that Morgan Stanley's human resources department had investigated his allegations and that he had been forced to sign the Separation Agreement under "duress."

68. When the Website account surfaced publicly in May 2026, Plaintiff denied knowing what it was.

69. When The Juggernaut confronted him with screenshots of the communications, Plaintiff responded, "I have no idea what that is," and called the posts "Deepfakes."

70. In his July 29, 2026 Answer to Ms. Hajdini's state court counterclaims, Plaintiff admitted that he had accessed the Website and asserted that, "out of fear of retribution," he had "camouflaged his experience with Hajdini while employed at JPMC" and had been "in fact detailing his experience with Hajdini." NYSCEF Doc. No. 134.

71. Plaintiff's explanation is false.

72. On the Website, Plaintiff was describing allegations about Morgan Stanley, not Ms. Hajdini or JPMC.

73. Upon information and belief, the material sexual harassment, intimidation, and career threat accusations Plaintiff advanced at Morgan Stanley were false as well, and Plaintiff knew they were false when he advanced them.

74. The Morgan Stanley episode reflects a materially similar course of conduct to that alleged here: grave workplace accusations, claimed corroborating evidence, alleged career threats and retaliation, resort to institutional and legal processes, and pursuit of personal financial or employment-related benefit.

### V. Plaintiff Made a Separate Knowingly False Representation to JPMC Concerning His Father

75. The same course of conduct was not limited to Plaintiff's accusations of workplace misconduct. Plaintiff also knowingly made a separate false factual representation to JPMC concerning his father when doing so served his personal interests.

76. Plaintiff represented to JPMC that his biological father had died.

77. Plaintiff represented to JPMC in writing that his father died.

78. At the time Plaintiff told JPMC that his father had died, his father was alive.

79. At the time Plaintiff told JPMC that his father had died, Plaintiff knew his father was alive.

80. Plaintiff's representation to JPMC that his father had died was therefore knowingly false.

81. Upon information and belief, Plaintiff made that false representation to obtain a personal employment-related benefit, including a paid leave of absence.

82. This episode is another instance of the common plan, scheme, or design alleged above: Plaintiff knowingly supplied materially false information to an employer when doing so could advance his personal interests.

83. In his July 29, 2026 Answer to Ms. Hajdini's state court counterclaims, Plaintiff admitted that his biological father was alive when Plaintiff first filed his state court action.

84. Plaintiff's biological father remained alive when Plaintiff commenced this federal action on July 27, 2026.[4]

## VI. Plaintiff Added an Accusation of Ongoing Stalking in His Extrajudicial Statements to *The Juggernaut*

85. On May 21, 2026, *The Juggernaut* published an article based in part on an "exclusive" interview with Plaintiff concerning his accusations against Ms. Hajdini and JPMC.

86. Plaintiff participated in an interview with *The Juggernaut*.

87. *The Juggernaut* quoted Plaintiff describing what he called the "ongoing situation"

[4] The father-related allegations are not asserted as independent defamatory publications concerning Ms. Hajdini. They are alleged as factual context bearing on Plaintiff's motive, state of mind (malice), willingness to make knowingly false factual representations for personal advantage, and the course of conduct alleged in these Counterclaims.

involving Ms. Hajdini as "her stalking me and harassing me."

88. Plaintiff communicated that statement directly to journalists, and the article identified it as Plaintiff's own words.

89. Upon information and belief, Plaintiff participated in the interview with *The Juggernaut* for publication and intended that the accusations he communicated would be published to *The Juggernaut*'s readers and, given the media frenzy, to the public at large.

90. By communicating those accusations directly to journalists at *The Juggernaut* in an interview, Plaintiff authorized and caused their publication.

91. Plaintiff described Ms. Hajdini's supposed stalking and harassment to *The Juggernaut* as an "***ongoing situation***" as of May 2026.

92. Plaintiff's statements to *The Juggernaut* about any alleged "ongoing" conduct by Ms. Hajdini were false.

93. Ms. Hajdini was not stalking or harassing Plaintiff on May 21, 2026, was not then engaged in an ongoing course of stalking him, and had never engaged in such conduct.

94. Plaintiff made the accusation about alleged "ongoing" conduct by Ms. Hajdini as the person claiming to be the direct target of the supposed conduct. He therefore knew whether Ms. Hajdini was then stalking him and knew his accusation was false.

