UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHIRAYU S. RANA,<br><br>Plaintiff,<br><br>-against-<br><br>JPMORGAN CHASE BANK, N.A., LORNA HAJDINI, BRANDON GRAFFEO, JON WOLTER, and KELLY CROWE,<br><br>Defendants. | Case No. 26-cv-06351-LAK |

**DEFENDANT/COUNTERCLAIM PLAINTIFF LORNA HAJDINI'S OPPOSITION TO PLAINTIFF'S MOTION TO WITHDRAW**

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 4

A. Plaintiff built his claims against Ms. Hajdini on perjured affirmations. ........ 4

B. The perjured affirmations have played a central role in Plaintiff and J&N's litigation strategy and media campaign. ........ 8

C. J&N's boilerplate motion to withdraw and attempt to avoid discovery and other case obligations. ........ 9

III. ARGUMENT ........ 11

A. J&N has not provided an adequate basis for withdrawal under Local Civil Rule 1.4. ........ 11

B. Neither a discovery stay nor further extension of the Counterclaims response deadline is warranted. ........ 14

C. Withdrawal cannot shield J&N from any forthcoming sanctions motion. ........ 16

IV. CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banus v. Citigroup Glob. Mkts., Inc.*,
757 F. Supp. 2d 394 (S.D.N.Y. 2010) .......... 21

*Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*,
2014 WL 1087934 (S.D.N.Y. Mar. 19, 2014) .......... 15

*Dixon v. Reid*,
2025 WL 2379626 (S.D.N.Y. July 10, 2025) .......... 20

*Doe v. Gowl, Jr.*,
No. 25-cv-9799, ECF No. 78 (S.D.N.Y. Feb. 3, 2026) .......... 21

*In re Enron Corp.*,
349 B.R. 115 (Bankr. S.D.N.Y. 2006) .......... 18

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
2017 WL 5067432 (S.D.N.Y. May 9, 2017) .......... 21

*Luxwear Ltd. v. Adaptiv Rsch. & Dev. Grp.*,
2023 WL 3010397 (S.D.N.Y. Mar. 28, 2023) .......... 6, 15, 18, 19

*Luxwear Ltd. v. Adaptiv Rsch. & Dev. Grp.*,
2023 WL 3011912 (S.D.N.Y. Mar. 30, 2023) .......... 15

*Republic of Turkey v. Christie's, Inc.*,
316 F. Supp. 3d 675 (S.D.N.Y. 2018) .......... 18

*SEC v. Gibraltar Glob. Sec., Inc.*,
2015 WL 2258173 (S.D.N.Y. May 8, 2015) .......... 20

*Sentient Flight Grp., LLC v. Klein*,
2011 WL 1431987 (S.D.N.Y. Jan. 6, 2011) .......... 18

*Sound Around, Inc. v. Friedman*,
No. 24-cv-1986, ECF No. 333 (S.D.N.Y. Nov. 25, 2025) .......... 7, 20

*Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. NYC Flooring L.L.C.*,
2020 WL 7016449 (S.D.N.Y. Oct. 7, 2020) .......... 21

*United States v. Ackert*,
169 F.3d 136 (2d Cir. 1999) .......... 18

*Whiting v. Lacara*,
187 F.3d 317 (2d Cir. 1999) .......... 15

**Other Authorities**

Fed. R. Civ. P. 8(b)(1)(B) .......... 19

Local Civil Rule 1.4 .......... 15, 18

N.Y. R. Prof. Conduct 1.16(a) .......... 6, 16

N.Y. R. Prof. Conduct 3.3 .......... 6, 15, 17

# I. INTRODUCTION

Plaintiff Chirayu Rana ("Plaintiff") has spun a web of vicious, life-altering lies. He accused Defendant/Counterclaim Plaintiff Lorna Hajdini ("Ms. Hajdini"), first to JPMC, then in state court and now here, of repeatedly drugging, raping, and sexually assaulting him.[1] He has portrayed his former employer, JPMorgan Chase Bank, N.A. ("JPMC"), as a discriminatory institution willing to protect a sexual predator, and his former colleagues, Defendants Graffeo, Wolter, and Crowe, as well as Ms. Hajdini, as brazen racists. To bolster his fabricated accusations, Plaintiff enlisted his longtime friend, Allan Flott, and his own sister, [redacted], to submit ***perjured*** affirmations as supposed corroboration. And two law firms—Kaiser Saurborn & Mair, P.C. ("KSM"), and now Joseph & Norinsberg, LLC ("J&N")[2]—have happily helped advance Plaintiff's fraudulent shakedown and made-up accusations in court and in the media. Until now. As the supposedly unimpeachable evidence supporting Plaintiff's lies unravels, J&N wants to withdraw.

