UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

CHIRAYU S. RANA,

Plaintiff,

-against-

JPMORGAN CHASE BANK, N.A., LORNA HAJDINI, BRANDON GRAFFEO, JON WOLTER, and KELLY CROWE,

Defendants.

------------------------------------------------------ X

Case No. 1:26-cv-06351-LAK

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S RESPONSE IN OPPOSITION TO MOTION TO WITHDRAW AS COUNSEL FOR PLAINTIFF**

# TABLE OF CONTENTS


Page

PROCEDURAL HISTORY ..... 2

I. Pre-Litigation ..... 2

II. The State Action ..... 3

III. The Federal Action ..... 5

A. The Fraudulent Affirmations ..... 5

B. JPMC's Discovery Efforts ..... 8

LEGAL STANDARDS ..... 10

I. Application to Withdraw as Counsel ..... 10

II. Counsel's Duty of Candor to this Tribunal ..... 11

III. Sanctions ..... 12

ARGUMENT ..... 13

I. J&N Has Perpetuated a Fraud on the Court ..... 14

II. J&N Has Not Satisfied Its Burden to Justify Withdrawal ..... 15

III. J&N's Withdrawal Would Prejudice JPMC ..... 16

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Binh Thanh Imp. Exp. Prod. & Trade Joint Stock Co. v. Amazon.com Servs. LLC*,
No. 23 Civ. 292 (LGS), 2026 WL 1983485 (S.D.N.Y. July 9, 2026) ....................................13

*Cassata v. Michael Macrina Architect, P.C.*,
250 N.Y.S.3d 778 (N.Y. Sup. Ct. 2026) ....................................................................................12

*City of Almaty, Kazakhstan v. Ablyazov*,
Nos. 1:15-CV-05345 (AJN) (KHP), 1:18-MC-00227 (AJN) (KHP), 2019 WL 11662228 (S.D.N.Y. Oct. 24, 2019) ....................................................................................16

*Dagan v. Resols. Billing & Consulting, Inc.*,
No. 24-CV-0632 (JAV), 2025 WL 1902320 (S.D.N.Y. July 9, 2025)..............................10, 11

*Dixon v. Reid*,
No. 23-CV-9878 (JAV), 2025 WL 2379626 (S.D.N.Y. July 10, 2025).................................18

*Flannigan v. Vulcan Power Group LLC*,
No. 09 Civ. 8473, 2023 WL 2986870 (S.D.N.Y. Apr. 18, 2023)....................................11, 17

*Galin v. Hamada*,
283 F. Supp. 3d 189 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018)..........................14

*James v. Enter. Ass'n of Steamfitters Loc. 638 of United Ass'n of Steam, Hot Water, Hydraulic & Gen. Pipe Fitters of New York & Vicinity*,
No. 06 CV 680 (RJD) (LB), 2009 WL 10706010 (E.D.N.Y. Nov. 23, 2009).........................11

*John Doe v. JPMorgan Chase & Co. and Lorna Hajdini*,
Index No. 155620/2026 ........................................................................................... *passim*

*Mata v. Avianca, Inc.*,
678 F. Supp. 3d 443 (S.D.N.Y. 2023)...........................................................................12, 14

*Mintz Fraade L. Firm, P.C. v. Brady*,
No. 19-CV-10236 (JMF), 2021 WL 621206 (S.D.N.Y. Feb. 17, 2021).................................14

*In re Reyes*,
651 B.R. 99 (Bankr. S.D.N.Y. 2023), *aff'd*, No. 23-CV-04185 (PMH), 2023 WL 8184933 (S.D.N.Y. Nov. 25, 2023)...........................................................................11, 14

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
657 B.R. 382 (Bankr. S.D.N.Y. 2024)......................................................................................15

*SEC v. Gibraltar Glob. Sec., Inc.*,
2015 WL 2258173 (S.D.N.Y. May 8, 2015) ....................18

*Shepherd v. Annucci*,
921 F.3d 89 (2d Cir. 2019)....................12

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,
328 F.R.D. 100 (S.D.N.Y. 2018) ....................11

*Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. NYC Flooring L.L.C.*,
No. 19-CV-6441 (LJL), 2020 WL 7016449 (S.D.N.Y. Oct. 7, 2020)....................14, 15

*United States v. Fernandez*,
516 F. App'x 34 (2d Cir. 2013) ....................12

*Usherson v. Bandshell Artist Mgmt.*,
No. 19-CV-6368 (JMF), 2020 WL 3483661 (S.D.N.Y. June 26, 2020), *aff'd sub nom. Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021) ....................12

*Wilson v. Pasquale's DaMarino's, Inc.*,
No. 10 CIV. 2709 (PGG), 2018 WL 4761574 (S.D.N.Y. Sept. 30, 2018) ....................11

