# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

CHIRAYU S. RANA,

Plaintiff,

v. 26 Civ. 6351 (LAK)

JPMORGAN CHASE BANK, N.A., *et al.*,

Defendants. Oral Argument
------------------------------x

New York, N.Y.
October 6, 2026
10:10 a.m.

Before:

HON. LEWIS A. KAPLAN,

District Judge

APPEARANCES

JOSEPH & NORINSBERG, LLC
Attorneys for Plaintiff
BY: JON L. NORINSBERG, ESQ.
MONICA HINCKEN, ESQ.
KASSANDRA VAZQUEZ, ESQ.

WINSTON TAYLOR LLP
Attorneys for Defendant JPMorgan Chase Bank, N.A.
BY: CARDELLE B. SPANGLER, ESQ.
SARAH KREGER, ESQ.

MORGAN LEWIS & BOCKIUS LLP
Attorneys for Defendant Lorna Hajdini
BY: MELISSA C. RODRIGUEZ, ESQ.
SAMUEL S. SHAULSON, ESQ.

GREENBERG TRAURIG, LLP
Attorneys for Defendants
Brandon Graffeo, Jon Wolter, and Kelly Crowe
BY: KRISTINE J. FEHER, ESQ.

telephones, which will show nothing because it didn't happen. But that's not the same as proof from the telephone company that these messages were not originated from their numbers.

And also, Judge, I'm not super technologically oriented. I can't tell you what exactly the Verizon data will be able to show in terms of the origination. For example, if plaintiff bought himself a burner and used it to send those messages to himself, there may be a way to track that based on the data that Verizon provides to us, Judge.

So my clients obviously have a vested interest in that data as well as Ms. Hajdini and JPMorgan Chase.

THE COURT: Okay.

MS. FEHER: Thank you, Judge.

THE COURT: Thank you.

Anything else on discovery?

I will have a decision on the discovery very rapidly.

Now let's talk about a schedule for this case. How much discovery and what kind of discovery do you anticipate? We'll start with the plaintiff.

MS. HINCKEN: Yes. Your Honor, we anticipate——

THE COURT: Please stand.

MS. HINCKEN: Oh, I apologize. So we have imaged so far four devices, and we are at about 50,000 documents right now, and there's still more information to be obtained, and so we——it's a very, very heavy ESI case, for some of the reasons

that we've already discussed here today. So it is not a standard——certainly not a standard employment discrimination case, and I think discovery will be very fulsome here.

THE COURT: Depositions?

MS. HINCKEN: Depositions, yes. We have noticed the depositions I believe of I think approximately ten people. It might be seven to ten people at this point. And I assume obviously there are other nonparties, obviously, who will also need to be deposed, given the witnesses and other factors that are in the case.

THE COURT: Do you anticipate having any experts?

MS. HINCKEN: We do anticipate having experts, yes.

THE COURT: How many? What kind?

MS. HINCKEN: I would say probably two at the least——economic expert and likely mental health expert as well.

THE COURT: Okay. JPMorgan, what are your expectations?

MS. SPANGLER: Thank you, your Honor. Cardelle Spangler.

We expect that there's going to be fulsome discovery. We have issued document requests, requests for information, and interrogatories to the plaintiff. Some of that information has come back, although we have served two fairly fulsome deficiency letters already. We learned yesterday that plaintiff has said that there are 50,000 documents from devices

that they are obtaining from Mr. Rana. We had noticed his deposition originally for October the 13th. We do not believe that date is going to be able to hold in light of the fact that we are not getting these documents in the timely manner that we thought we would get them, so we know that that's going to move. But we do expect that there will be a number of other depositions in the case, and we have issued at least ten subpoenas to nonparties, and some of those we certainly will need to depose. We anticipate probably at least four experts in the case, and there may be more, just depending on how discovery——

THE COURT: What kind of experts?

MS. SPANGLER: We would certainly want a damages expert; we likely will have an expert with respect to the text messages and the alleged threatening texts that Ms. Feher mentioned earlier. JPMorgan did a fulsome review of what Mr. Rana provided, and those numbers did not come from a single person at JPMorgan in their entire database, so we do not believe that those were originated from anyone at JPMorgan, and we need to understand where those were originated. We have our theories about that. So we would like an expert on that issue.

We may have a vocational expert, as Mr. Rana is claiming that he's not able to find another job.

And we would like an independent medical examination of Mr. Rana, in light of his claim for emotional distress

damages.

THE COURT: Okay. Thank you.

Ms. Rodriguez, what's your position?

MS. RODRIGUEZ: Ms. Rodriguez again.

Our position is similar to JPMorgan's position. We expect that discovery is going to be very fulsome. Similar to JPMorgan, we have noticed plaintiff's deposition for next week. Similarly, that date is not going to hold, given all the outstanding discovery that is still out there. We did receive responses to our interrogatories. We have not received responses to our document requests. And we expect that there will be requests for admissions issued as well. We have not noticed other depositions just yet, your Honor, but we expect that there are going to be several more, and we also anticipate that there will be expert discovery on behalf of Ms. Hajdini, including, similar to Chase, an independent medical examination of the plaintiff and an expert regarding alleged emotional distress.

THE COURT: Okay. Thank you.

How long do you all think the discovery program ought to take?

MS. RODRIGUEZ: Well, your Honor, when we were here last time, we had already submitted a proposed discovery scheduling order, and I believe that your Honor issued one already that was a little shorter than what the parties had