UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHIRAYU S. RANA,<br><br>Plaintiff,<br><br>-against-<br><br>JPMORGAN CHASE BANK, N.A., LORNA HAJDINI, BRANDON GRAFFEO, JON WOLTER, and KELLY CROWE,<br><br>Defendants. | : | Case No. 1:26-cv-06351-LAK |

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S**
**MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS**

# TABLE OF CONTENTS

**Page**


PROCEDURAL HISTORY ..... 2

I. Plaintiff Procures Perjured Declarations to Support His Fabricated Claims ..... 3

II. Plaintiff Pursues Falsehoods Before the Courts ..... 5

LEGAL STANDARD ..... 8

ARGUMENT ..... 9

I. Clear and Convincing Evidence Establishes that Plaintiff Perpetrated a Fraud on the Court ..... 9

A. Plaintiff Has Knowingly Proffered Perjured Affirmations ..... 9

B. Plaintiff Has Refused to Correct Demonstrable Falsehoods and Is Withholding Discovery that Will Disprove His Claims ..... 12

II. Every Relevant Factor Supports Severe Sanctions ..... 13

III. Dismissal with Prejudice Is the Only Adequate Sanction ..... 15

IV. The Court Should Also Award JPMC Its Attorneys' Fees and Costs ..... 16

V. Plaintiff Has Notice and an Opportunity to Be Heard ..... 17

CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almeciga v. Ctr. for Investigative Reporting, Inc.*,
185 F. Supp. 3d 401 (S.D.N.Y. 2016)....................13, 15

*Banus v. Citigroup Glob. Markets, Inc.*,
757 F. Supp. 2d 394 (S.D.N.Y. 2010)....................9, 17

*Binh Thanh Imp. Exp. Prod. & Trade Joint Stock Co. v. Amazon.com Servs. LLC*,
2026 WL 1983485 (S.D.N.Y. July 9, 2026) .................... *passim*

*Ceglia v. Zuckerberg*,
600 F. App'x 34 (2d Cir. 2015) ....................13

*Hong v. Mommy's Jamaican Mkt. Corp.*,
2024 WL 3824394 (S.D.N.Y. Aug. 14, 2024) ....................8

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*,
191 F. Supp. 2d 440 (S.D.N.Y. 2002)....................9, 13, 15, 17

*Network Data Rooms, LLC v. Saulrealism LLC*,
2023 WL 7103280 (2d Cir. Oct. 27, 2023)....................9, 11

*Oliveri v. Thompson*,
803 F.2d 1265 (2d Cir. 1986), *aff'd sub nom. Lee v. Hong*, 2025 WL 3637495
(2d Cir. Dec. 16, 2025) ....................8

*Rossbach v. Montefiore Med. Ctr.*,
81 F.4th 124 (2d Cir. 2023) ....................16

*Shangold v. Walt Disney Co.*,
2006 WL 71672 (S.D.N.Y. Jan. 12, 2006), *aff'd*, 275 F. App'x 72 (2d Cir.
2008) ....................9, 11, 12, 17

*Shepherd v. Annucci*,
921 F.3d 89 (2d Cir. 2019)....................8

*Taylor v. City of New York*,
207 F. Supp. 3d 293 (S.D.N.Y. 2016)....................12

**Statutes**

28 U.S.C. § 1927....................8

FMLA ....................6, 12

This case is not merely about allegations that lack evidentiary support. It is about Plaintiff Chirayu Rana's deliberate procurement and use of false sworn testimony to manufacture his claims. [redacted]. He procured a second false affirmation from a friend recounting another event Plaintiff knew never happened. Plaintiff used these fabricated accounts to attempt to induce Defendant JPMorgan Chase Bank, N.A. ("JPMC") to settle with him before he filed a lawsuit, presented them to the New York Supreme Court as purported corroboration for his made-up claims, and constructed his pleadings in this Court around their falsehoods.

That scheme is now exposed by the most direct evidence possible. Plaintiff's sister, [redacted][1] [redacted] Counsel for [redacted] has stated that the second affiant, family friend Allan Flott, was likewise "led astray" by Plaintiff and convinced to execute a false affirmation. This is corroborated by [redacted]

[1] As stated in JPMC's prior letter motion to seal (ECF No. 71), Plaintiff's sister has requested that JPMC refrain from including her name and the substance of her recantation in its public filings so as to allow her an opportunity to seek leave of this Court to seal those materials. In an abundance of caution, JPMC has complied with that request and redacted the non-party's name and excerpts from her October 22, 2026 declaration. JPMC does not agree that her identity or her statements should be sealed or otherwise maintained as confidential and intends to oppose any request of this Court to permanently seal any filings containing the same.

