**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHIRAYU S. RANA,

Plaintiff,

-against-

JPMORGAN CHASE BANK, N.A., LORNA HAJDINI, BRANDON GRAFFEO, JON WOLTER, and KELLY CROWE,

Defendants.

Case No. 1:26-cv-06351-LAK

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF JOSEPH & NORINSBERG, LLC TO WITHDRAW AS COUNSEL FOR PLAINTIFF**

**JOSEPH & NORINSBERG, LLC**
Jon L. Norinsberg
825 Third Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
jon@norinsberglaw.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS


**Page**

PRELIMINARY STATEMENT....1

ARGUMENT....3

I. DEFENDANTS HAVE FAILED TO REFUTE J&N'S SHOWING UNDER LOCAL CIVIL RULE 1.4....3

A. J&N Has Shown Satisfactory Reasons for Withdrawal, and Defendants Offer No Rebuttal....3

B. Withdrawal Will Not Materially Affect the Timing of This Case....4

II. THE CHRONOLOGY REFUTES DEFENDANTS' TIMING ARGUMENT....5

A. J&N Decided to Withdraw on October 8, Four Days Before It First Learned of a Possible Recantation....5

B. J&N Properly Continued as Counsel of Record Pending Leave to Withdraw....5

III. A RECANTATION DOES NOT ESTABLISH FALSITY, MUCH LESS COUNSEL'S KNOWLEDGE OF IT....6

A. Under the Law of This Circuit, the Recanting Affidavit Must Be Viewed With the "Utmost Suspicion"....6

B. Two Contradictory Sworn Accounts Create a Credibility Issue for Cross-Examination, Not Proof of Fraud....7

C. Defendants Have Submitted No Recantation, Declaration, or Statement From Allan Flott....7

D. Defendants Cannot Manufacture the Actual Knowledge Rule 3.3 Requires....8

IV. DEFENDANTS' NEWLY FILED SANCTIONS MOTIONS PROVIDE NO BASIS TO DENY WITHDRAWAL....9

V. DISCOVERY PROVIDES NO BASIS TO DENY WITHDRAWAL....10

CONCLUSION....10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Banus v. Citigroup Glob. Mkts., Inc.*, 757 F. Supp. 2d 394 (S.D.N.Y. 2010)....9

*Galin v. Hamada*, 283 F. Supp. 3d 189 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018)....8

*Haouari v. United States*, 510 F.3d 350 (2d Cir. 2007)....2, 6

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318 (GBD) (BCM), 2017 WL 5067432 (S.D.N.Y. May 9, 2017)....9

*Luxwear Ltd. v. Adaptiv Rsch. & Dev. Grp.*, No. 22-CV-5458 (AT) (BCM), 2023 WL 3010397 (S.D.N.Y. Mar. 28, 2023)....4

*Luxwear Ltd. v. Adaptiv Rsch. & Dev. Grp.*, No. 22-CV-5458 (AT) (BCM), 2023 WL 3011912 (S.D.N.Y. Mar. 30, 2023)....4

*Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023)....8

*Mintz Fraade L. Firm, P.C. v. Brady*, No. 19-CV-10236 (JMF), 2021 WL 621206 (S.D.N.Y. Feb. 17, 2021)....9

*Ortega v. Duncan*, 333 F.3d 102 (2d Cir. 2003)....2, 6

*Scala v. Little Feet Childcare Ctr. LLC*, No. 7:23-cv-09279, ECF No. 32 (S.D.N.Y. July 9, 2024)....4

*Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. NYC Flooring L.L.C.*, No. 19-CV-6441 (LJL), 2020 WL 7016449 (S.D.N.Y. Oct. 7, 2020)....9

*Whiting v. Lacara*, 187 F.3d 317 (2d Cir. 1999)....3

*Winkfield v. Kirschenbaum & Phillips, P.C.*, No. 12 Civ. 7424 (JMF), 2013 WL 371673 (S.D.N.Y. Jan. 29, 2013)....3, 4