95. During the same interview, Plaintiff claimed that he could provide evidence supporting his accusations, including evidence of Ms. Hajdini's supposed "direct supervisory influence," forensic device analysis, internal HR and EEOC materials, and additional witness affidavits, emphasizing that "two affidavits" had been "executed on penalty of perjury."

96. The *Juggernaut* article reported that Plaintiff did not provide the supporting materials despite repeated follow-up requests.

97. When reporters later again sought the promised documents, Plaintiff stated that there had been "a clear mistake," denied having shared information with the publication, asserted that his email or telephone "account ha[d] been compromised," and then blocked the publication's number.

## VII. Plaintiff and His Counsel Made Statements to the Press

98. On June 8, 2026, Joseph & Norinsberg LLC, Plaintiff's newly retained counsel, issued a public press release announcing that Plaintiff intended to discontinue his affirmative state court claims and file a new complaint in federal court. The release represented that the forthcoming federal complaint would provide a fuller factual record and additional evidence and announced: "The story the public thinks it knows is about to change dramatically. Stay tuned."

99. Plaintiff thereafter discontinued his affirmative state court claims and, on July 27, 2026, commenced this federal action. On the same day, Joseph & Norinsberg issued a second public press release announcing the federal action and repeating accusations that Ms. Hajdini subjected Plaintiff to sexual coercion and assault, forced sexual contact, career threats, and drugging.

100. Upon information and belief, Plaintiff brought the federal action maliciously and for an ulterior purpose: to amplify his false accusations against Ms. Hajdini publicly and increase pressure on Ms. Hajdini and JPMC.

101. When Plaintiff commenced the federal action, he knew its central accusations concerning Ms. Hajdini were false because they concerned acts he claimed Ms. Hajdini personally committed against him and words he claimed she spoke directly to him.

102. Upon information and belief, Plaintiff knew of and authorized those public communications by his counsel.

## VIII. Plaintiff's Lies About Ms. Hajdini Have Ruined Her Reputation and Destroyed Her Life

103. By propagating these lies to JPMC in his Internal Complaint, Plaintiff initiated a months-long investigation into Ms. Hajdini.

104. Ms. Hajdini sat for lengthy interviews during which JPMC personnel confronted her with certain of Plaintiff's falsehoods and required her to provide evidence demonstrating that Plaintiff's statements about her in the Internal Complaint were false.

105. Plaintiff knew that his Internal Complaint had triggered that investigation.

106. Prior to Plaintiff's campaign, Ms. Hajdini maintained a longstanding relationship with an education-focused organization dedicated to college readiness and educational access for low-income students (the "Education Organization").

107. In May 2026, that organization ended, suspended, or materially altered its relationship with Ms. Hajdini because of accusations concerning her.

108. Since learning about Plaintiff's false accusations and statements in the Internal Complaint, Ms. Hajdini has sought and received mental-health treatment to manage the severe emotional distress caused by Plaintiff's fabrications and course of conduct—including the profound distress of discovering that, without having committed any of the acts alleged, she had been made the target of a deliberate and sustained scheme to cast her as a sexual predator and criminal and to use that false narrative to damage and pressure her.

109. Plaintiff's actionable extrajudicial accusations substantially disrupted Ms. Hajdini's personal and professional life and caused reputational, professional, emotional, and physiological harm.

110. The distress has manifested in multiple ways, including severe anxiety, panic, fear, and withdrawal from personal relationships.

111. Ms. Hajdini's severe emotional distress remains ongoing.

## COUNT I

### DEFAMATION / LIBEL AND SLANDER AND DEFAMATION / LIBEL AND SLANDER *PER SE*

112. Ms. Hajdini repeats and realleges paragraphs 1–113 of the Counterclaims as if fully set forth herein.

113. Plaintiff knowingly made false factual statements to JPMC and its representatives in his written May 20, 2025 Internal Complaint, including the accusations identified in paragraph 33 that Ms. Hajdini sexually assaulted Plaintiff, forcibly performed oral sex on him, subjected him to unwanted sexual touching, threatened his employment to obtain sexual conduct, directed racial epithets at him, and improperly monitored his accounts, spending, or whereabouts. Plaintiff submitted or caused the submission of the Internal Complaint and adopted its factual accusations.

114. Plaintiff also knowingly made the false factual statements alleged in paragraphs 41, 44, and 45 to Affiant A and Affiant B.

115. During his May 2026 interview with The Juggernaut, Plaintiff described the "ongoing situation" involving Ms. Hajdini as "her stalking me and harassing me." The statement expressly concerned "Lorna," whom The Juggernaut identified as Ms. Hajdini, and was presented as Plaintiff's firsthand description of conduct allegedly occurring in May 2026.