None of this is speculation. Counsel for [redacted]—***Plaintiff's own sister***—has informed J&N, as well as JPMC's and Ms. Hajdini's attorneys, that both [redacted] and Flott's sworn affirmations—which were procured by Plaintiff—are false.[3] [redacted] has now confirmed that representation: "[redacted]" Ex. G ¶ 3. And J&N has known this for months: [redacted] Ex. G ¶ 13. Even so, J&N continued to double- and triple-down, vigorously pursuing claims against Ms. Hajdini, JPMC, and the other defendants that are built

---

[1] Plaintiff's state court action was filed in the Supreme Court of the State of New York, County of New York, and is captioned *Chirayu Rana v. JPMorgan Chase & Co. and Lorna Hajdini*, Index No. 155620/2026. State court pleading are cited herein as "NYSCEF No. __."

[2] Prior to filing his false allegations in court, Plaintiff was also represented by Outten & Golden LLP. That law firm ended its representation of Plaintiff too.

[3] *See* Declaration of Melissa C. Rodriguez ("Rodriguez Decl.") ¶ 24.

on fraud. And despite these facts, and those discussed below and in a forthcoming sanctions motion, J&N had the gall to file an amended complaint on October 12 that recycled these knowingly false accusations.

These were no peripheral witnesses. Their perjured affirmations purported to independently corroborate Plaintiff's vilest accusations, including that [redacted] saw Ms. Hajdini with Plaintiff entering the apartment building where the rapes purportedly occurred and overheard Ms. Hajdini telling Plaintiff, "I own you Brownie," and that she appeared naked before Allan Flott (a complete stranger to Ms. Hajdini), lit a cigarette, and demanded he join her and Plaintiff in the bedroom for a threesome. *See* ECF No. 53 ¶¶ 85–96; [redacted] Aff. ¶ 9; Flott Aff. ¶ 11. J&N repeatedly endorsed the affirmations in state court and continues to press their false accounts here by referring to and relying upon the perjured affirmations in their pleadings. ECF No. 53 ¶¶ 88–96; NYSCEF No. 134 at 4–5. Indeed, on October 12, J&N repeated those lies in an amended complaint. ECF No. 53 ¶¶ 88–96. Two days later, J&N moved to withdraw, relying on a boilerplate claim of an attorney-client breakdown rather than offering any meaningful explanation. ECF Nos. 55-57. But J&N cannot simply walk away from its duty of candor to the Court. *See* N.Y. R. Prof. Conduct 3.3. The Court and Ms. Hajdini are "entitled to know the basis for the motion." *Luxwear Ltd. v. Adaptiv Rsch. & Dev. Grp.*, 2023 WL 3010397, at *1 (S.D.N.Y. Mar. 28, 2023); *see* L. Civ. R. 1.4(b) (withdrawal permitted "only upon a showing by affidavit or otherwise of satisfactory reasons"). J&N should therefore be required to disclose why it is seeking to withdraw, including details about what it knew and when—and how its conduct could have possibly satisfied its ongoing duty to assess the facts and risks of its engagement, as well as its obligation to inform the Court of any fraud upon it. *See* N.Y. R. Prof. Conduct 1.16(a).

Nor should withdrawal become another means of evading discovery and other case obligations. Plaintiff's document production remains overdue, despite J&N's representation that it imaged four devices and had approximately 50,000 documents collected for production. Oct. 6, 2026 Tr. 38:22–39:3. That outstanding production, together with Plaintiff's deficient interrogatory responses and initial disclosures, has already delayed Plaintiff's deposition. Yet J&N seeks another prolonged interruption despite its prior sworn assurance to state court that moving the case to federal court would cause "absolutely no prejudice," and its express promise that "Plaintiff will comply with his disclosure obligations." NYSCEF Nos. 93 at 2, 126 at 15. Courts have conditioned withdrawal on counsel completing outstanding obligations in far less egregious circumstances. *See, e.g.*, *Sound Around, Inc. v. Friedman*, No. 24-cv-1986, ECF No. 333 (S.D.N.Y. Nov. 25, 2025). The Court should hold J&N to its commitment and require it to answer Ms. Hajdini's Counterclaims and complete the outstanding discovery before it is allowed to withdraw. Otherwise, Plaintiff would be permitted to accuse Ms. Hajdini of heinous crimes, yet again evade discovery into those accusations, and invoke his counsel's withdrawal to further delay producing evidence that will expose his lies. Plaintiff—and Plaintiff alone—would benefit from that outcome. Ms. Hajdini did not choose to be Plaintiff's victim, nor did she choose this litigation, this forum, or Plaintiff's counsel. She should not now bear the consequences of yet another supposed breakdown in Plaintiff's relationship with his counsel.

Finally, the Court should also retain jurisdiction over J&N to address Ms. Hajdini's forthcoming motion for sanctions and other appropriate relief arising from their conduct. J&N chose to move the dispute into federal court and filed a sprawling complaint that this Court observed "goes into endless unnecessary detail." Oct. 6, 2026 Tr. 16:19–21. J&N also publicly proclaimed the existence of substantial corroborating evidence and repeatedly trumpeted the perjured affirmations. Indeed, J&N portrayed Plaintiff's co-conspirators—the affiants—as "witnesses who came forward in

a matter involving allegations of sexual misconduct," NYSCEF Doc. No. 126 at 15–16, branded Ms. Hajdini's request for their identities "witness intimidation with a caption on it" (*id.* at 15), and invoked the need for "protecting non-parties from public exposure" (*id.* at 16). Yet, all the while, they have known the Plaintiff's claims were built on perjured evidence. Withdrawal cannot shield J&N from scrutiny into what it filed, what it knew, and what it failed to correct.