**Other Authorities**

Fed. R. Civ. P. 26....................8

*Joseph & Norinsberg LLC to Represent Former JPMorgan Executive Chirayu Rana in Racial Discrimination, Harassment and Retaliation Case*, Joseph & Norinsberg LLC (June 8, 2026), https://employeejustice.com/press-releases/joseph-norinsberg-represents-chirayu-rana-jpmorgan-discrimination-case/....................5

Local Civ. R. 1.3(c)(6)(F) ....................12

Local Civ. R. 1.3(c)(7)....................12

Local Rule 1.4....................10, 13, 15

Local Rule 1.4(b) ....................10

N.Y. Rules of Prof'l Conduct R. 3.3....................15, 18

N.Y. Rules of Prof'l Conduct R. 3.3(a)(1)....................12

N.Y. Rules of Prof'l Conduct R. 3.3(a)(3)....................14

Plaintiff's counsel of record, Joseph & Norinsberg, LLC ("J&N"), seeks to abandon this litigation while concealing critical information: Plaintiff procured perjured affirmations to support his claims and has been committing a fraud on this Court. Pre-litigation, Plaintiff presented Defendant JPMorgan Chase Bank, N.A. ("JPMC") with two sworn affirmations from individuals describing their purported first-hand experience of certain interactions between Plaintiff and JPMC employee and co-Defendant Lorna Hajdini. Counsel for one of those affiants—Plaintiff's sister—has recently revealed that both affirmations were fraudulently obtained by Plaintiff, that neither individual actually witnessed any interactions whatsoever between Plaintiff and Ms. Hajdini, and that the witnesses perjured themselves. Counsel for the affiant has confirmed that he notified J&N of this fraud on the Court *before* J&N filed the instant Motion to Withdraw as Counsel for Plaintiff (the "Motion," ECF Nos. 55–57). And just two days prior, J&N filed a 317-paragraph Amended Complaint (ECF No. 53) on Plaintiff's behalf that continued to rely upon the information contained in the falsified affirmations. Yet J&N did not correct the references to the falsified affirmations in the Amended Complaint and has not taken any steps to correct the record or fulfill its ethical obligations to this Court.

JPMC would be severely prejudiced by J&N's withdrawal at this juncture. JPMC intends to seek appropriate sanctions against Plaintiff, and, as described herein, J&N. Counsel should not be permitted to withdraw from this litigation before JPMC is afforded appropriate relief. Further, the withdrawal would cause undue delay and deny JPMC timely access to past-due discovery to which it is entitled. Before abandoning this case, J&N should be required to answer for the fraud committed on the Court, correct all false statements previously made, and ensure Plaintiff responds to JPMC's outstanding discovery requests in full. The Motion should be denied without prejudice

for J&N to renew its request upon the determination by this Court that the firm has satisfied those existing obligations.

## PROCEDURAL HISTORY[1]

J&N represents that this case "remains at a relatively early stage" by conveniently discussing *only* the filing of the federal complaint in July 2026. ECF No. 56 at 5. But counsel's framing omits the full seventeen-month history of this dispute and JPMC's repeated efforts to obtain from Plaintiff critical information that will establish conclusively that he maliciously fabricated serious allegations of misconduct against JPMC and the individual Defendants in this case. Now that JPMC has begun to discover that evidence, Plaintiff once again seeks to halt the proceedings to obtain new counsel. Indeed, J&N fails to mention that shortly before filing its Motion, counsel for Plaintiff's sister informed J&N that certain evidence referenced expressly in both the Complaint and Amended Complaint that J&N filed on Plaintiff's behalf is false and was fraudulently acquired by Plaintiff himself. JPMC would be severely prejudiced in its ability to hold Plaintiff and his counsel immediately accountable for the extreme harm they have caused JPMC, the individual Defendants, and this Court if J&N were permitted to withdraw at this stage of the litigation.

### I. Pre-Litigation

Plaintiff first accused JPMC and its employees of "pervasive racial discrimination, a racially hostile work environment, retaliation" as well as "harassment, blackmail, sexual coercion" and "sexual assault" on May 20, 2025, via a letter from his then-counsel, while still a JPMC employee. Am. Compl., ECF No. 53 ¶ 143. After alerting JPMC of his claims, Plaintiff provided

[1] JPMC provided the Court with a detailed procedural history in its response in opposition to Plaintiff's letter motion to stay discovery pending the resolution of this Motion (ECF No. 65). Much of that relevant background is repeated herein for ease of reference.

two sworn affirmations, with the identities of the affiants redacted, in which both witnesses describe having first-hand knowledge of certain alleged misconduct by Ms. Hajdini. *See* Declaration of Sarah N. Kreger ("Kreger Decl."), filed herewith.[2] Plaintiff submitted those false affirmations to JPMC to give unwarranted credence to his baseless claims and coerce JPMC into a settlement.