[redacted]

Plaintiff's egregious conduct in fabricating the substantive allegations in his Amended Complaint, including those upon which these false affirmations are predicated, clearly constitutes a fraud on the Court. And it is a prime example of the kind of "unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action" that warrants the most serious sanction available under the Court's inherent power: dismissal with prejudice, in addition to an award of JPMC's attorneys' fees and costs and any such other relief the Court deems proper. Indeed, clear and convincing evidence establishes that Plaintiff knowingly procured perjured affirmations and deployed them at every stage of the dispute, while continuing to press other demonstrable falsehoods and withholding discovery that would expose them. Every relevant factor—intent and bad faith, prejudice, a sustained pattern of misconduct, refusal to correct the record, and likelihood of continuation—points decisively toward severe relief. Lesser sanctions cannot cleanse a case whose central allegations rest on manufactured testimony or restore the integrity of proceedings Plaintiff deliberately corrupted. JPMC therefore respectfully requests dismissal of this case with prejudice, an award of the attorneys' fees and costs caused by Plaintiff's fraud, and such further relief as the Court deems just.[2]

## PROCEDURAL HISTORY

JPMC set out the relevant procedural history of this dispute in detail in both its Response in Opposition to the Motion to Withdraw as Counsel for Plaintiff (ECF No. 72) (the "Withdrawal Opposition") and its opposition to Plaintiff's letter motion to stay discovery (ECF No. 65). JPMC

---

[2] JPMC expressly incorporates its Response in Opposition to Joseph & Norinsberg LLC's ("J&N") Motion to Withdraw as Counsel for Plaintiff by reference, including its request for sanctions to be enforced as to that firm. *See* ECF No. 72. For the reasons explained in that brief, and as further described herein, sanctions should be awarded against both Plaintiff and J&N.

respectfully incorporates those submissions by reference, summarizes the relevant background, and supplements with additional facts concerning Plaintiff's sanctionable conduct.[3]

## I. Plaintiff Procures Perjured Affirmations to Support His Fabricated Claims

Plaintiff first alerted JPMC to the allegations at issue in this lawsuit in May 2025, when his then-counsel sent a letter accusing JPMC and its employees of "pervasive racial discrimination, a racially hostile work environment, retaliation," "harassment, blackmail, sexual coercion," and "sexual assault." Am. Compl., ECF No. 53 ¶ 143. As part of his attempts to extract a settlement from JPMC, Plaintiff provided JPMC with two sworn affirmations from unidentified witnesses who claimed to have firsthand knowledge of alleged misconduct by Defendant Lorna Hajdini. *See* Kreger Decl. ¶¶ 5–7. The first witness (later identified as Plaintiff's sister, [redacted]) stated in a July 28, 2025 affirmation that Plaintiff frequently visited her apartment and sometimes stayed there when she was out of town. Kreger Decl. Ex. 1 ¶¶ 1–3. [redacted] affirmation also stated that she had observed Ms. Hajdini and Plaintiff together at or near her apartment building on two occasions: (1) a mid-summer 2024 incident where Ms. Hajdini allegedly "had her face in [Plaintiff's] neck and appeared to be kissing his neck," and (2) a September 2024 incident where Ms. Hajdini allegedly said something along the lines of "I own you Brownie" to Plaintiff. Kreger Decl. Ex. 1 ¶¶ 5–9. [redacted] further affirmed that "in the middle of 2024, I had a conversation with my brother in which he mentioned an issue he was having with a woman at his work who was harassing him and trying to blackmail him," and stated that the woman was Ms. Hajdini. Kreger Decl. Ex. 1. ¶ 4.

---

[3] Citations to "Kreger Decl." refer to the Declaration of Sarah N. Kreger (ECF No. 75) and its exhibits, filed with the Withdrawal Opposition. Citations to "NYSCEF Doc. No. __" refer to publicly available filings in the lawsuit Plaintiff filed in the Supreme Court of the State of New York in an action titled *John Doe v. JPMorgan Chase & Co. and Lorna Hajdini*, Index No. 155620/2026 (the "State Action").