**Statutes and Rules** **Page(s)**

28 U.S.C. § 1927....9

Fed. R. Evid. 502(d)....2

Local Civil Rule 1.4....1, 3, 4, 5

N.Y. Rules of Prof'l Conduct R. 1.0(k)....6, 8

N.Y. Rules of Prof'l Conduct R. 1.16....3, 4, 5

N.Y. Rules of Prof'l Conduct R. 3.3....6, 8

**Other Authorities** **Page(s)**

ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 519 (2025)....4

N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Op. 1057 (2015)....4

Plaintiff's counsel, Joseph & Norinsberg, LLC ("J&N"), respectfully submits this Reply Memorandum of Law in further support of its motion to withdraw as counsel for Plaintiff, ECF No. 55. Because the oppositions of Defendant JPMorgan Chase Bank, N.A., ECF No. 76, Defendant Lorna Hajdini, ECF No. 74, and Defendants Brandon Graffeo, Jonathan Wolter, and Kelly Crowe, ECF No. 78, advance substantially overlapping arguments, J&N responds to all three in this single reply in the interest of judicial economy.

## PRELIMINARY STATEMENT

Defendants' oppositions are an exercise in misdirection. Local Civil Rule 1.4 asks whether J&N has satisfactory grounds to withdraw and whether withdrawal will disrupt the case. Defendants never answer either question. Instead, across nearly forty pages of briefing, they accuse J&N of fraud and professional misconduct, accusations as serious as they are unfounded. Those accusations may be litigated on the sanctions motions Defendants have now filed. They do not answer the showing J&N made under Rule 1.4.

Apart from being irrelevant to Rule 1.4, Defendants' oppositions fail for a more fundamental reason: they rest on two erroneous premises, one factual and one legal. Both are demonstrably false. The factual premise, implicit throughout Defendants' oppositions, is that J&N is withdrawing in response to Chandani Rana's recantation, seeking to "abandon this litigation while concealing" evidence of fraud. JPMC Opp. 1. The chronology forecloses that theory. J&N decided to withdraw on October 8 and told Plaintiff so in writing that same day. Patrick Selvey, who represents Ms. Rana, did not mention a possible recantation until October 12, and J&N did not see Ms. Rana's recanting affidavit until Defendants filed it on October 22. J&N therefore could not have decided to withdraw in response to, much less to conceal, a recantation it had not yet learned of.

The legal premise is that Ms. Rana's later affirmation must be accepted as true and erases the sworn affidavit she gave before it, so that J&N must be deemed to have known the first was false. The Second Circuit says precisely the opposite. Recantations "must be looked upon with the

utmost suspicion," *Haouari v. United States*, 510 F.3d 350, 353 (2d Cir. 2007) (quoting *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir. 2003)), and a court confronted with one "must weigh all the evidence of perjury before it, including but not limited to the recantation." *Ortega*, 333 F.3d at 107. A later contradictory statement does not erase an earlier sworn statement or establish which one is true.

The record on that question is far from complete. Before her recantation, Ms. Rana gave an approximately 22-minute recorded interview to Plaintiff's former counsel in which she described two separate encounters she personally witnessed between Plaintiff and Ms. Hajdini and provided substantial surrounding detail. Throughout the interview, she repeatedly distinguished between what she personally observed, what she inferred, and what she could not recall with certainty. Plaintiff will submit the recording and transcript under seal with his opposition to Defendants' sanctions motions, so the Court can review the interview and assess her credibility for itself.[1]

Moreover, Ms. Rana's later recantation does not establish that Plaintiff's allegations were false. To the contrary, she concedes in it that she "cannot say whether" those allegations "are true or false." At most, the record presents materially conflicting accounts from the same witness, neither of which has yet been tested at deposition or through cross-examination. Defendants cannot simply declare the later account true, her earlier sworn affidavit and recorded interview false, and then use that unresolved credibility dispute as proof that counsel knowingly advanced false allegations.

Defendants' treatment of Allan Flott is even more attenuated. Mr. Flott has not recanted, and Defendants offer nothing from him contradicting his sworn account: no recanting affidavit, declaration, testimony, or other statement. Unlike Ms. Rana, there are not even competing accounts to weigh. Yet Defendants ask the Court to declare Mr. Flott's affirmation false, impute that falsity to J&N, and do so without a single word from Mr. Flott himself. Their position rests entirely on

[1] Plaintiff will be filing a separate letter requesting an order under Federal Rule of Evidence 502(d) that submission of the recording and transcript will not waive any attorney-client privilege or work-product protection as to any other communication or material, in this or any other proceeding.

speculation and hearsay. That is nowhere near enough to establish that Mr. Flott's sworn account was false, much less that J&N knew it was false.