116. The statement was false and went beyond Plaintiff's then-pending state court complaint, which did not allege that Ms. Hajdini was stalking him in May 2026 or that any alleged stalking was ongoing.

117. Plaintiff's statement was therefore a new and false accusation that Ms. Hajdini herself was then engaged in an "ongoing situation" of stalking and harassing him.

118. On July 27, 2026, through his counsel and, upon information and belief, with

Plaintiff's knowledge and authorization, Plaintiff publicly repeated accusations against Ms. Hajdini in a press release announcing the federal action and related social media engagement.

119. The press release and social media engagement publicly repeated and amplified false accusations that Ms. Hajdini subjected Plaintiff to sexual coercion and assault, forced sexual contact, career threats, and drugging.

120. Those accusations were false, and Plaintiff knew they were false because they concerned acts he claimed Ms. Hajdini personally committed against him which did not occur.

121. Plaintiff's actionable statements, including the Internal Complaint, the July 27 press release, Plaintiff's May 2026 statement to *The Juggernaut*, and Plaintiff's false statements to the affiants, accuse Ms. Hajdini, among other things, of sexual assault, forced sexual conduct, racial harassment, employment threats, misuse of workplace information, drugging, and stalking—conduct capable of exposing her to global public contempt, objectification, hatred, ridicule, aversion, and disgrace and of directly impugning her fitness and conduct as a senior banking professional.

122. Plaintiff's false accusations that Ms. Hajdini used workplace authority to coerce sexual conduct, threatened a colleague's career, engaged in racial harassment, or misused employer systems or information directly impugn her fitness and conduct as a senior banking professional and constitute defamation per se under the trade, business, or profession category. Plaintiff's false accusations that Ms. Hajdini sexually assaulted and drugged him also charge her with serious crimes and constitute defamation per se on that independent basis. Ms. Hajdini therefore need not plead or prove special damages as to actionable statements falling within either category.

123. Plaintiff therefore acted with actual malice.

124. Plaintiff's actionable extrajudicial defamatory publications directly caused and contributed to Ms. Hajdini's economic, reputational, emotional, and other compensable harm, including the professional and mental-health consequences alleged above and the time and resources required to respond to and rebut Plaintiff's false accusations. Plaintiff's false accusations also resulted in Ms. Hajdini being inundated with communications concerning those accusations and required her to devote substantial time, energy, and professional attention to confronting Plaintiff's fabrications and defending herself and her professional reputation.

**COUNT II**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

125. Ms. Hajdini repeats and realleges paragraphs 1–113 of the Counterclaims as if fully set forth herein.

126. Plaintiff engaged in a deliberate and sustained nonjudicial course of conduct directed at Ms. Hajdini that, viewed in its totality, was so outrageous in character and so extreme in degree as to exceed all possible bounds of decency and be utterly intolerable in a civilized community.

127. Plaintiff fabricated heinous allegations that his coworker, Ms. Hajdini, raped him, sexually assaulted him, drugged him, forced sexual conduct upon him, threatened his career, racially harassed him, stalked him, and otherwise engaged in abusive and criminal conduct.

128. Those accusations principally concerned acts Plaintiff claimed Ms. Hajdini personally committed against him and words he claimed she spoke directly to him.

129. Because those acts did not occur and those words were not spoken, Plaintiff knew the accusations were false.

130. But Plaintiff's conduct was not limited to a single false statement or isolated

mistake; he repeatedly advanced, reinforced, and amplified the accusation narrative across multiple nonjudicial settings.

131. Plaintiff repeatedly advanced, reinforced, and amplified that accusation narrative across multiple nonjudicial settings, including by communicating materially similar accusations to Affiant A and Affiant B before his Internal Complaint and later invoking their affirmations outside court as corroboration for his accusations.

132. Upon information and belief, this conduct reflected the same common plan, scheme, or design alleged above in connection with Plaintiff's substantially similar accusations concerning Morgan Stanley and a male supervisor while pursuing personal financial or employment-related benefit.

133. Plaintiff continued his course of conduct after its consequences to Ms. Hajdini had become apparent.

134. Plaintiff knew that the Internal Complaint triggered a months-long JPMC investigation.

135. By May 2026, he also knew that the accusations had become public globally and were the subject of widespread press scrutiny.