Ms. Hajdini has suffered devastating reputational, professional, and personal harm. She deserves to clear her name without further delay. The Court should therefore (1) deny withdrawal without prejudice; (2) require J&N to account for the real reasons it seeks to withdraw; (3) reject any further discovery stay; (4) require Plaintiff to answer her Counterclaims immediately; and (5) retain jurisdiction over J&N for any subsequent sanctions proceedings arising from its conduct in this litigation.

## II. BACKGROUND

### A. Plaintiff built his claims against Ms. Hajdini on perjured affirmations.

On May 20, 2025, Plaintiff, through Outten & Golden LLP, submitted an internal complaint to JPMC falsely accusing Ms. Hajdini of drugging, raping, sexually assaulting him. NYSCEF Doc. No. 134 at 4 (¶¶ 38–39); ECF No. 1 ¶ 19. The internal complaint triggered an internal investigation that required Ms. Hajdini to disclose highly personal and intimate details of her life just to clear her name. *See* NYSCEF Doc. No. 130, ECF No. 43 ¶ 50. Yet, Plaintiff refused to cooperate with the investigation he initiated or provide evidence supporting his claims—because none exists.[4] ECF No.

---

[4] This is not the first time Plaintiff has sought to extort an employer based on false accusations. Plaintiff previously honed his scheme of fraud and attempted extortion at Morgan Stanley. In 2023, while employed by Morgan Stanley, he falsely accused a male supervisor of sexual harassment, then sought to enlist a coworker to corroborate his allegations, telling him that "if you're part of the lawsuit you could make a lot of money." *See* Ex. C (LH-MS-000266, -000278–81, -000302). When the coworker refused and questioned the harm to the accused supervisor and his family, Plaintiff replied, "why would I care, I care about my livelihood." *Id.* at LH-MS-000302–03. Plaintiff later escalated his accusations to drugging and rape. *See* Ex. E (LH-JUSTANSWER-000000001, -000000008–10).

65 at 1 (JPMC explaining that Plaintiff refused to provide information central to his allegations, including dates of alleged misconduct and identities of purported witnesses, despite nearly a year of requests). Nonetheless, on April 27, 2026, Plaintiff, through KSM, filed a pseudonymous action in New York Supreme Court repeating the same fabricated tale. *See* NYSCEF No. 1 at 1; ECF No. 53 ¶ 36. In seeking anonymity in state court, Plaintiff submitted two affirmations signed under penalty of perjury: one by his longtime friend Allan Flott and the other by his sister, [redacted]. *See* NYSCEF No. 126 at 13; Flott Aff. ¶¶ 1, 14–15; [redacted] Aff. ¶¶ 1, 9.

Flott's affirmation depicted an explicit sequence. At a September 13, 2024 concert, he swore that a woman was "handsy" with Plaintiff, touching his lap, back, and legs as Plaintiff appeared uncomfortable. Flott Aff. ¶¶ 2–6. Flott also claimed that, later that month, at [redacted]'s apartment, a loudly intoxicated woman—Ms. Hajdini—arrived with Plaintiff, emerged from the bedroom "completely naked," sat beside Flott, lit a cigarette, and repeatedly demanded that he "come join" them. *Id.* ¶¶ 8–11. Per Flott, Ms. Hajdini allegedly declared, "I own Chirayu, so you'd better come join." *Id.* ¶ 11. Flott further swore that, through the closed bedroom door, he heard Rana pleading, "no, no, no, you have to leave" and "Please stop," and that Rana afterwards said Hajdini had raped him. *Id.* ¶¶ 12–15.

[redacted]'s affirmation supplied other damning details. She swore that, outside her apartment in summer 2024, she saw Ms. Hajdini kissing Rana's neck and grabbing his rear end while he turned away. [redacted] Aff. ¶¶ 5–6. She further attested that, in September 2024, she encountered Rana and an apparently intoxicated Ms. Hajdini entering her apartment building, and to hear Ms. Hajdini make a possessive, racially charged remark to the effect of "I own you Brownie." *Id.* ¶¶ 7–9. These

---

But a separation agreement with Morgan Stanley foreclosed further recovery from it. Ex. D (LH-MS-000429); Ex. E (LH-JUSTANSWER-000000001, -000000010). So Plaintiff opted to roll out the same scheme against Ms. Hajdini and JPMC.