In response to those submissions, JPMC continued its efforts to review the allegations in detail. Plaintiff, however, refused to meaningfully cooperate in that review: he declined to provide key details central to his claims—including the dates of the most egregious conduct alleged—or identify individuals who purportedly witnessed the events, including the two affiants. JPMC sought this information from Plaintiff for nearly a year before Plaintiff initiated litigation in New York state court but never received it.

## II. The State Action

On April 27, 2026, Plaintiff filed suit in the Supreme Court of the State of New York in an action titled *John Doe v. JPMorgan Chase & Co. and Lorna Hajdini,* Index No. 155620/2026 (the "State Action")[3]. Plaintiff retained new counsel to represent him in the State Action—Kaiser Saurborn & Mair, P.C. Plaintiff filed the same affirmations he had previously provided to JPMC in a pre-litigation posture as exhibits to his motion to proceed under a pseudonym in the State Action. *See* NYSCEF Doc. Nos. 5 and 6. In support of that application to shield his identity from public disclosure, Plaintiff's then-counsel relied on the affirmations in stating that "[m]ultiple witnesses corroborate Plaintiff's legal claims." *See* NYSCEF Doc. No. 3 ¶ 5.

---

[2] Copies of each affirmation are attached to the Kreger declaration submitted herewith at Exhibits 1 and 2.

[3] Citations to publicly available filings in the State Action are referred to herein by their corresponding docket number, i.e., "NYSCEF Doc. No __."

JPMC again requested information and details from Plaintiff to corroborate his extreme allegations, serving written discovery requests on May 21, 2026. Plaintiff never answered JPMC's discovery requests in the State Action, however, because days later, his then-counsel sought leave to withdraw and requested a 60-day stay of proceedings to allow Plaintiff to retain new counsel. *See* NYSCEF Doc. Nos. 69–71. In response to the request for prior counsel to withdraw, JPMC argued that a lengthy stay of the case would cause undue prejudice, explaining that: "Plaintiff's fantastical allegations have garnered significant public attention, which he and his representatives have fueled by engaging directly with media outlets. . . . JPMC and its employees stand publicly accused of significant acts of misconduct and thus have a strong interest in moving this matter expeditiously through resolution." NYSCEF Doc. No. 82 at 5.

Days later, J&N appeared in the State Action on Plaintiff's behalf and immediately filed a motion to voluntarily discontinue that case without prejudice. NYSCEF Doc. Nos. 92–94. Jon L. Norinsberg—the same attorney who submitted a declaration in support of the instant Motion (ECF No. 57)—represented in the State Action that:

> Plaintiff's present counsel was recently retained and, ***upon a comprehensive review of the matter***, determined that several federal causes of action central to this dispute were never pleaded. Because those claims are more appropriately adjudicated in federal court, Plaintiff respectfully seeks leave to discontinue this action without prejudice and proceed in a federal forum where all claims arising from the underlying facts may be litigated together in a single, comprehensive action.

NYSCEF Doc. No. 93 ¶ 2 (emphasis added). Counsel even went so far as to misrepresent to the state court that "[n]o discovery has been served or exchanged" (*id.* at ¶ 6), even though JPMC had served written discovery requests on Plaintiff weeks prior.

After representing in the State Action that J&N had conducted a "comprehensive review of the matter," J&N further touted Plaintiff's allegations in the press, pointing to "substantial new

evidence we have uncovered," noting that they "intend to vindicate every one of Mr. Rana's rights," and stating that "[a]s the real facts come to light, the record will speak for itself."[4]

In response to Plaintiff's request to voluntarily dismiss the State Action, Ms. Hajdini argued that, among other conditions sought by both her and JPMC, Plaintiff must be required to disclose the identities of the affiants whose statements he had filed in the State Action. NYSCEF Doc. No. 101. The court agreed, ordered Plaintiff to name the affiants (*see* NYSCEF Doc. No. 131 at 2), and Plaintiff confirmed that the sworn statements were signed by his sister [redacted] and a friend of the family, Allan Flott by providing unredacted copies of those affirmations. As a condition of Plaintiff's voluntary discontinuance, the state court also awarded JPMC and Ms. Hajdini attorneys' fees incurred in opposing that relief. *See id.* at 1.

J&N has likewise sought to withdraw from the State Action and requested a 60-day stay of proceedings to allow Plaintiff an opportunity to retain new counsel, effectively evading the fee award due to JPMC and Ms. Hajdini. *See* NYSCEF Doc. Nos. 139–41.

## III. The Federal Action

### A. The Fraudulent Affirmations

Plaintiff incorporated the substance of his sister's prior affirmation directly into his Complaint. *Compare* Compl., ECF No. 1 ¶¶ 92–96 and Am. Compl. ¶¶ 92–96, *with* Kreger Decl., Ex. 1. On August 26, 2026, JPMC issued a subpoena to [redacted] seeking documents regarding her sworn affirmation, any alleged visits that Plaintiff and/or Ms. Hajdini made to her apartment, any alleged misconduct she personally witnessed, as well as other documents and communications in her possession regarding the allegations in the Complaint. *See* Kreger Decl., Ex. 3.