Plaintiff refused to identify the affiants until the court in the State Action ordered him to do so as a condition of his voluntary discontinuance of the State Action. *See* Withdrawal Opp. 3–5; *see* NYSCEF Doc. No. 131 at 2. Plaintiff confirmed that the sworn statements were signed by his sister, [redacted], and a friend of the family, Allan Flott. Kreger Decl. ¶ 13.

On August 26, 2026, JPMC issued a subpoena to [redacted], which requested documents regarding her sworn affirmation, any alleged visits that Plaintiff and/or Ms. Hajdini made to her apartment, any alleged misconduct she personally witnessed, as well as other documents and communications in her possession regarding the allegations in Plaintiff's Complaint. Kreger Decl. Ex. 3. After several meet-and-confer calls between counsel for JPMC and [redacted] in which counsel for [redacted] described how Plaintiff had led [redacted] "astray" by convincing her to sign "false statements," *see* Withdrawal Opp. 6–7, [redacted] provided a sworn declaration on October 22, 2026. Kreger Decl. ¶ 30; Kreger Decl. Ex. 6.

[redacted]

Kreger Decl. Ex. 6 ¶ 14. The declaration states that [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

## II. Plaintiff Pursues Falsehoods Before the Courts

Plaintiff did not resolve his complaints against JPMC prior to filing suit. He also did not [redacted] Instead, he relied on the affirmation to both (i) attempt to shield his identity in the State Action and (ii) underpin his most salacious claims, incorporating the affirmation into the complaint in the State Action, and the Complaint and Amended Complaint in this Court. *See* NYSCEF Doc. Nos. 1, 3, 6; ECF Nos. 1, 53. Plaintiff filed the last of these pleadings, his Amended Complaint, around the same time that counsel for [redacted] notified Plaintiff's counsel that Plaintiff had fraudulently obtained the affirmation. Kreger Decl. ¶¶ 27–29; Am. Compl.

In addition to [redacted] affirmation, Plaintiff also fraudulently obtained the affirmation of another third party, Allan Flott. Mr. Flott's affirmation states that he was in [redacted]

apartment with Plaintiff when Ms. Hajdini allegedly invited him to "join" in sexual activity with her and Plaintiff. Kreger Decl. Ex. 2 ¶¶ 7–13. But [redacted] Kreger Decl. Ex. 6 ¶ 11. [redacted] declaration thus confirms that Mr. Flott's affirmation is false. Furthermore, although Mr. Flott has not yet recanted his affirmation, Plaintiff's sister's counsel has confirmed that Plaintiff convinced Mr. Flott to sign the false affirmation under circumstances like those he used on his sister. Kreger Decl. ¶¶ 20–22, 25–27. And Plaintiff relies on Mr. Flott's affirmation in the same way by incorporating it into his complaint in the State Action as well as his Complaint and Amended Complaint filed in this Court.

Plaintiff's false allegations in his Amended Complaint go beyond his reliance on sham affirmations. Plaintiff alleges that "[o]n March 31, 2026, Mr. Rana signed a Charge of Discrimination, Charge No. 520-2026-04653, which was filed with the EEOC on or about April 1, 2026." Am. Compl. ¶ 35. Plaintiff's sworn EEOC Charge dated March 31, 2026 states: "In October 2024, I temporarily relocated to Virgina [sic] to be with my sick mother *after my father suddenly passed*." *See* Declaration of Cardelle B. Spangler ("Spangler Decl."), filed herewith, Ex. A (emphases added). Yet in response to a request for admission in this litigation, Plaintiff admitted his father is alive. Spangler Decl., Ex. B at 8.

In his Amended Complaint, Plaintiff alleges that JPMC discouraged and chilled his exercise of FMLA rights in late 2024 by refusing to permit him to work from home to care for his "seriously injured mother." Am. Compl. ¶¶ 129, 131, 134, 251. (Plaintiff's "seriously injured mother" was allegedly "seriously ill" in the original Complaint. *See e.g.*, Compl. ¶¶ 19, 129, 131, 134, 142, 209–210, 251, 254, 257.) JPMC issued a subpoena to produce documents to Plaintiff's mother, Baruna Rana, in which it requested documents and communications regarding Plaintiff's

alleged caretaking responsibilities for her during the period of October 1, 2024 though May 31, 2025. *See* Spangler Decl., Ex. C. Plaintiff's mother responded to that request, in relevant part, by stating that "she is not in possession, custody or control of any responsive documents." *See* Spangler Decl., Ex. D. In addition, Plaintiff admits that in late 2024, he exchanged the following text messages with his manager, Defendant Jonathan Wolter, which are all focused on Plaintiff's father:

- From Plaintiff to Mr. Wolter on November 7, 2024: "We received news that my dad was brought to the ICU after experiencing cardiac arrest."
- From Plaintiff to Mr. Wolter on November 9, 2024: "Assuming it's OK with you/BG – I'll plan to WFH from NY/VA but happy to go into the office. Whatever you guys prefer / works best."
- From Mr. Wolter to Plaintiff: "Of course, we can be flexible on work from home and want you to be able to do what you need to."
- From Plaintiff to Mr. Wolter on December 17, 2024: "my dad passed away last night."

Spangler Decl., Ex. B at 6–8. Plaintiff now admits that his father is alive. *Id.* Counsel for JPMC put Plaintiff on notice of its then-new awareness of this falsity on May 12, 2026. *See* Spangler Decl., Ex. E. Counsel explained:

> In the fall and winter of 2024, Mr. Rana informed JPMC employees that his "dad" was seriously ill and later died. Mr. Rana sent text messages with detailed descriptions regarding his father's condition and treatment, his international travels to be with his father, and his need to be with his mother during this period. Indeed, on December 17, 2024, Mr. Rana texted a colleague stating: "[M]y dad passed away late last night." Mr. Rana's colleagues expressed their condolences and sent flowers to help him through the loss.
>
> On May 4, 2026, the *New York Post* published an article reporting that Mr. Rana's father is, in fact, alive and well and had spoken to its reporters the previous day. In the wake of that and other articles, Mr. Rana changed his story, claiming in the press that it was a "dad-

> like figure" who died. These reports cannot be squared with Mr. Rana's representations to his former colleagues at JPMC . . . that his father died.

*Id.* Plaintiff, however, has taken no steps to correct his pleading regarding this issue.

## LEGAL STANDARD

Based on its "inherent power to supervise and control its own proceedings," a court may sanction counsel or a litigant for "bad-faith conduct." *Shepherd v. Annucci*, 921 F.3d 89, 97 (2d Cir. 2019) (internal quotation marks and citation omitted). "A court may sanction a party under its inherent power to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court." *Binh Thanh Imp. Exp. Prod. & Trade Joint Stock Co. v. Amazon.com Servs. LLC*, 2026 WL 1983485, at *6 (S.D.N.Y. July 9, 2026) (internal quotation marks and citations omitted). Unlike 28 U.S.C. § 1927, the inherent power "can be used against an attorney, a party, or both." *Hong v. Mommy's Jamaican Mkt. Corp.*, 2024 WL 3824394, at *12 (S.D.N.Y. Aug. 14, 2024) (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)), *aff'd sub nom. Lee v. Hong*, 2025 WL 3637495 (2d Cir. Dec. 16, 2025).

"Sanctions for fraud are warranted if it is established by clear and convincing evidence that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." *Binh Thanh*, 2026 WL 1983485, at *6 (internal quotation marks and citations omitted). "Clear and convincing evidence of fraud on the court may be established through inconsistencies in the challenged evidence, false testimony, spoliation, credibility findings and the reasonable inferences drawn from the record." *Id.* In assessing such misconduct, courts in this district consider "(1) whether the misconduct was the product of intentional bad faith; (2) whether and to what extent the misconduct prejudiced the other party; (3) whether there is a pattern of misbehavior, rather than an isolated instance; (4) whether and when the misconduct was corrected; and (5) whether further misconduct is likely to continue

in the future." *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 446 (S.D.N.Y. 2002); *accord Shangold v. Walt Disney Co.*, 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006), *aff'd*, 275 F. App'x 72 (2d Cir. 2008). Courts also consider whether the misconduct bears on issues central to the case. *See, e.g.*, *Network Data Rooms, LLC v. Saulrealism LLC*, 2023 WL 7103280, at *1 (2d Cir. Oct. 27, 2023) (sanction of dismissal with prejudice where "[t]he falsified evidence and other allegations . . . were integral to [plaintiff]'s theory of the case"); *Shangold*, 2006 WL 71672, at *5 (sanction of dismissal with prejudice and attorneys' fees where plaintiffs "tainted evidence at the heart of their dispute with Defendants and then sought to conceal it").