With those two erroneous premises removed, Defendants have no answer to the motion before the Court. As J&N has already documented, the attorney-client relationship has irretrievably broken down and effective representation is no longer possible. Defendants offer no basis to suggest otherwise. Nor have they shown that withdrawal would cause material disruption. Discovery is in its earliest stages, limited so far to document demands and interrogatories. No depositions have yet been held, expert reports are months away, and trial is not scheduled until June 2027.

The motion should be granted.

## ARGUMENT

### I. DEFENDANTS HAVE FAILED TO REFUTE J&N'S SHOWING UNDER LOCAL CIVIL RULE 1.4.

#### A. J&N Has Shown Satisfactory Reasons for Withdrawal, and Defendants Offer No Rebuttal.

Defendants never engage the governing standard. Local Civil Rule 1.4(b) permits withdrawal "upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, and whether or not the attorney is asserting a retaining or charging lien." Courts consider "the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding." *Winkfield v. Kirschenbaum & Phillips, P.C.*, No. 12 Civ. 7424 (JMF), 2013 WL 371673, at *1 (S.D.N.Y. Jan. 29, 2013); *see Whiting v. Lacara*, 187 F.3d 317, 320–21 (2d Cir. 1999).

J&N has met that standard, and Defendants offer nothing to the contrary. J&N's papers establish that irreconcilable differences have made effective representation unreasonably difficult and that the relationship is beyond repair. ECF No. 56 at 4; ECF No. 57 ¶ 3. That is a recognized ground for withdrawal. N.Y. Rules of Prof'l Conduct R. 1.16(c)(7) (permitting withdrawal where "the client fails to cooperate in the representation or otherwise renders the representation

unreasonably difficult for the lawyer to carry out employment effectively”). No Defendant contends that the relationship remains functional or that J&N can continue effectively.

Instead, Defendants demand J&N’s client confidences. Defendant Lorna Hajdini calls J&N’s showing “boilerplate,” Hajdini Opp. 2, and Defendant JPMorgan Chase Bank, N.A. (“JPMC”) calls it “generic,” JPMC Opp. 15. Neither cites any rule requiring counsel to disclose confidential matters as the price of withdrawal, because the rule is the opposite. Where withdrawal “may be accomplished simply on the basis of counsel’s statement that professional considerations require it, no more should be disclosed.” N.Y. State Bar Ass’n Comm. on Prof’l Ethics, Op. 1057 ¶ 14 (2015). Such a statement “ordinarily should be accepted as sufficient.” N.Y. Rules of Prof’l Conduct R. 1.16 cmt. [3].

*Luxwear*, Defendants’ principal authority, does not help them. There, counsel failed to identify any satisfactory reason for withdrawal, “even at a high level,” in their publicly filed papers. *Luxwear Ltd. v. Adaptiv Rsch. & Dev. Grp.*, No. 22-CV-5458 (AT) (BCM), 2023 WL 3011912, at *2 (S.D.N.Y. Mar. 30, 2023). J&N’s papers do, and *Luxwear* recognizes that supporting documents are “routinely filed under seal.” *Luxwear Ltd. v. Adaptiv Rsch. & Dev. Grp.*, 2023 WL 3010397, at *1 (S.D.N.Y. Mar. 28, 2023) (internal quotation marks omitted). Should the Court require more, J&N will provide it *in camera*. *See* ABA Comm. on Ethics & Prof’l Responsibility, Formal Op. 519 (2025). Defendants have no basis for demanding it.

**B. Withdrawal Will Not Materially Affect the Timing of This Case.**

Defendants fare no better on timing. Discovery is in its earliest stages, and no deposition has yet been held. Expert reports are not due until January 15, 2027, ECF No. 29, and trial is not scheduled until June 2027. Withdrawal is not unduly disruptive where discovery remains open and the case is not “on the verge of trial readiness.” *Winkfield*, 2013 WL 371673, at *1. That the firm Plaintiff recently retained, ECF Nos. 69–70, has itself moved to withdraw does not alter the Rule 1.4 analysis; courts routinely grant withdrawal and give the client time to retain counsel or proceed *pro se*. *See, e.g.*, *Scala v. Little Feet Childcare Ctr. LLC*, No. 7:23-cv-09279, ECF No. 32

(S.D.N.Y. July 9, 2024) (granting withdrawal and a 30-day stay). J&N requested exactly that. ECF No. 56; *see* JPMC Opp. 10 (acknowledging J&N's request that Plaintiff be given 60 days to secure new counsel). J&N has delivered Plaintiff's file to him and will cooperate fully with successor counsel. *See* N.Y. Rules of Prof'l Conduct R. 1.16(e).