136. He nevertheless continued advancing and bolstering them outside court.

137. In his May 2026 interview with *The Juggernaut*, Plaintiff falsely accused Ms. Hajdini of an "ongoing" course of stalking and harassment and represented that he could provide additional corroboration, including forensic materials, internal records, and additional witnesses. As alleged above, *The Juggernaut* reported that Plaintiff did not provide the supporting materials he said he could provide despite repeated requests. Plaintiff knew the accusation of ongoing stalking was false because he claimed to be its direct target.

138. Plaintiff also authorized the July 27, 2026 press release described above, which publicly repeated and amplified his false accusations against Ms. Hajdini.

139. Plaintiff knew that fabricated accusations of rape, sexual assault, drugging, stalking, racism, and professional abuse would subject Ms. Hajdini to public humiliation and severe emotional distress, or at minimum, recklessly disregarded the substantial probability of causing those harms.

140. Plaintiff intended to cause Ms. Hajdini severe emotional distress.

141. Plaintiff's continuation and amplification of the course after it had triggered a lengthy workplace investigation and widespread public scrutiny further demonstrates that intent or reckless disregard.

142. As a direct and proximate result of Plaintiff's sustained course of conduct, Ms. Hajdini suffered severe emotional distress, including severe anxiety, panic, fear, and withdrawal from personal relationships.

143. Her severe emotional distress remains ongoing.

144. The severe emotional distress alleged here arose not merely from injury to Ms. Hajdini's reputation, but from the psychological shock of discovering that, without having committed any of the acts alleged and without knowing that Plaintiff was constructing such an elaborate and false narrative about her, she had been unwittingly made the target of a sustained course designed to portray her as a rapist, sexual predator, racist, stalker, and criminal.

145. No person should be required to endure the experience of learning that a coworker has deliberately fabricated accusations of rape, sexual assault, drugging, and abuse against her, repeatedly reinforced those accusations, and continued amplifying them even after their devastating consequences became apparent.

146. Plaintiff's sustained course of conduct caused Ms. Hajdini severe psychiatric and emotional injuries distinct from the reputational harm caused by individual defamatory publications.

## COUNT III

## PRIMA FACIE TORT

147. Ms. Hajdini pleads this Count in the alternative and repeats and realleges paragraphs 14–46 and 87–113 of the Counterclaims, solely to the extent consistent with this alternative claim.

148. Plaintiff intentionally inflicted harm upon Ms. Hajdini without justification or excuse.

149. As to the conduct on which this alternative Count rests, Plaintiff's sole motivation was disinterested malevolence—the infliction of harm upon Ms. Hajdini—and not financial gain, employment advantage, litigation success, or any other self-interested objective.

150. As a result, Ms. Hajdini has suffered special damages in the form of, inter alia, the costs of mental health treatment to help her manage the emotional fallout that has resulted from Plaintiff's fabrications, as well as the costs of private and/or shared-ride transportation to avoid media and other public scrutiny.

## COUNT IV

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

151. Ms. Hajdini repeats and realleges paragraphs 1-113 solely to the extent they concern Ms. Hajdini's relationship with the Education Organization, and interference with career and earning potential, Plaintiff's knowledge and intent, the knowingly false extrajudicial accusations alleged as the wrongful means supporting this Count, causation, and resulting injury.

152. Ms. Hajdini maintained an active and valuable professional relationship with an education-focused organization dedicated to college readiness and educational access for low-income students (the "Education Organization"), which provided concrete career and professional benefits, including networking and leadership-development opportunities, and was expected to continue.

153. Plaintiff knew of Ms. Hajdini's relationship with this Education Organization. Plaintiff also knew that her professional reputation was important to that relationship.

154. Plaintiff further knew that Ms. Hajdini's professional reputation, including her reputation for hard work, reliability, and dedication, was important to her career at JPMC, her ability to perform her work effectively, and her prospects for professional advancement and increased earnings.

155. Plaintiff also knew that accusations of criminal, sexual, and workplace misconduct could foreseeably disrupt a person's employment, professional affiliations, and third-party business and professional relationships.

156. Plaintiff therefore understood that accusations of serious criminal, sexual, and workplace misconduct communicated to an employer or professional organization could cause the recipient to terminate or restrict a professional relationship.

157. Upon information and belief, Plaintiff intended that his false accusations concerning Ms. Hajdini reach the Education Organization and cause it to alter, suspend, or terminate its relationship with her. By Plaintiff's course of conduct, as alleged herein, Plaintiff knew or reasonably expected that one or more of his false allegations would be communicated to the Education Organization.