were presented as eyewitness accounts of sexual misconduct, coercion, and racial abuse, and underpin—and are expressly relied on in—the complaint (and amended complaint) at every turn:

| Amended Complaint | Perjured Affirmations |
|---|---|
| "[H]e was awakened in the middle of the night when Hajdini arrived with Mr. Rana." ¶85 | "In the middle of the night, I was awoken by the sound of a woman who was clearly intoxicated and speaking very loudly. Shortly after, Chirayu entered the apartment with the woman." Flott Affirmation ¶9 |
| "Mr. Rana repeatedly implored Hajdini to be quiet, but Hajdini loudly refused, insisting that she would not." ¶86 | "Chirayu asked the woman to please be quiet, but she loudly refused and said she would not be quiet." Flott Affirmation ¶9 |
| "Hajdini emerged completely naked, sat on the living room couch, lit a cigarette" ¶87 | "A short while later I was awoken by Ms. Hajdini, who was completely naked. Ms. Hajdini sat on the couch and lit a cigarette." Flott Affirmation ¶11 |
| "[R]epeatedly demanded that the witness 'come join us.'" ¶87 | "She then asked me to come to the bedroom with her and 'join them.' I told her no. She again said, 'come join, come join.'" Flott Affirmation ¶11 |
| "You know, I own Chirayu, so you'd better come join." ¶87 | "you know, I own Chirayu, so you'd better come join." Flott Affirmation ¶11 |
| "[S]he was in charge of him, would get what she needed from him, and threatened him and that if he did not comply, there would be trouble." ¶90 | "I am in charge of you and I will get what I need from you," and "if you don't comply, there will be trouble." Flott Affirmation ¶14 |
| "[A] second independent witness observed Hajdini press herself against Mr. Rana, kiss his neck, and grab his rear end." ¶92 | "While Chirayu stood there, the woman was standing very close to him. She had her face in his neck and appeared to be kissing his neck. I also saw her grab his rear end." [redacted] Affirmation ¶6 |
| "Throughout the encounter, Mr. Rana turned his head away, appeared visibly uncomfortable, and made no effort to reciprocate." ¶92 | "Chirayu's head was turned away from the woman, as if to avoid the interaction. He did not appear interested in the woman and I did not see him reciprocate in any way." [redacted] Affirmation ¶6 |
| "Hajdini appeared intoxicated and was speaking loudly. Mr. Rana appeared visibly irritated, avoided eye contact" ¶94 | "Ms. Hajdini appeared intoxicated and was being very loud. My brother appeared to be extremely irritated and |

| | |
|---|---|
| | did not make eye contact with me" [redacted] Affirmation ¶8 |
| "[I]nitially believed Hajdini was speaking to her. Moments later, however, she realized that Hajdini had directed the remark at Mr. Rana." ¶95 | "[A]t first I thought she was speaking to me. When I looked at Ms. Hajdini I realized that she was speaking to my brother." [redacted] Affirmation ¶9 |
| "[A] woman from work was sexually harassing him, attempting to blackmail him, and making his life 'hell.'" ¶98 | "[A] woman at his work who was harassing him and trying to blackmail him. He was not comfortable telling me details but kept saying that this woman was making his life hell." [redacted] Affirmation ¶4 |

As Ms. Hajdini has said all along, these affirmations are false. On October 2, [redacted]'s counsel, Patrick Selvey, told JPMC's counsel that [redacted] had signed "statements that are untrue," that Plaintiff had misled her into "supporting a scheme," and that she understood she was admitting to perjury. Kreger Decl. ¶¶ 18–24. That evening, JPMC's counsel confirmed those disclosures in writing, recounting that Plaintiff had asked [redacted] to present statements outside her personal knowledge as firsthand observations, while assuring her the affirmation would not be used in court or disclosed publicly. *Id.* ¶ 25. Selvey did not dispute that account. *Id.* ¶ 27. On October 13, Selvey reported that Flott likewise had been induced by Plaintiff to execute a false affirmation, and confirmed in writing that both witnesses intended to provide recantations. Kreger Decl. ¶¶ 28–29; Rodriguez Decl. ¶ 31; Ex. F (Selvey email asking to discuss "the timing and framework for the ***production of documents and affirmations recanting [*** [redacted] ***and Flott's] prior statements.***") (emphasis added). On a call on October 16 that also included counsel for Flott, Selvey reiterated that the affirmations were fraudulent and that the witnesses were seeking to recant. *Id.* ¶¶ 30-31; Rodriguez Decl. ¶ 34. Selvey confirmed on that call that he had informed Norinsberg of [redacted]'s intended recantation ***before*** J&N moved to withdraw on October 14. Kreger Decl. ¶¶ 32–34; Rodriguez Decl. ¶ 34. In fact, [redacted] counsel's first attempt to [redacted] Ex. G ¶ 13.