---

[4] *See Joseph & Norinsberg LLC to Represent Former JPMorgan Executive Chirayu Rana in Racial Discrimination, Harassment and Retaliation Case*, Joseph & Norinsberg LLC (June 8, 2026), https://employeejustice.com/press-releases/joseph-norinsberg-represents-chirayu-rana-jpmorgan-discrimination-case/.

After [redacted] through counsel, requested a series of extensions of the original return date on the subpoena, [redacted] counsel advised via email on September 29, 2026 that she was preparing her response to the subpoena and would produce documents the next day but first asked JPMC to confirm that a confidentiality order applicable to non-party productions was in place and requested that [redacted] be permitted to designate private and personal information as confidential. *See* Kreger Decl. ¶ 17.

The parties met and conferred by telephone on October 2, 2026 to discuss the subpoena. *Id.* ¶ 18. On that call, counsel for [redacted] Patrick Selvey of Hamilton Clarke, LLP, stated that his client had "signed to" certain "statements that are untrue" in the past and described that his client did not want to continue to perpetuate any "false statements" she previously may have signed off on. *Id.* ¶ 19. Mr. Selvey also advised that while he had not been in personal contact with the other affiant, family friend Allan Flott, he understood Mr. Flott was in a similar situation to his client. *Id.* ¶ 21. Mr. Selvey described that both [redacted] and Mr. Flott were "led astray" by Plaintiff. *Id.* ¶ 23.

That evening, counsel for JPMC summarized the substance of the conversation with Mr. Selvey, including stating, in part:

> Thank you for the call this afternoon. I write to confirm the substance of our conversation. You stated that your client, [redacted] made statements in a previous affirmation (attached for reference) which are untrue. As you described, her brother, Chirayu Rana, came to her to ask her to present the statements in the affirmation as if they were facts within her own personal knowledge, but they were not. You stated that [she] was told by her brother the affirmation would not be used in court or disclosed publicly. You stated that while she is concerned for her safety and would prefer to avoid publicity, she wants to recant her prior statements and does not want to continue to perpetuate a fraud.

*Id.* at Ex. 4. Counsel for [redacted] did not dispute any of the statements attributed to him during the October 2, 2026 meet and confer. *Id.* ¶ 24.

On October 13, 2026, counsel for JPMC held a telephonic meet and confer with Mr. Selvey. *Id.* ¶ 25. During that call, Mr. Selvey stated that he had been in contact with counsel for Mr. Flott and that Mr. Flott, like [redacted] had similarly been placed in a situation wherein Plaintiff convinced him to execute a false affirmation. *Id*. Later that day, Mr. Selvey sent an email to counsel for JPMC and counsel for Ms. Hajdini, copying counsel for Mr. Flott, in which he stated that "the non-parties wish to discuss the timing and framework for the production of documents and affirmations recanting their prior statements." *Id.* Ex. 5.

On an October 16, 2026 telephonic meet and confer attended by counsel for JPMC, Mr. Selvey stated that he had been in contact with Jon Norinsberg of J&N earlier that week. *Id.* ¶ 27. Mr. Selvey stated that he had recently told Mr. Norinsberg that [redacted] was prepared to recant her prior July 28, 2025 affirmation. *Id.* ¶ 28. Mr. Selvey expressly confirmed that he spoke to Mr. Norinsberg about the false affirmation *before* J&N filed the pending motion to withdraw as counsel on October 14, 2026 (ECF Nos. 55–57). *Id.* ¶ 29.

On October 22, 2026, [redacted] executed a sworn declaration recanting her prior July 28, 2025 affirmation. *Id.* Ex. 6. That declaration states, in relevant part: [redacted]

[redacted]

**B. JPMC's Discovery Efforts**

JPMC served written discovery requests on Plaintiff on August 25, 2026 and noticed Plaintiff's deposition for October 13, 2026. Plaintiff served responses to JPMC's interrogatories on September 30, 2026, after which JPMC immediately identified several critical deficiencies in Plaintiff's responses as well as his Rule 26 Initial Disclosures. JPMC served two letters summarizing those concerns on September 30 and October 5, 2026. In its September 30 letter about the deficiencies in Plaintiff's Initial Disclosures, JPMC stated, in relevant part:

> Plaintiff makes dozens of allegations in his Complaint regarding the purported observations of unnamed, unidentified, or anonymized individuals—including individuals whose identities Plaintiff repeatedly represents "are known to Mr. Rana" and "are preserved for disclosure in discovery." Despite these representations, Plaintiff fails to identify nearly all of these individuals in his Initial Disclosures.

JPMC further requested that counsel for Plaintiff provide his position and availability for a meet and confer before the Court conference scheduled for October 6, 2026. Counsel for Plaintiff did not respond to JPMC's correspondence prior to that hearing. In its October 5 letter, JPMC stated that Plaintiff's written responses to its interrogatories "remain incomplete, internally inconsistent, and in several instances irreconcilable with the allegations in the Complaint."