"A district court exercising its inherent power has broad discretion to fashion an appropriate sanction," including dismissal with prejudice and monetary sanctions against a party or its counsel. *Binh Thanh*, 2026 WL 1983485, at *6. To impose dismissal with prejudice, there must be "clear evidence of misconduct and a high degree of specificity in the factual findings," and the court must find "willfulness, bad faith, or reasonably serious fault" and "at least consider lesser remedial measures." *Id.* at *7. Before sanctioning, the court must provide "adequate notice and an opportunity to be heard." *Id.* at *7 (internal quotation marks and citations omitted); *see also Banus v. Citigroup Glob. Markets, Inc.*, 757 F. Supp. 2d 394, 400 (S.D.N.Y. 2010) (Kaplan, J.).

## ARGUMENT

### I. Clear and Convincing Evidence Establishes that Plaintiff Perpetrated a Fraud on the Court

#### A. Plaintiff Has Knowingly Proffered Perjured Affirmations

The record establishes the falsity of the affirmations that Plaintiff has relied upon since the onset of this dispute through the most direct evidence possible: [redacted]

[redacted] Kreger Decl. Ex. 6 ¶ 3. Her declaration does not merely quibble with details—it refutes the factual premise of every observation in her prior affirmation. [redacted] *Id.* ¶ 11. Each of those facts is irreconcilable with her July 28, 2025 affirmation, which places Plaintiff and Ms. Hajdini at and inside [redacted] building on multiple occasions in 2024. *Compare id.*, *with* Kreger Decl. Ex. 1 ¶¶ 2, 5–9.

[redacted] declaration also forecloses any suggestion of innocent error. [redacted] These are "inconsistencies in the challenged evidence" and "false testimony" of the most fundamental kind, and the "reasonable inferences drawn from the record" lead to only one conclusion: Plaintiff knowingly procured false sworn testimony to create his meritless allegations. *See Binh Thanh*, 2026 WL 1983485, at *6.

The second affirmation fares no better. Mr. Flott's[4] affirmation describes an alleged incident at the very same apartment, on a night in September 2024, involving Plaintiff and Ms. Hajdini. Kreger Decl. Ex. 2 ¶¶ 7–13. But [redacted] Ex. 6 ¶ 11, independently contradicts the core of Mr. Flott's account. And [redacted] counsel—

[4] JPMC understands that, despite being represented by counsel, Mr. Flott has evaded service of a subpoena to produce documents issued by counsel for Ms. Hajdini seeking communications and documentation related to his affirmation that would have further proved the falsity of that sworn statement. *See* ECF No. 74-1 ¶¶ 30, 33.

who has been in contact with Mr. Flott's counsel—has advised that Mr. Flott was likewise "led astray" by Plaintiff and "convinced . . . to execute a false affirmation," and that both non-parties wish to provide affirmations "recanting their prior statements." Kreger Decl. ¶¶ 22, 25–26 & Ex. 5.

Plaintiff did not merely procure false testimony. He "sentiently set in motion" a scheme to use it at every stage of this dispute. *See Binh Thanh*, 2026 WL 1983485, at *6. He presented the affirmations to JPMC before suit to lend credibility to his claims, while withholding the affiants' identities and refusing to supply basic details of the alleged misconduct. Kreger Decl. ¶ 5; Withdrawal Opp. at 3. He then filed them in the State Action, where they were used to attempt to persuade the court that "[m]ultiple witnesses corroborate Plaintiff's legal claims." Kreger Decl. ¶ 9; NYSCEF Doc. No. 3 ¶ 5; Kreger Decl. Ex. 6 ¶¶ 9–10. And when he came to this Court, Plaintiff incorporated the affirmations' substance into his Complaint, then reaffirmed it in his Amended Complaint, which expressly avers to this Court that a witness "has sworn under penalty of perjury" to observing Ms. Hajdini's alleged conduct and describes allegations supported by [redacted] and Mr. Flott's false affirmations. *See* Compl. ¶¶ 85–98; Am. Compl. ¶¶ 85–98.