## II. THE CHRONOLOGY REFUTES DEFENDANTS' TIMING ARGUMENT.

### A. J&N Decided to Withdraw on October 8, Four Days Before It First Learned of a Possible Recantation.

Defendants suggest that J&N is withdrawing to "walk away from its duty of candor." Hajdini Opp. 2; *see* JPMC Opp. 1. The chronology shows otherwise. J&N decided on October 8, 2026, to withdraw, told Plaintiff so in writing that afternoon, and spoke with him by telephone the next morning. ECF No. 57 ¶ 6; Supplemental Declaration of Jon L. Norinsberg, filed herewith ("Norinsberg Supp. Decl.") ¶¶ 2–4. At Plaintiff's request, J&N deferred filing until after the holiday weekend to give him time to find new counsel, and filed on October 14. *Id.* ¶ 5. Mr. Selvey first raised a possible recantation with J&N on October 12, four days after the decision. *Id.* ¶¶ 8–9. Hajdini herself acknowledges that J&N told Plaintiff on October 9 that it could no longer represent him. Hajdini Opp. 10. J&N's decision thus preceded any mention of a recantation and cannot have been a response to one, much less a plan to conceal it from the Court.

### B. J&N Properly Continued as Counsel of Record Pending Leave to Withdraw.

Hajdini's complaint that J&N continued litigating after October 9, which she calls "troubling," Hajdini Opp. 10, 16, gets the Rules backwards. Until the Court grants leave, J&N remains counsel of record and may not abandon its client. N.Y. Rules of Prof'l Conduct R. 1.16(d); Local Civ. R. 1.4(b). J&N therefore filed the Amended Complaint on October 12 in that capacity. By then, J&N had Mr. Selvey's report that his client might recant, but no recanting affidavit. Ms. Rana did not execute one until October 22, and J&N did not see it until Defendants filed it that day. Kreger Decl. ¶ 30.

But apart from timing, the recanting affidavit still does not establish that Ms. Rana's prior sworn account or the Amended Complaint's allegations were false. It merely adds another conflicting account to a record that already contains her sworn affidavit and detailed recorded interview supporting Plaintiff's claims. Rule 3.3 requires actual knowledge of falsity, not an adversary's preferred version of a witness's conflicting accounts. N.Y. Rules of Prof'l Conduct R. 1.0(k). Defendants cannot manufacture actual knowledge by declaring the recantation true and everything that came before it false. At most, the recanting affidavit creates a credibility dispute for the factfinder to resolve. It did not require J&N to rewrite the pleading, discard contrary evidence, or abandon Plaintiff's claims.

## III. A RECANTATION DOES NOT ESTABLISH FALSITY, MUCH LESS COUNSEL'S KNOWLEDGE OF IT.

### A. Under the Law of This Circuit, the Recanting Affidavit Must Be Viewed With the "Utmost Suspicion."

Defendants' legal premise is no stronger. "[I]t is axiomatic that witness recantations 'must be looked upon with the utmost suspicion,'" *Haouari*, 510 F.3d at 353 (quoting *Ortega*, 333 F.3d at 107), and a court "must weigh all the evidence of perjury before it, including but not limited to the recantation," *Ortega*, 333 F.3d at 107. This recantation warrants that suspicion in full. JPMC insists its evidence will "establish conclusively" that Plaintiff fabricated his claims, JPMC Opp. 2, and Hajdini declares that "[n]one of this is speculation," Hajdini Opp. 1. Their own exhibits say otherwise, beginning with the origin of the recantation.