158. Plaintiff also intended or reasonably expected that his false accusations would

interfere with Ms. Hajdini's employment, professional standing, and career at JPMC.

159. Plaintiff used knowingly false extrajudicial accusations of sexual assault, drugging, coercion, racial harassment, threats, retaliation, and other professionally disqualifying misconduct as the wrongful means of interference. Plaintiff knew those accusations were false because they concerned conduct he claimed to have experienced firsthand.

160. Plaintiff's false accusations did, in fact, reach the Education Organization.

161. In May 2026, the Education Organization informed Ms. Hajdini that it would terminate its relationship with her because of accusations concerning her.

162. Immediately before the Education Organization learned of Plaintiff's accusations, Ms. Hajdini's relationship with the organization remained active, and she had received no notice or other indication that it would be terminated, suspended, or materially altered. But for Plaintiff's false accusations, the relationship would have continued.

163. Plaintiff's false accusations also interfered with Ms. Hajdini's employment at JPMC by inhibiting her ability to work from JPMC's offices and participate fully in her ordinary professional environment. This has impaired her ability to perform her work, develop and maintain professional relationships, and pursue career advancement and increased earnings.

164. As a direct result of Plaintiff's tortious interference, Ms. Hajdini has suffered and will continue to suffer damages, including lost professional opportunities, impairment of business relationships, interference with her employment and career progression at JPMC, impairment of her earning potential, diversion of professional time and energy, and economic losses. As a direct result of Plaintiff's interference, Ms. Hajdini's relationship with the Education Organization ended, was suspended, or was materially altered, causing additional damages.

## MALICIOUS PROSECUTION

165. Ms. Hajdini reserves all rights and remedies arising from Plaintiff's commencement and prosecution of this action. Upon final termination of Plaintiff's claims in Ms. Hajdini's favor, and with proof that Plaintiff commenced and prosecuted this action maliciously, without probable cause, and based on fabricated allegations, Ms. Hajdini intends to assert a claim against Plaintiff for malicious prosecution, together with all special damages available in connection with that claim.

## JURY DEMAND

Ms. Hajdini hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Ms. Hajdini requests that judgment be entered in her favor against Plaintiff and that the Court award the following relief:

(i) An award of damages against Plaintiff, in an amount to be determined at trial, to compensate Ms. Hajdini for all monetary and/or economic damages;

(ii) An award of damages against Plaintiff, in an amount to be determined at trial, to compensate Ms. Hajdini for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Ms. Hajdini's consequential damages, economic damages, special damages, presumed damages, emotional distress, personal dignity, humiliation, mental anguish, reputational harm, and professional disruption to the extent recoverable on the claims proven;

(iii) An award of punitive damages in an amount to be determined at trial, for Plaintiff's willful, malicious, wanton, oppressive, fraudulent, and morally culpable conduct, undertaken with conscious and reckless disregard for Ms. Hajdini's rights,

reputation, emotional well-being, professional standing, and personal safety. Punitive damages are necessary to punish Plaintiff for his egregious misconduct and to deter Plaintiff and others from engaging in similar misconduct, to the extent permitted by applicable law;

(iv) To the extent permitted by law, appropriate permanent injunctive relief following adjudication on the merits, narrowly tailored to prohibit Plaintiff from repeating, republishing, authorizing, or causing the republication of specific statements concerning Ms. Hajdini that are finally adjudicated in this action to be false and defamatory, and such other narrowly tailored equitable relief as may be necessary to prevent the continued dissemination of those adjudicated false statements;

(v) Pre-judgment and post-judgment interest on all amounts due to the extent permitted by law;

(vi) An award of Ms. Hajdini's reasonable attorneys' fees and costs, and costs and expenses of this action only if and to the extent independently authorized by applicable law; and

(vii) Such other and further relief as the Court may deem just and proper.

Dated: September 28, 2026

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Melissa C. Rodriguez*

Sam S. Shaulson
Melissa C. Rodriguez
Rebecca Hegazy
101 Park Avenue
New York, New York 10178
Telephone: 212.309.6000
Fax: 212.309.6001
sam.shaulson@morganlewis.com
melissa.rodriguez@morganlewis.com
rebecca.hegazy@morganlewis.com

*Attorneys for Defendant Lorna Hajdini*

**CERTIFICATE OF SERVICE**

I, Melissa C. Rodriguez, hereby certify that a copy of the foregoing document was filed electronically and served on all parties of record via the Court's ECF system.

*/s/ Melissa C. Rodriguez*
Melissa C. Rodriguez