The evidence has since become even more damning. On October 20, [redacted] served a written response to JPMC's subpoena stating that [redacted] (emphasis added). Kreger Decl. ¶¶ 35–36; Rodriguez Decl. ¶ 35. Then on October 22, [redacted] supplied sworn, firsthand testimony directly contradicting the purported encounter in her apartment. She affirms: "[redacted] Ex. G ¶ 11. She further confirms: "[redacted]" *Id.* These statements directly contradict Flott's purported account of an encounter involving Plaintiff and Ms. Hajdini inside [redacted]'s apartment. *See* Flott Aff. ¶¶ 8–15; ECF No. 53 ¶¶ 85–91; *see also* Ex. G ("[redacted].).

### B. The perjured affirmations have played a central role in Plaintiff and J&N's litigation strategy and media campaign.

J&N did not merely inherit the affirmations or Plaintiff's allegations from KSM. Upon entering the case in June, J&N represented that it had undertaken a "comprehensive review" of the matter. NYSCEF No. 93 at 3. On June 8, it answered Ms. Hajdini's counterclaims in state court, expressly admitting that "individuals have provided affirmations supporting [Plaintiff's] claims" and denying that those affirmations were "improper." NYSCEF No. 95 at 4–5. That same day, J&N publicly announced that it had uncovered "substantial new evidence" and promised to reveal the full extent of Plaintiff's accusations.[5]

J&N simultaneously sought to discontinue the state action and refile in federal court. NYSCEF Nos. 92-93. In doing so, Jon Norinsberg of J&N assured the state court, under oath, that doing so

[5] *See* Joseph & Norinsberg, LLC, Press Release (June 8, 2026), available at https://tinyurl.com/ymspxpbj.

would cause "absolutely no prejudice." NYSCEF No. 93 at 2–3. And when Ms. Hajdini sought disclosure of the identities of the affiants who had accused her of heinous conduct, J&N denounced her request as "witness intimidation with a caption," while invoking the need to protect nonparties from public exposure. NYSCEF No. 126 at 15–16. Despite this effort to protect Plaintiff's co-conspirators, J&N had no problem continuing to publicly invoke [redacted] and Flott as corroboration of Plaintiff's allegations. Indeed, on July 27, J&N filed Plaintiff's federal complaint referring to and relying upon the perjured affirmations and issued another press release touting "preserved communications, recorded conversations, sworn witness accounts" and an "extensive pre-suit investigation."[6] Two days later, J&N again answered Ms. Hajdini's state-court counterclaims, repeating its position that the affirmations supported Plaintiff's claims and denying their impropriety. NYSCEF No. 134 at 4–5.

J&N went further. It assured the state court that "plaintiff will comply with his disclosure obligations," and that Ms. Hajdini remains free to examine Plaintiff about statements made in his prior filings. NYSCEF No. 126 at 14–15. Norinsberg further represented that he "stands behind every filing he has made," acknowledging the continuing accountability of counsel for those submissions. *Id.* at 17. Having repeatedly used the affirmations as a sword, invoked them publicly, and assured the state court that Plaintiff's claims could be tested through federal discovery, J&N now seeks to withdraw just as that discovery comes due—and with undeniable knowledge that its client's case hinges on perjured evidence.

### C. J&N's boilerplate motion to withdraw and attempt to avoid discovery and other case obligations.

---

[6] *See* Joseph & Norinsberg, LLC, Press Release (July 27, 2026), available at https://tinyurl.com/3cbsy55w.

At the October 6 conference, J&N acknowledged the substantial discovery required in this action. It represented that it had imaged four devices, identified approximately 50,000 documents, and had further collections outstanding. Oct. 6 Tr. 38:22–39:3. JPMC and Ms. Hajdini advised the Court that deficient discovery responses and outstanding production would prevent Plaintiff's deposition from proceeding in October as scheduled. *Id.* 39:20–40:6, 41:7–12. Yet, Plaintiff and J&N have acted with no urgency, and have already let their October 16 production deadline lapse. Indeed, to date, and despite J&N's sworn assurances (*supra* at 4) and the Court's Orders (ECF No. 68), Plaintiff has ***not produced a single document.***

Plaintiff and J&N have not produced the evidence they know will clear Ms. Hajdini's name, yet continue to sully her reputation through their pleadings and in the press. Even ***after*** J&N informed Plaintiff on October 9 that it could no longer represent him, it filed another sprawling, 317-paragraph Amended Complaint just three days later, on October 12. ECF No. 53. J&N's October 12 Amended Complaint—which it has made no effort to correct or withdraw—again invokes the affirmations to support Plaintiff's most salacious allegations about Ms. Hajdini. ECF No. 53 ¶¶ 85–96. That intended recantation is now unequivocal. [redacted] swears: "[redacted]" Ex. G ¶ 3.

Ultimately, on October 14, J&N moved to withdraw, invoking a generic "irreconcilable differences" in the attorney-client relationship without explaining the nature or timing of that breakdown, nor any of the facts contributing to it. ECF Nos. 55-57. The next day, J&N requested a stay of all discovery while its withdrawal motion is pending and, if granted, for the period afforded to Plaintiff to retain successor counsel. ECF Nos. 57 ¶ 10; 61 at 1–2.