During the conference before this Court on October 6, 2026, J&N represented that "discovery will be very fulsome" and that the firm had imaged "four devices" belonging to Plaintiff, and had "about 50,000" in its possession as a result of that imaging. *See* Exhibit A, Oct. 6, 2026 Hr'g Tr. 38:22–39:3. During that conference, J&N also represented to this Court that it would image all of Plaintiff's devices, "get all of the information that [they] can" related to the dates of the alleged sexual assaults, and "provide an exact dates." *Id.* 32:10–33:8.

Then on October 9, 2026, J&N represented via letter that it intended to supplement and/or amend Plaintiff's interrogatory responses and initial disclosures. Counsel for JPMC responded via email the same day, noting that J&N had not provided a date certain by which it would supplement and/or amend, and asked counsel to provide that date. J&N did not respond, and counsel for JPMC thereafter requested a meet and confer, which was scheduled for October 13, 2026.

With respect to JPMC's Requests for Production of Documents to Plaintiff served on August 25, 2026, J&N sought extensions of time to respond and produce responsive documents. JPMC agreed to extend the original September 24, 2026 deadline until October 12, 2026. Faced with the reality that it would not have access to Plaintiff's document production in time for his originally-noticed October 13, 2026 deposition, JPMC re-noticed Plaintiff's deposition for November 9, 2026. J&N then represented via email that Plaintiff would not be able to meet that production deadline, because its "initial imaging resulted in more than 50,000 documents and attachments, and there is more on the way." Counsel for JPMC agreed to extend Plaintiff's deadline to produce responsive documents to October 16, 2026 but did *not* agree to extend the October 12, 2026 deadline for Plaintiff to provide written responses to JPMC's Requests for Production. Nonetheless, Plaintiff did not timely serve responses or objections on October 12, 2026. Instead, on October 12, 2026 Plaintiff filed an Amended Complaint containing 317 paragraphs. ECF No. 53. The Amended Complaint retains explicit references to the fraudulent affirmations. *See e.g.*, Am. Compl. ¶ 224 (referencing "sworn affidavits in Mr. Rana's possession"); *id.* ¶¶ 85–91 (summarizing the substance of Mr. Flott's affirmation and alleging that "[a]n individual staying [at the apartment] has sworn under penalty of perjury that he was awakened in the middle of the night when Hajdini arrived with Mr. Rana"); *id.* ¶¶ 92–96 (recounting the substance of [redacted] affirmation).

J&N also cancelled the meet and confer scheduled for October 13, 2026 to discuss Plaintiff's discovery deficiencies, stating that counsel was "not in a position to meet and confer today given that [they] intend to file a motion to withdraw as counsel." The next day, J&N filed the instant Motion, seeking leave of this Court to withdraw and asking the Court to grant Plaintiff a 60-day period to secure new counsel, which would be the fourth set of lawyers to represent Plaintiff in connection with this case.

J&N also filed a letter motion to stay discovery pending the resolution of this Motion (ECF No. 61). The Court, however, ordered that: "plaintiff's pre-existing obligations to produce documents on or before October 16 and to respond to [written discovery] by October 12, with which he allegedly has not yet complied, are unaffected by this order." ECF No. 68. Notwithstanding the direct order from this Court, Plaintiff has not served supplemental responses to JPMC's interrogatories or initial disclosures or any responses to JPMC's requests for production and has not produced any documents as of this filing. Counsel for JPMC demanded that J&N comply with the Court's order by October 21, 2026. That date came and went without J&N providing the ordered discovery, and on October 22, 2026, J&N stated that it did not anticipate being able to comply with the Court's order until October 30, 2026.

## LEGAL STANDARDS

### I. Application to Withdraw as Counsel

"Under Local Rule 1.4, an attorney who has appeared for a party may be relieved only by order of the court, upon a showing by affidavit of satisfactory reasons for withdrawal." *Dagan v. Resols. Billing & Consulting, Inc.*, No. 24-CV-0632 (JAV), 2025 WL 1902320, at *1 (S.D.N.Y. July 9, 2025) (citing Local Rule 1.4(b)). "'Whether to grant or deny a motion to withdraw as counsel is within the sound discretion of the district court.'" *Id.* (citation omitted).