Courts in this District have not hesitated to find fraud on the court where a party fabricates evidence and advances allegations built upon it. In *Network Data Rooms, LLC v. Saulrealism LLC*, the court found fraud on the court and dismissed the action with prejudice where an individual acting on the plaintiff's behalf knowingly, willfully, and in bad faith submitted altered evidence and asserted allegations based on the same. 2022 WL 17404501, at *5 (S.D.N.Y. Dec. 2, 2022), *aff'd*, 2023 WL 7103280. This case is even more egregious, as Plaintiff engineered and has continued to perpetuate the fraudulent scheme himself. In *Binh Thanh*, the court dismissed with prejudice where the plaintiff fabricated documents and presented false testimony to excuse that fraud. 2026 WL 1983485, at *7, *11. And in *Shangold*, the court held that by fabricating evidence

and "bolstering that false evidence with perjurious testimony," plaintiffs had "forfeited their right to litigate this case and no sanction short of dismissal will suffice to deter future misconduct." 2006 WL 71672, at *3–5. Plaintiff's conduct here—scripting false eyewitness testimony from his own sister, procuring a second false affirmation from a family friend, and building the most serious allegations of his federal pleadings upon them—requires the same relief.

### B. Plaintiff Has Refused to Correct Demonstrable Falsehoods and Is Withholding Discovery that Will Disprove His Claims

The operative Amended Complaint contains other material fabrications that further underscore the need for sanctions. Plaintiff alleges that JPMC discouraged and chilled his exercise of FMLA rights in late 2024 by refusing to permit him to work remotely to care for his "seriously injured mother." Am. Compl. ¶ 251. In his sworn EEOC Charge, Plaintiff describes that in October 2024, he "temporarily relocated to Virgina" [sic] to be with his sick mother after his "***father suddenly passed***." Spangler Decl. Ex. A ¶ 10 (emphasis added).[5] During this same period, Plaintiff texted his manager, Defendant Mr. Wolter, repeated updates regarding his father's health condition, including stating that he planned to work from home two days after telling Mr. Wolter that his father had a heart attack and was in the ICU. *See* Spangler Decl., Ex. B at 6–8. On the basis of those representations, JPMC afforded Plaintiff flexible working arrangements. Indeed, Plaintiff admits that Mr. Wolter responded: "Of course, we can be flexible on work from home and want you to be able to do what you need to." *Id.* at 8. Weeks later, Plaintiff told Mr. Wolter that his dad died. *Id.* Yet Plaintiff now admits in discovery responses that his father is, in fact, alive. *Id.*

---

[5] Plaintiff incorporates his EEOC charge by reference by referring to it in his Amended Complaint. *See Taylor v. City of New York*, 207 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) ("Courts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference.") (internal quotation marks and citation omitted).

Plaintiff now alleges that "when Mr. Rana sought the same flexibility to care for his seriously injured mother, Defendants refused. They offered no legitimate business reason for doing so." Am. Compl. ¶ 131. He claims that JPMC "forced [him] to choose between the parent who needed him and the job he excelled at," *id.* ¶ 133, when in reality, Plaintiff lied to his supervisor about his father dying, ostensibly to obtain a flexible working arrangement. Counsel for JPMC put former counsel for Plaintiff on notice of this material falsity on May 12, 2026. *See* Cardelle Decl. Ex. E. Yet Plaintiff took no steps to correct the record regarding this issue. Against this backdrop, his continued pursuit of claims against JPMC warrants sanctions. *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 435 (S.D.N.Y. 2016) (holding that plaintiff perpetrated a fraud on the court by "pressing critical and serious allegations that she knew to be false" and dismissing action with prejudice as a sanction); *see also McMunn*, 191 F.Supp.2d at 445 ("the essence of a fraud upon the Court" is "when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process").

JPMC is certain that discovery in this matter will uncover more falsehoods in Plaintiff's allegations and allow JPMC to defeat his baseless claims. But Plaintiff has refused to produce a single document in this matter, despite JPMC serving requests for production two months ago. *See* Withdrawal Opp. at 8–10 (detailing JPMC's diligent efforts to pursue discovery and Plaintiff's refusal to produce relevant information). Plaintiff's abuse of the discovery process, in conjunction with his lies and fraud, counsel in favor of sanctions. *Ceglia v. Zuckerber*g, 600 F. App'x 34, 36 (2d Cir. 2015) ("A court has 'inherent power' to fashion an appropriate sanction for conduct which abuses the judicial process.").

## II. Every Relevant Factor Supports Severe Sanctions

Each of the applicable factors weighs decisively in favor of sanctions. *McMunn*, 191 F. Supp. 2d at 446.