On October 2, the witness's lawyer told JPMC's counsel that his client might be willing to sign a new affirmation. Kreger Decl. ¶ 20. That evening, JPMC's counsel sent him one, already drafted, asking that his client "please review and execute the attached affirmation." *Id.* Ex. 4. On October 16, counsel were still discussing "a draft corrective affirmation" that "JPMC's counsel had previously provided," and the witness's lawyer "did not anticipate substantive issues" with it. Rodriguez Decl. ¶ 34. She signed on October 22, and Defendants filed it the same day. Kreger Decl. ¶ 30.

One of the witness's stated criticisms of her original affidavit is that it was prepared by a lawyer. Kreger Decl. Ex. 6 ¶ 8. Her recantation, however, was itself drafted by JPMC's lawyers. Defendants cannot discredit the first statement because a lawyer drafted it while treating the second, drafted by JPMC's own counsel, as conclusive.

### B. Two Contradictory Sworn Accounts Create a Credibility Issue for Cross-Examination, Not Proof of Fraud.

Read in full, JPMC's promise of "conclusive" proof refers to information it is still trying to "obtain from Plaintiff." JPMC Opp. 2. JPMC does not have it. No court has determined which of the witness's two sworn accounts is true. Her affidavit remains sworn testimony, and her recantation remains an unadjudicated contradiction of it, one embodied in a recanting affidavit drafted by JPMC's own counsel.

The recantation does not fill that evidentiary gap. As to the conduct Plaintiff alleges, she swears: "Everything I know about those allegations came from him. I cannot say whether they are true or false." Kreger Decl. Ex. 6 ¶ 12. A recantation in which the witness expressly declines to say that Plaintiff's allegations are false cannot itself establish that those allegations were fabricated.

The recantation also contradicts the affidavit it purports to disavow. The witness now claims she was told the affidavit would never be used in court, *id.* ¶ 9, yet the affidavit states directly above her signature that she understood it "may be filed in an action or proceeding in a court of law," *id.* Ex. 1 at 2. Both cannot be true. If the recantation is true, then the witness swore falsely under penalty of perjury when she signed the original affidavit. That is the credibility dispute Defendants simply skip over. They ask the Court to accept the later account, reject the earlier sworn one, and then treat that choice as proof of what J&N supposedly knew. That is not evidence of fraud. It is an unresolved credibility question for testimony and cross-examination.

### C. Defendants Have Submitted No Recantation, Declaration, or Statement From Allan Flott.

Defendants have submitted nothing from Mr. Flott repudiating his affidavit. He has not recanted, submitted any new affidavit, or testified that his sworn account was false. Instead,

Defendants rely on another witness's lawyer's account of a conversation with Mr. Flott's lawyer. Kreger Decl. ¶ 25. That is not a recantation. It is second-hand hearsay about what one lawyer said to another, layered with speculation about what Mr. Flott himself believes. Defendants cannot substitute that for actual witness testimony, much less use it to establish that Mr. Flott's sworn account was false or that J&N knew it was false. The only proper way to test Mr. Flott's sworn account is under oath at his deposition, not through lawyer-to-lawyer hearsay in a brief.

**D. Defendants Cannot Manufacture the Actual Knowledge Rule 3.3 Requires.**

In an effort to turn this withdrawal motion into a collateral ethics proceeding, Defendants invoke Rule 3.3, even though those accusations are now the subject of separate sanctions motions. Rule 3.3 is not the issue presented by this motion. But even if the Court considers it here, the argument fails on its own terms.

Each provision Defendants invoke requires actual knowledge. Rule 3.3(a)(1) applies where a lawyer "knowingly" fails to correct a false statement; Rule 3.3(a)(3) where a lawyer "comes to know" of falsity; and Rule 3.3(b) where a lawyer "knows" of fraudulent conduct. A lawyer "knows" only upon "actual knowledge of the fact in question." N.Y. Rules of Prof'l Conduct R. 1.0(k). Rule 3.3(c), on which Defendants rely, does not come into play unless that threshold is met. JPMC Opp. 15–16; Hajdini Opp. 13.

Defendants have not come close to meeting it. Ms. Rana's later recantation conflicts with her prior sworn affidavit and recorded interview; it does not establish which account is true. Mr. Flott has not recanted at all. Conflicting accounts and second-hand reports are not actual knowledge of falsity.

Defendants' own cases underscore the point. In *Mata v. Avianca, Inc.*, counsel stood behind fabricated judicial opinions after the court questioned their existence. 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023). And *Galin v. Hamada* recognizes that sanctions may be imposed on a party that refuses to withdraw an allegation "even after it was shown to be inaccurate." 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017) (internal quotation marks omitted), *aff'd*, 753 F. App'x 3 (2d Cir. 2018).