As explained below and as will be discussed in a forthcoming sanctions motion, these circumstances and their timing are very troubling. J&N has not acknowledged the warnings from

[redacted]'s counsel; nor has it done anything to correct the record and remedy a fraud on the court as their professional obligations require. *See* N.Y. R. Prof. Conduct 3.3. Instead, it seeks to jump ship, while advocating for further delays in Ms. Hajdini's ability to clear her name, while also seeking to allow Plaintiff to further avoid truthfully answering the counterclaims and producing information that will end his case.

## III. ARGUMENT

### A. J&N has not provided an adequate basis for withdrawal under Local Civil Rule 1.4.

Local Civil Rule 1.4(b) permits withdrawal "only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal." The determination rests within the Court's discretion, considering both the grounds for withdrawal and its effect on the litigation. *See Whiting v. Lacara*, 187 F.3d 317, 320–22 (2d Cir. 1999); *Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*, 2014 WL 1087934, at *1 (S.D.N.Y. Mar. 19, 2014). Critically, the Court and opposing counsel are "entitled to know the basis for the motion." *Luxwear Ltd.*, 2023 WL 3010397, at *1–2.

J&N has not met that standard. Its declaration offers little more than a generalized assertion that the attorney-client relationship has "deteriorated to the point that it cannot be repaired," without explaining the circumstances giving rise to that breakdown. *See* ECF No. 57. Merely parroting grounds recognized by Rule of Professional Conduct 1.16 is not a substitute for the factual showing required under Local Rule 1.4. In *Luxwear*, for example, the court denied withdrawal without prejudice where counsel failed adequately to explain the reasons for withdrawing and account for unfinished discovery, notwithstanding the submission of a sealed declaration. 2023 WL 3010397, at *1–2; *see also Luxwear Ltd. v. Adaptiv Rsch. & Dev. Grp.*, 2023 WL 3011912, at *2 (S.D.N.Y. Mar. 30, 2023) (denying reconsideration where counsel failed to provide facts sufficient to evaluate the

asserted grounds). Here, while J&N has said it would share details *in camera*, it has not, to Ms. Hajdini's knowledge, actually done so.

More troubling still, J&N's declaration says nothing about the revelation that the sworn affirmations underpinning Plaintiff's accusations were fabricated. [redacted]'s counsel has informed J&N that both affirmations were false. Kreger Decl. ¶¶ 32-34; Rodriguez Decl. ¶ 34. Yet J&N has not disclosed this fact, let alone information corroborating when it received that warning, what other warnings it may have received, what knowledge it already possessed based on its "extensive" investigation, what investigation followed, or what steps it has taken to correct the record. These omissions further call into question J&N's conduct throughout the course of this litigation—both here and in state court. As J&N has touted to the courts and press, it conducted what it called a "comprehensive review" of Plaintiff's claims, repeatedly defended the affirmations, and most recently, on October 12, filed an Amended Complaint referring to and incorporating the perjured affirmations. NYSCEF Nos. 93 at 3, 95 at 4–5, 134 at 4–5; ECF No. 53 ¶¶ 85–96. The Court should require J&N to explain what it knew when it filed that pleading, what inquiry it undertook before and after learning of the perjured affirmations, and why the supposed corroboration it repeatedly endorsed is only now being discovered and disavowed.

These questions go directly to counsel's continuing professional obligations and the propriety of their attempt to extricate themselves from this case. Rule 11(b)(3) required J&N to undertake a reasonable inquiry before certifying that the Complaint's and Amended Complaint's factual contentions had evidentiary support. New York Rule of Professional Conduct 1.16(a) ***requires*** counsel to assess the facts and risks of an engagement throughout the representation. *See* N.Y. R. Prof. Conduct 1.16(a) (a lawyer must "make reasonable efforts to inquire into and assess the facts and circumstances of each engagement . . . and to understand, at the outset and throughout the

engagement, the risk that the engagement will result in a violation of these Rules or other law."). And Rule 3.3(a)(1) ***requires*** correction of material false statements previously made to a tribunal. *See* N.Y. R. Prof. Conduct 3.3(a)(1) (a lawyer shall not knowingly "fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer"). Rule 3.3(a)(3) ***requires*** reasonable remedial measures when counsel learns that material evidence it has offered is false. *See* N.Y. R. Prof. Conduct 3.3(a)(3) ("the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal"). And these requirements apply even where disclosure would touch on otherwise confidential client information. *See* N.Y. R. Prof. Conduct 3.3(c) (duties under Rule 3.3(a) apply "even if compliance requires disclosure of information otherwise protected by Rule 1.6"). Nor does counsel's responsibility end when a pleading is filed. As the court explained in *Mata v. Avianca, Inc.*, "[t]he failure to correct a prior statement in a pending motion is the later advocacy of that statement and is subject to sanctions." 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023). The Court should not permit J&N to hide behind a boilerplate declaration that cites only non-descript "[i]rreconcilable differences" and a relationship that has "deteriorated to the point that it cannot be repaired." ECF No. 57 ¶ 3.