"[I]n the absence of a compelling justification, the Court will not relieve an attorney from his obligations." *James v. Enter. Ass'n of Steamfitters Loc. 638 of United Ass'n of Steam, Hot Water, Hydraulic & Gen. Pipe Fitters of New York & Vicinity*, No. 06 CV 680 (RJD) (LB), 2009 WL 10706010, at *1 (E.D.N.Y. Nov. 23, 2009) (internal quotation marks and citation omitted); *Wilson v. Pasquale's DaMarino's, Inc.*, No. 10 CIV. 2709 (PGG), 2018 WL 4761574, at *8 (S.D.N.Y. Sept. 30, 2018) (same). When deciding motions to withdraw, district courts consider "'the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding.'" *Dagan*, 2025 WL 1902320, at *1 (quoting *Flannigan v. Vulcan Power Group LLC*, No. 09 Civ. 8473, 2023 WL 2986870, at *2 (S.D.N.Y. Apr. 18, 2023)). District courts are also directed to consider "'whether the prosecution of the suit is likely to be disrupted by the withdrawal of counsel.'" *Id.* (quoting *Flannigan*, 2023 WL 2986870, at *2).

## II. Counsel's Duty of Candor to this Tribunal

"[A]ttorneys owe an ethical duty of candor in all of their dealings with the Court." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 118 (S.D.N.Y. 2018). Technical accuracy is not enough:

> An attorney is not obligated merely to not outright lie to the Court; [s]he owes the Court a duty of candor. Candor is not the state of simply not lying; candor is the quality of being open and honest in expression. An attorney cannot excuse [her] lack of candor by pointing [out] that [s]he did not technically lie.

*In re Reyes*, 651 B.R. 99, 143 (Bankr. S.D.N.Y. 2023) (internal quotation marks and citation omitted), *aff'd*, No. 23-CV-04185 (PMH), 2023 WL 8184933 (S.D.N.Y. Nov. 25, 2023).

The Local Civil Rules of the Southern and Eastern Districts of New York expressly incorporate the New York Rules of Professional Conduct as the governing standard of attorney conduct—applicants for admission must attest familiarity with those Rules and undertake to

"faithfully adhere to all rules applicable to applicant's conduct in connection with any activities in this court." Local Civ. R. 1.3(c)(6)(F), (c)(7).

Rule 3.3(a)(1) of the New York Rules of Professional Conduct provides that "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." N.Y. Rules of Prof'l Conduct R. 3.3(a)(1). It thus imposes both a prohibition against and "the affirmative obligation to 'correct false statement[s]' previously made." *United States v. Fernandez*, 516 F. App'x 34, 36 n.2 (2d Cir. 2013) (quoting N.Y. Rules of Prof'l Conduct R. 3.3(a)(1)); *Cassata v. Michael Macrina Architect, P.C.*, 250 N.Y.S.3d 778, 790 (N.Y. Sup. Ct. 2026) (a lawyer "must promptly correct any false statements of fact or law previously made").

The duty to correct continues after filing. *See Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448, 461 (S.D.N.Y. 2023) (finding that counsel "continued to stand by the fake opinions after judicial orders called their existence into question" and never sought to withdraw the filing and holding that "[t]he failure to correct a prior statement in a pending motion is the later advocacy of that statement and is subject to sanctions")

**III. Sanctions**

"Sanctions may be authorized by any of a number of rules or statutory provisions, or may be permissible on the basis of the court's inherent power." *Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368 (JMF), 2020 WL 3483661, at *9 (S.D.N.Y. June 26, 2020) (internal quotation marks and citation omitted), *aff'd sub nom. Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021). Based on its "inherent power to supervise and control its own proceedings," a court may sanction counsel or a litigant for "bad-faith conduct." *Shepherd v. Annucci*, 921 F.3d 89, 97 (2d Cir. 2019) (internal quotation marks and citation omitted). "A court may sanction a party under its inherent power to deter abuse of the judicial process and prevent a party from perpetrating a

fraud on the court." *Binh Thanh Imp. Exp. Prod. & Trade Joint Stock Co. v. Amazon.com Servs. LLC*, No. 23 Civ. 292 (LGS), 2026 WL 1983485, at *6 (S.D.N.Y. July 9, 2026) (internal quotation marks and citations omitted). "Sanctions for fraud are warranted if it is established by clear and convincing evidence that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." *Id.* (internal quotation marks and citation omitted).

## ARGUMENT

This Court should deny J&N's Motion for three discrete reasons.

***First***, J&N has perpetuated a fraud on the Court. Prior to seeking leave of this Court to withdraw as counsel, J&N was made aware that Plaintiff conspired with two separate non-party witnesses to prepare false affirmations to corroborate his baseless allegations. J&N was informed that the affirmations—filed in the State Action and referenced expressly in both Plaintiff's Complaint and the recently filed Amended Complaint—contain substantial falsehoods. J&N has not, however, made any attempt to correct those perjured statements or the fraud that has been committed on the Court since this lawsuit was filed. JPMC intends to pursue appropriate sanctions and relief as to both Plaintiff and J&N in connection with the foregoing misconduct. J&N should not be permitted to withdraw until these issues are appropriately addressed.

***Second***, J&N has not made the requisite showing that satisfactory reasons exist for its withdrawal under Local Rule 1.4.