***Intent and bad faith.*** Plaintiff's misconduct was deliberate. In procuring one of the fraudulent affirmations, [redacted]. Kreger Decl. Ex. 6 ¶¶ 7, 13. He then deployed the affirmations in a court proceeding [redacted] *Id.* ¶¶ 9–10. That record alone establishes "willfulness, bad faith, or reasonably serious fault" by clear and convincing evidence. *See Binh Thanh*, 2026 WL 1983485, at *7. Further, as JPMC explained in the State Action: "Plaintiff's fantastical allegations have garnered significant public attention, which he and his representatives have fueled by engaging directly with media outlets." NYSCEF Doc. No. 82 at 5. Plaintiff specifically crafted allegations and supporting evidence designed to garner attention and inflict maximum reputational harm on JPMC and its employees, including the four individual Defendants. He has continued to rely on those fabrications before this Court, which is further evidence of bad faith.

***Prejudice.*** The fabricated testimony and Plaintiff's continued pursuit of knowingly false claims has forced JPMC to investigate and defend against baseless and highly inflammatory allegations of sexual misconduct, discrimination, and retaliation by its employees—first pre-suit, then in the State Action, and now in this Court—including by pursuing third-party discovery from the affiants themselves. Kreger Decl. ¶¶ 5, 9, 14–30.

***Pattern of misbehavior.*** This was not a single misstep. Plaintiff procured not one but two false affirmations; used them to try to shake down JPMC pre-suit, in a state-court filing, and in two successive federal pleadings; and continued to rely on them even after his sister retained counsel and, through that counsel, [redacted] Kreger Decl. ¶¶ 5, 9; Compl. ¶¶ 85–98; Am. Compl. ¶¶ 85–98; Kreger Decl. Ex. 6 ¶ 13.

***Correction.*** The misconduct has never been corrected. Plaintiff filed the Amended Complaint on October 12, 2026 with the affirmation-based allegations intact, and neither Plaintiff nor his counsel has withdrawn those allegations or alerted the Court to their falsity—even though J&N was told before October 14, 2026 that [redacted] was prepared to recant. Am. Compl. ¶¶ 85–98; Kreger Decl. ¶¶ 27–29. The only correction to the record has come from the affiant herself, who finally came clean in response to JPMC's subpoena. Kreger Decl. ¶¶ 14, 30. J&N referred to Plaintiff as a "sexual assault victim" in open Court as recently as October 6, 2026, which further shows there is no intention to correct Plaintiff's false narrative. *See* Spangler Decl., Ex. F, Oct. 6, 2026 Hr'g Tr. 32:6–19.

***Likelihood of continuation.*** Because Plaintiff has not acknowledged, much less remedied, the fraud—and continues to prosecute pleadings that rest on it and other material falsehoods—there is every reason to believe it will continue if this case proceeds. Indeed, Plaintiff has continuously refused to provide relevant information and documents in response to JPMC's written discovery requests issued two months ago, even after this Court *expressly ordered* compliance. This improper withholding of information necessary to defeat his claims further suggests that his fraudulent behavior will continue absent Court intervention.

## III. Dismissal with Prejudice Is the Only Adequate Sanction

JPMC recognizes that "[d]ismissal with prejudice is a particularly severe sanction, even for a fraud upon the court." *McMunn.*, 191 F. Supp. 2d at 442 (internal quotation marks and citation omitted). But as the *McMunn* court explained, "[w]hen faced with a fraud upon the court, . . . such a[] powerful sanction is entirely appropriate." *Id.* at 461 (internal citation omitted); *see also Almeciga*, 185 F. Supp. 3d at 435 ("Dismissal is virtually required" "where the misconduct at issue is the knowing fabrication of the critical allegations underlying the complaint that plaintiff must prove in order to recover."). It is appropriate here.