Here, nothing has been shown to be false. No court has found either affidavit false, no witness other than Ms. Rana has recanted, and Ms. Rana herself does not say Plaintiff's allegations are false. Defendants cannot manufacture actual knowledge by choosing the account they prefer and treating that choice as proof.

## IV. DEFENDANTS' NEWLY FILED SANCTIONS MOTIONS PROVIDE NO BASIS TO DENY WITHDRAWAL.

On October 26, 2026, four days after filing their oppositions, Defendants moved for sanctions. JPMC seeks dismissal with prejudice and an award of fees against Plaintiff, to be paid jointly and severally with J&N. ECF Nos. 84, 86–88. Hajdini joins that motion and separately seeks a finding of bad faith against J&N and Mr. Norinsberg, and fees against J&N, under 28 U.S.C. § 1927 and the Court's inherent power. Hajdini Sanctions Br. 14–16.

Withdrawal will not impair the Court's ability to decide those motions. Defendants' own authorities confirm that the Court "may retain jurisdiction over a withdrawing attorney." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318 (GBD) (BCM), 2017 WL 5067432, at *7 (S.D.N.Y. May 9, 2017); *see also Banus v. Citigroup Glob. Mkts., Inc.*, 757 F. Supp. 2d 394, 399–400, 403 (S.D.N.Y. 2010) (Kaplan, J.). J&N consents to the Court's retention of jurisdiction over it for that purpose and will participate fully in the sanctions proceedings. Withdrawal therefore deprives neither Defendants nor the Court of a single remedy.

Defendants' authorities do not require a different result. In *NYC Flooring*, the court declined to permit withdrawal because doing so before counsel responded to a pending sanctions motion would have left the clients "without counsel at a critical stage" and deprived the court of "insights from the lawyer involved in the discussions over discovery." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. NYC Flooring L.L.C.*, No. 19-CV-6441 (LJL), 2020 WL 7016449, at *1 (S.D.N.Y. Oct. 7, 2020); *see also Mintz Fraade L. Firm, P.C. v. Brady*, No. 19-CV-10236 (JMF), 2021 WL 621206, at *7 n.8 (S.D.N.Y. Feb. 17, 2021). Neither concern applies here: J&N is answering the sanctions motions on Plaintiff's behalf now, and it remains subject to the Court's jurisdiction and available to the Court throughout.

The sanctions motions therefore provide no reason to compel continuation of the attorney-client relationship. Those motions will be adjudicated on their merits, and J&N will remain fully answerable to the Court regardless of whether withdrawal is granted.

## V. DISCOVERY PROVIDES NO BASIS TO DENY WITHDRAWAL.

Defendants' discovery argument fares no better. Plaintiff's rolling production, drawn from four imaged devices and approximately 50,000 documents, will begin on October 30, 2026, while J&N continues its privilege and relevance review. Oct. 6, 2026 Tr. 38:22–39:3. Plaintiff's written responses and objections will also be served that day. The outstanding discovery obligations are therefore being addressed and provide no basis to deny withdrawal.

Nor does the fact that successor counsel will need time to learn the case. ECF No. 78 at 2. That is inherent in virtually every withdrawal and cannot, standing alone, justify compelling counsel to remain in an irretrievably broken attorney-client relationship.

## CONCLUSION

Defendants' oppositions rest on a factual premise the record refutes and a legal premise the law does not support. Neither the sanctions motions nor the outstanding discovery obligations, which are being addressed, provide a legitimate basis to compel J&N to continue an attorney-client relationship that has irretrievably broken down. The Court should grant the motion while retaining jurisdiction over J&N for the sanctions proceedings to whatever extent the Court deems appropriate.

Dated: New York, New York
October 28, 2026

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

By: /s/ Jon L. Norinsberg
Jon L. Norinsberg
825 Third Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
jon@norinsberglaw.com
*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum complies with the word-count limitation of Local Civil Rule 7.1(c). It contains 3,405 words, excluding the caption, any index, table of contents, table of authorities, signature block, and this certificate, as counted by Microsoft Word.

Dated: New York, New York
October 28, 2026