Nor is there any reason to assume that Flott and [redacted]'s perjured affirmations are the sole reasons for J&N's attempted withdrawal. If J&N has learned of other material falsehoods or fraudulent conduct relating to these proceedings, its duty of candor extends to those matters as well. Rule 3.3(b) requires remedial measures when counsel knows of litigation-related fraud. And, as noted, Rule 3.3(c) expressly provides that the duties of candor apply "even if compliance requires disclosure of information otherwise protected by Rule 1.6." N.Y. R. Prof. Conduct 3.3(c). Confidentiality and privilege, therefore, cannot justify withholding information that counsel is required to disclose to correct material falsehoods or fraud upon the Court. *See id.* cmt. 10.

To be clear, Ms. Hajdini does not seek unrestricted access to J&N's privileged communications with Plaintiff. The warning conveyed by [redacted]'s counsel, however, originated with an independent third party and is therefore not privileged. *E.g.*, *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999). Moreover, even if privilege otherwise attached, the crime–fraud exception would independently preclude its application to communications intended to facilitate or conceal a fraud upon the Court. *In re Enron Corp.*, 349 B.R. 115, 127–28 (Bankr. S.D.N.Y. 2006) (applying crime-fraud exception to compel disclosure of attorney-client communications made in furtherance of fraudulent conduct). Any genuinely privileged matters bearing on withdrawal or counsel's corrective obligations may be presented under seal, *in camera*, or under oath, as appropriate. *See Luxwear*, 2023 WL 3010397, at *1–2. But J&N cannot invoke confidentiality as a blanket justification for withholding the non-privileged warning or avoiding the disclosures Local Rule 1.4 and Rule of Professional Conduct 3.3 require.

For these reasons, the Court should require J&N to provide a meaningful explanation of its withdrawal, identify when it learned of Flott and [redacted]'s perjured affirmations, and what corrective action it has taken (if any). Withdrawal is no substitute for candor.

**B. Neither a discovery stay nor further extension of the Counterclaims response deadline is warranted.**

J&N has shown no good cause to suspend Plaintiff's case obligations. Rule 26(c)(1) requires good cause for a protective order, including consideration of prejudice to the opposing party. *Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018). Counsel's proposed withdrawal does not establish good cause to alter existing deadlines. *See Sentient Flight Grp., LLC v. Klein*, 2011 WL 1431987, at *1 (S.D.N.Y. Jan. 6, 2011). Nor does filing a withdrawal motion relieve counsel of its obligations or automatically extend deadlines. *Luxwear*, 2023 WL 3010397, at *1.

Here, Plaintiff's discovery obligations are already overdue. Indeed, this Court has already ruled that Plaintiff's "pre-existing obligations" to respond to written discovery by October 12 and produce documents by October 16 "are unaffected by this order." ECF No. 68. Yet, to date, Plaintiff has failed to serve responses to Ms. Hajdini's document requests and requests for admissions, has not responded to Ms. Hajdini's correspondence identifying deficiencies in Plaintiff's Initial Disclosures and responses to her interrogatories (and has not served supplemental Disclosures or Interrogatory responses) and has not produced a ***single document.*** These deficient responses and missing production have already postponed Plaintiff's deposition. Oct. 6 Tr. 39:20–40:6, 41:7–12. Meanwhile, J&N has imaged four devices and collected approximately 50,000 documents, with further collections outstanding. *Id.* 38:22–39:3. J&N has also continued participating in discovery after moving to withdraw, including negotiating a discovery extension and proposed protective order provisions on October 15. ECF No. 66 at 3–4. It identifies no reason why existing production obligations, outstanding factual (including supplemental) responses, and independent nonparty discovery must all stop.

The request to hold the Ms. Hajdini's counterclaim unanswered until Plaintiff finds new counsel or proceeds *pro se* is even less defensible. J&N insists that successor counsel should prepare the response because it will "frame the issues on the Counterclaims for the remainder of the case." ECF No. 61 at 2. But answering counterclaims is not an exercise in strategic framing. Rule 8 requires Plaintiff to "admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b)(1)(B). J&N has already answered substantially the same allegations twice in state court. Any changes in Plaintiff's responsive pleading would only add to the laundry list of concerns about the factual basis for those prior pleadings.

Nor does J&N explain why its asserted breakdown with Plaintiff prevents it from responding. Norinsberg advised Plaintiff on October 9 that J&N could no longer represent him, yet filed a 317-paragraph Amended Complaint just three days later. ECF No. 57 ¶ 6; ECF No. 53. J&N thus continued pleading Plaintiff's affirmative claims after the asserted breakdown but now seeks to postpone answering familiar counterclaims because of that same breakdown. That inconsistency is a far cry from the good cause required under Rule 6(b)(1)(A). *See* Fed. R. Civ. P. 6(b)(1)(A).