***Third***, the firm's withdrawal would prejudice JPMC by delaying the disposition of this case, depriving it of past-due discovery, and unfairly disrupting its ability to defend against Plaintiff's claims and promptly bring this matter to a close.

## I. J&N Has Perpetuated a Fraud on the Court

As described herein, Plaintiff's most egregious allegations of sexual misconduct in this litigation rest upon third-party witness affirmations that he fraudulently obtained. Indeed, [redacted] J&N was notified of this fraud by her counsel prior to filing its Motion. *See* Kreger Decl. ¶¶ 27–29. More than a week has elapsed since J&N learned of the fraud being committed on the Court, but J&N has failed to bring that revelation to the Court's attention. Based on that conduct alone, J&N is "subject to sanctions." *Mata*, 678 F. Supp. 3d at 460; N.Y. Rules of Prof'l Conduct R. 3.3(a)(3) (providing that a lawyer shall not "offer or use evidence that the lawyer knows to be false" and requiring the lawyer to "take reasonable remedial measures, including, if necessary, disclosure to the tribunal" if a lawyer "comes to know of [a] falsity."); *Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017) (a court may sanction counsel for "refus[ing] to withdraw an allegation or claim even after it was shown to be inaccurate") (internal quotation marks and citation omitted), *aff'd*, 753 F. App'x 3 (2d Cir. 2018); *In re Reyes*, 651 B.R. at 137 ("[A] failure to disclose material facts to the Court may constitute a fraud upon the Court.").

The Court should not permit J&N to withdraw until the underlying sanctionable conduct is addressed. *See e.g.*, *Mintz Fraade L. Firm, P.C. v. Brady*, No. 19-CV-10236 (JMF), 2021 WL 621206, at *7 n.8 (S.D.N.Y. Feb. 17, 2021) (withholding judgment on counsel's motion to withdraw until sanctions motion is resolved); *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. NYC Flooring L.L.C.*, No. 19-CV-6441 (LJL), 2020 WL 7016449, at *1 (S.D.N.Y. Oct. 7, 2020) (denying motion to withdraw, even where counsel had presented a "satisfactory reason for withdrawal," where the non-moving party had a pending sanctions motion, because

"allowing withdrawal at this point would interfere with the orderly processing of the case and cause prejudice" to the non-moving party). The court in *NYC Flooring* explained that:

> Permitting counsel to withdraw now, before responding to the [sanctions] motion, would leave Defendants without counsel at a critical stage—when a motion is pending that asks for judgment to be entered against them. It would also leave Defendants, and the Court, without the benefit of insights from the lawyer involved in the discussions over discovery. Finally, it would result in further harm and prejudice to Plaintiffs, who want to move this case along and whose efforts to do so would be further delayed by the time that the Court undoubtedly would give the unrepresented parties to obtain counsel to represent them.

2020 WL 7016449, at *1. Likewise, here, both Plaintiff and J&N must answer for the sanctionable conduct committed with respect to the fraudulently-obtained affirmations. It would be highly prejudicial to JPMC, the individual Defendants, and to the Court to allow J&N to withdraw before those issues are appropriately resolved. *See also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 657 B.R. 382, 392–93 (Bankr. S.D.N.Y. 2024) (denying motion to withdraw as counsel "on the basis of the facts presented" finding that "there is a significant risk of disrupting a critical stage of the litigation.").

## II. J&N Has Not Satisfied Its Burden to Justify Withdrawal

The only justification that J&N provides for its withdrawal is that "irreconcilable differences have arisen that render it unreasonably difficult for J&N to carry out the representation effectively." ECF No. 56 at 4. This generic explanation does not comply with Local Rule 1.4's requirement that J&N make a "showing" of "satisfactory reasons for withdrawal." In its Motion, J&N sought leave to "submit a declaration *ex parte* and *in camera*, under seal" to provide any "additional information" the Court may need to rule on the motion. ECF No. 56 at 5. To JPMC's knowledge, no such information has been provided. If J&N's Motion is based in any part on the aforementioned fraudulent affirmations, however, "Rule 3.3 of the New York Rules of

Professional Conduct require an attorney to disclose client confidential information to a tribunal if such disclosure is necessary to remedy false evidence or testimony." *City of Almaty, Kazakhstan v. Ablyazov*, Nos. 1:15-CV-05345 (AJN) (KHP), 1:18-MC-00227 (AJN) (KHP), 2019 WL 11662228, at *2 (S.D.N.Y. Oct. 24, 2019). In any event, to the extent any such declaration from J&N contains information about the false affirmations, that information is not privileged and should not be provided to the Court on an *ex parte* basis.