The Court should consider—and reject—lesser measures for the same reasons the court did in *Binh Thanh*. There, the court concluded that "[l]esser sanctions would not suffice, as the remaining claims cannot be cleanly separated from the tainted proof," that lesser sanctions would be "insufficient to remedy the impact of [the] misconduct or to deter future misconduct," and that "fees alone would not restore the integrity of a proceeding that still depends on tainted witnesses." 2026 WL 1983485, at *11 (citing *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 135, 141 (2d Cir. 2023)) (internal quotation marks omitted). Each consideration applies with full force here. The fabricated affirmations are not peripheral—they are the only purported third-party corroboration Plaintiff has offered for his allegations of sexual misconduct by Ms. Hajdini, and those allegations pervade the Amended Complaint. *See* Am. Compl. ¶¶ 85–98. Striking a handful of paragraphs or precluding the affirmations would leave intact a case built by a plaintiff who has shown that he will script false testimony to support it, and any trial would be "consumed by the authenticity and credibility disputes caused by [his] fraud." *Binh Thanh*, 2026 WL 1983485, at *11. Nor would a monetary sanction alone deter a litigant who procured false sworn statements from his own family to pressure his former employer into a settlement.

"Dismissal with prejudice is the only sanction that accounts for the scope of [Plaintiff's] fraud, protects the integrity of the judicial process and ensures that [Plaintiff] does not benefit from the very misconduct that necessitated this inquiry." *Id.*

**IV. The Court Should Also Award JPMC Its Attorneys' Fees and Costs**

In addition to dismissal, the Court should order Plaintiff to pay the attorneys' fees and costs JPMC incurred as a result of the fraud he has committed for over a year. In *Binh Thanh*, the court both dismissed the case with prejudice and assessed fees and costs the defendant incurred to investigate and litigate the fraud. 2026 WL 1983485, at *11. Courts likewise pair dismissal with monetary sanctions where misconduct has imposed substantial costs on the opposing party. *See*

*McMunn*, 191 F. Supp. 2d at 462 (dismissing with prejudice and imposing $20,000 sanction "in light of the magnitude of the additional costs and expenses [plaintiff] imposed on [defendant] through her misconduct"); *Shangold*, 2006 WL 71672, at *6 (awarding attorneys' fees and costs associated with the sanctionable conduct).[6]

**V. Plaintiff Has Notice and an Opportunity to Be Heard**

Before imposing sanctions, the Court must give notice of (1) the source of authority for the sanctions being considered and (2) the specific conduct for which sanctions are sought, so that the subject of the motion can prepare a defense; a full evidentiary hearing is not required, and the opportunity to respond by brief or oral argument may suffice. *See Banus*, 757 F. Supp. 2d at 400. This motion provides that notice: it identifies the Court's inherent authority as the sole basis for the relief sought, and it identifies the specific conduct at issue—Plaintiff's procurement and use of the sham affirmations, the false allegations in the Complaint and Amended Complaint that rest on them, and Plaintiff's failure to correct those and other falsehoods after being notified of their falsity. Plaintiff may respond in opposition, and JPMC does not object to the Court holding a hearing should it find one useful.

## <u>CONCLUSION</u>

For the foregoing reasons, JPMC respectfully requests that the Court (i) find that Plaintiff committed a fraud on the Court; (ii) dismiss Plaintiff's claims with prejudice; (iii) order Plaintiff, jointly and severally with J&N as set forth above, to pay JPMC's reasonable attorneys' fees and costs incurred as a result of the fraud, including the fees and costs of investigating the affirmations

[6] JPMC respectfully requests leave to submit a declaration and supporting time records documenting the fees and costs incurred within fourteen days of the Court's ruling, or on such other schedule as the Court directs.

and bringing this motion, in an amount to be established by subsequent submission; and (iv) grant such other relief as the Court deems just and proper.

Dated: October 26, 2026

By: /s/ *Cardelle B. Spangler*

Cardelle B. Spangler
Sarah N. Kreger
WINSTON TAYLOR LLP
300 N. LaSalle Dr., Suite 4400
Chicago, IL 60654-3406
(312) 558-5600
cardelle.spangler@winstontaylor.com
sarah.kreger@winstontaylor.com

*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2026, I caused a copy of the foregoing to be filed using the Court's CM/ECF system, which I understand will transmit notice to all counsel of record.

/s/ *Sarah N. Kreger*

*Attorney for Defendant JPMorgan Chase Bank, N.A.*

**CERTIFICATION OF COMPLIANCE**

I hereby certify that the number of words in this memorandum of law complies with Local Civil Rule 7.1(c). The memorandum contains 5,936 words excluding the caption, any index, table of contents, table of authorities, signature blocks, and this certificate, as counted by Microsoft Word.

Dated: October 26, 2026

*/s/ Sarah N. Kreger*

*Attorney for Defendant JPMorgan Chase Bank, N.A.*