Accordingly, there is simply no basis to give Plaintiff yet another pass. Nor should J&N be able to abandon the case while further prejudicing Ms. Hajdini's ability to clear her name. Instead, the Court should condition withdrawal on J&N's (1) completion of all currently outstanding written discovery responses, (2) production of all documents within their possession, custody, or control that are responsive to Ms. Hajdini's discovery requests, and (3) facilitation of Plaintiff's immediate, and truthful, answer to Ms. Hajdini's counterclaim. *See, e.g.*, *Sound Around, Inc. v. Friedman*, No. 24-cv-1986, ECF No. 333 at 4 (S.D.N.Y. Nov. 25, 2025) (conditioning withdrawal on counsel continuing representation "until Petitioner has made all summary judgment filings"); *Dixon v. Reid*, 2025 WL 2379626, at *1 (S.D.N.Y. July 10, 2025) (requiring counsel to remain "for a limited time, solely to ensure completion of outstanding discovery" notwithstanding satisfactory grounds for withdrawal); *SEC v. Gibraltar Glob. Sec., Inc.*, 2015 WL 2258173, at *3–4 (S.D.N.Y. May 8, 2015) (denying withdrawal pending compliance with outstanding discovery obligations because it would be "inappropriate to reward these dilatory tactics").

### C. Withdrawal cannot shield J&N from any forthcoming sanctions motion.

Finally, the Court should expressly retain jurisdiction over J&N to adjudicate forthcoming sanctions motions. This should come as no surprise to J&N. Indeed, in another currently pending case involving J&N, Judge Furman confirmed that allowing counsel to withdraw does not eliminate its Rule 11 obligations or the court's jurisdiction to adjudicate sanctions arising from counsel's prior

conduct. *See Doe v. Gowl, Jr.*, No. 25-cv-9799, ECF No. 78 at 2–3 (S.D.N.Y. Feb. 3, 2026); *see also, e.g.*, *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 5067432, at *7 (S.D.N.Y. May 9, 2017) ("[T]his Court may retain jurisdiction over a withdrawing attorney" in connection with pending sanctions motions); *Banus v. Citigroup Glob. Mkts., Inc.*, 757 F. Supp. 2d 394, 399–400, 403 (S.D.N.Y. 2010) (Kaplan, J.) (retaining authority to impose sanctions against counsel under 28 U.S.C. § 1927 notwithstanding dismissal of the underlying action). Moreover, courts have denied withdrawal without prejudice where counsel's departure would disrupt the adjudication of a pending sanctions motion. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. NYC Flooring L.L.C.*, 2020 WL 7016449, at *1 (S.D.N.Y. Oct. 7, 2020) (denying withdrawal notwithstanding a "satisfactory reason" because counsel's departure before responding to the sanctions motion "would interfere with the orderly processing of the case and cause prejudice"). The Court should do the same here to ensure that J&N's departure does not frustrate the disclosure and preservation of evidence concerning its conduct.

## IV. CONCLUSION

For these reasons, the Court should deny J&N's motion to withdraw without prejudice pending an adequate explanation of its grounds for withdrawal and compliance with its duty of candor. The Court should further (1) deny the requested discovery stay and further extension of Plaintiff's counterclaim answer deadline, (2) condition withdrawal on J&N's completion of all currently outstanding discovery, and (3) expressly retain jurisdiction over J&N in connection the forthcoming sanctions motions.

Dated: October 22, 2026

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Melissa C. Rodriguez*
Melissa C. Rodriguez
Sam S. Shaulson
101 Park Avenue
New York, New York 10178
(212) 309 6000
melissa.rodriguez@morganlewis.com
sam.shaulson@morganlewis.com

*Counsel for Lorna Hajdini*

# CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2026, I caused a true and correct copy of the foregoing to be electronically filed via the Court's CM/ECF electronic filing system, which will provide notice to the following counsel of record:

Bennitta Joseph, Esq.
John Meehan, Esq.
Kassandra Vazquez, Esq.
Monica Hincken, Esq.
Jon L. Norinsberg, Esq.
JOSEPH & NORINSBERG, LLC
JON L. NORINSBERG, ESQ., PLLC
825 Third Ave., Suite 2100
New York, NY 10022
Tel.: (212) 227-5700 / (212) 324-2897
bennitta@employeejustice.com
bennittaj@gmail.com
jmeehan@norinsberglaw.com
kassandra@employeejustice.com
mhincken@employeejustice.com
jon@norinsberglaw.com

*Attorneys for Plaintiff*

Cardelle Spangler
Kelly Ann Librera
Sophia Borne
WINSTON TAYLOR LLP
200 Park Avenue
New York, NY 10166
cardelle.spangler@winstontaylor.com
sophia.borne@winstontaylor.com
kelly.librera@winstontaylor.com
sophia.borne@winstontaylor.com

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

Kristine J. Feher
Sylvia E. Simson
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017

feherk@gtlaw.com
sylvia.simson@gtlaw.com

*Attorneys for Defendants Brandon Graffeo, Jonathan Wolter, Kelly Crowe*

/s/ *Melissa C. Rodriguez*
Melissa C. Rodriguez