## III. J&N's Withdrawal Would Prejudice JPMC

As detailed above, JPMC has been asking Plaintiff for information and documents sufficient to defend itself against Plaintiff's claims for over a year. Since Plaintiff filed the State Action in April 2026, JPMC and its employees have stood publicly accused of egregious acts of misconduct. It is entitled to fulsome discovery on Plaintiff's allegations including, but not limited to, the dates of the alleged assaults that form the basis of many of Plaintiff's claims so it can clear its employees' names. JPMC has diligently pursued this information—first pre-litigation, then in the State Action, and finally by promptly serving discovery requests in this case. In the State Action, days before responses to JPMC's discovery requests were due, Plaintiff's then-counsel sought to withdraw and adjourn the case for 60 days. J&N's Motion is a familiar tactic: it moved to withdraw days ahead of Plaintiff's deadline to produce documents, without serving written responses to JPMC's past-due document requests or supplementing Plaintiff's interrogatory responses or initial disclosures as promised.

Even after this Court ***expressly ordered*** J&N to supplement and/or respond to JPMC's discovery and produce documents (ECF No. 68), J&N has refused to do so. There can be no legitimate justification for J&N's withholding discoverable information in violation of the Court's order. This is particularly so given that (i) J&N has represented Plaintiff since appearing on his behalf in the State Action more than four months ago (NYSCEF Doc. Nos. 91, 97–100); (ii) J&N

expressly represented that they'd done a "comprehensive review of the matter" upon being retained; (iii) JPMC served its discovery requests upon J&N nearly two months ago; and (iv) J&N has already represented to this Court that the firm imaged four of Plaintiff's devices, had approximately 50,000 documents in their possession, and would produce that information in this case.

J&N's Motion should thus be denied because it would both deprive JPMC of discovery to which it is entitled—and which J&N has already committed to provide—and unfairly delay the adjudication of this matter. In *Flannigan v. Vulcan Power Group LLC*, the court denied counsel's motion to withdraw, reasoning in part that "[i]f the Court were to grant Defense Counsel's motion to withdraw, it would undoubtedly result in a significant delay to the proceedings as everything would have to be held in abeyance until [defendant] was able to retain substitute counsel… Even then, new counsel would need time to familiarize themselves with the case. Given the length of time that the case has gone on and the voluminous nature of the docket, the amount of time required to get any substitute counsel up to speed would be disruptive to the proceedings." 2023 WL 2986870, at *3. The same is true here, particularly given that J&N is Plaintiff's third set of lawyers in connection with this dispute, which suggests that his efforts to obtain new counsel will present challenges.

J&N's withdrawal at this juncture would also interfere with JPMC's expert discovery efforts. This Court set a January 15, 2027 deadline for the production of expert reports. ECF No. 29. JPMC intends to engage several experts in connection with its defense. *See* Exhibit A, Oct. 6, 2026 Hr'g Tr. 40:9–41:1. JPMC needs Plaintiff's discovery responses not only to prepare for his deposition but to enable its experts to prepare their reports due in just a few months. JPMC will be severely hampered in its ability to advance expert discovery if J&N is permitted to withdraw now.

J&N therefore should not be permitted to withdraw until Plaintiff's outstanding discovery obligations have been satisfied. *See e.g.*, *Dixon v. Reid*, No. 23-CV-9878 (JAV), 2025 WL 2379626, at *1 (S.D.N.Y. July 10, 2025) (conditioning attorney withdrawal on "completion of outstanding discovery"); *SEC v. Gibraltar Glob. Sec., Inc*., 2015 WL 2258173, at *3–4 (S.D.N.Y. May 8, 2015) (denying withdrawal pending compliance with outstanding discovery obligations because it would be "inappropriate to reward these dilatory tactics") (citing cases).

## **CONCLUSION**

For the reasons set forth herein, JPMC respectfully requests that this Court enter an order (i) denying J&N's Motion to Withdraw as Counsel for Plaintiff (ECF No. 55), without prejudice; (ii) requiring J&N to correct any false statements previously made to this Court consistent with Rule 3.3 of the New York Rules of Professional Conduct; and (iii) requiring J&N to show cause as to why it should not be sanctioned for its conduct in this case.

Dated: October 22, 2026

By: */s/ Cardelle B. Spangler*

Cardelle B. Spangler
Sarah N. Kreger
WINSTON TAYLOR LLP
300 N. LaSalle Dr., Suite 4400
Chicago, IL 60654-3406
(312) 558-5600
cardelle.spangler@winstontaylor.com
sarah.kreger@winstontaylor.com

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2026, I caused a copy of the foregoing to be filed using the Court's CM/ECF system, which I understand will transmit notice to all counsel of record.

/s/ *Sarah N. Kreger*

*Attorney for Defendant JPMorgan Chase Bank, N.A.*

**CERTIFICATION OF COMPLIANCE**

I hereby certify that the number of words in this memorandum of law complies with Local Civil Rule 7.1(c). The memorandum contains 5,686 words excluding the caption, any index, table of contents, table of authorities, signature blocks, and this certificate, as counted by Microsoft Word.

Dated: October 22, 2026

*/s/ Sarah N. Kreger*
Sarah N. Kreger