UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHIRAYU S. RANA,

Plaintiff,

v.

JPMORGAN CHASE BANK, N.A., LORNA HAJDINI, BRANDON GRAFFEO, JON WOLTER, and KELLY CROWE,

Defendants.

Case No. 1:26-cv-6351 (LAK)

**MEMORANDUM OF LAW OF PLAINTIFF CHIRAYU S. RANA AND JOSEPH & NORINSBERG, LLC IN OPPOSITION TO DEFENDANT LORNA HAJDINI'S MOTION FOR SANCTIONS**

JOSEPH & NORINSBERG, LLC
Jon L. Norinsberg
825 Third Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
jon@norinsberglaw.com

*Attorneys for Joseph & Norinsberg, LLC and, for the limited purpose of opposing the motions for sanctions, for Plaintiff Chirayu S. Rana*

# TABLE OF CONTENTS


Page

PRELIMINARY STATEMENT ....................1

STATEMENT OF FACTS ....................3

Ms. Rana's Recorded Interview Preceded Her Affirmation ....................3

The Recantation Conflicts With the Recording ....................5

Defendants Have No Recantation From Mr. Flott ....................5

J&N Decided to Withdraw Before Any Notice of a Recantation ....................6

ARGUMENT ....................6

I. THE CONTESTED RECANTATION IS NOT PROOF OF FRAUD ....................6

A. Ms. Hajdini Cannot Carry Her Clear and Convincing Burden ....................6

B. Courts Treat Recantations With the "Utmost Suspicion" ....................7

II. MS. HAJDINI SUBSTITUTES RHETORIC AND SPECULATION FOR PROOF ....................9

A. The Recorded Interview Differs Markedly From the "Script" ....................9

B. Ms. Hajdini's Accusations Are Not Evidence ....................11

C. Attacks on Plaintiff's Credibility Do Not Prove That Any Witness Lied ....................11

D. Mr. Flott Has Not Retracted His Affirmation ....................12

III. THE RACE DISCRIMINATION AND RETALIATION CLAIMS STAND ON THEIR OWN ....................12

IV. MS. HAJDINI'S DEMAND AGAINST J&N FAILS AS A MATTER OF LAW ....................13

A. Ms. Hajdini Offers Speculation, Not Proof of Bad Faith ....................13

B. Ms. Hajdini Mislabels Advocacy as Bad Faith ....................15

C. J&N Reasonably Relied on the Recording and the Affirmations ....................15

D. J&N Corrected What Discovery Disproved ....................16

E. Ms. Hajdini Chose to Forgo Rule 11 and Must Prove Subjective "Bad Faith" ....................18

V. MS. HAJDINI'S DEMANDS FOR FEES AND OTHER RELIEF HAVE NO BASIS ....................19

A. Ms. Hajdini Ties No Fees to Any Conduct by J&N ....................19

B. The Court Should Not Order a Press Campaign ....................19

C. Ms. Hajdini Has No Basis to Question Counsel Under Oath ....................20

CONCLUSION ....................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989) .......... 7

*Banus v. Citigroup Glob. Mkts., Inc.*, 757 F. Supp. 2d 394 (S.D.N.Y. 2010) .......... 14

*Binh Thanh Imp. Exp. Prod. & Trade Joint Stock Co. v. Amazon.com Servs. LLC*, No. 23 Civ. 292 (LGS), 2026 U.S. Dist. LEXIS 152089 (S.D.N.Y. July 9, 2026) .......... 8, 13, 14

*Brown v. Artus*, 647 F. Supp. 2d 190 (N.D.N.Y. 2009) .......... 7

*Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078 (2d Cir. 1977) .......... 14

*Calloway v. Marvel Ent. Grp.*, 854 F.2d 1452 (2d Cir. 1988), *rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 110 S. Ct. 456 (1989) .......... 16

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123 (1991) .......... 18

*Dobbert v. Wainwright*, 468 U.S. 1231, 105 S. Ct. 34 (1984) .......... 7

*Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329 (2d Cir. 1986) .......... 7, 13

*Duka v. All. Tri-State Constr., Inc.*, No. 20 Civ. 6648 (ER), 2021 U.S. Dist. LEXIS 186975 (S.D.N.Y. Sept. 29, 2021) .......... 8, 13

*Eisemann v. Greene*, 204 F.3d 393 (2d Cir. 2000) .......... 7, 13

*Gentile v. State Bar of Nev.*, 501 U.S. 1030, 111 S. Ct. 2720 (1991) .......... 15, 20

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 137 S. Ct. 1178 (2017) .......... 19

*Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320 (2d Cir. 1995) .......... 16

*Haouari v. United States*, 510 F.3d 350 (2d Cir. 2007) .......... 7, 12

*In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003) .......... 18

*Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021) .......... 8, 19

*Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023) .......... 18

*McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440 (S.D.N.Y. 2002) .......... 7, 9, 11

*Mitchell v. Lyons Prof'l Servs., Inc.*, 708 F.3d 463 (2d Cir. 2013) .......... 13

*Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104 (2d Cir. 2013) .......... 18

*Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986) .......... 13

*Ortega v. Duncan*, 333 F.3d 102 (2d Cir. 2003) .......... 7, 8

*Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124 (2d Cir. 2023) .......... 8, 14, 18

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012) .......... 18

*United States v. Seltzer*, 227 F.3d 36 (2d Cir. 2000) .......... 13, 18, 19

*Wilson v. Citigroup, N.A.*, 702 F.3d 720 (2d Cir. 2012) .......... 7, 18

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009) .......... 13

**Statutes and Rules**

28 U.S.C. § 1927 .......... 13, 14, 18, 19

Fed. R. Civ. P. 11 .......... 17, 18

Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment .......... 20

Local Civ. R. 1.4(b) .......... 17

N.Y. Rules of Prof'l Conduct R. 1.3(b) .......... 17

N.Y. Rules of Prof'l Conduct R. 1.6(b)(5)(i) .......... 20

N.Y. Rules of Prof'l Conduct R. 1.16(d) .......... 17

N.Y. Rules of Prof'l Conduct R. 3.6(a) .......... 15

Plaintiff Chirayu S. Rana and his former counsel, Joseph & Norinsberg, LLC ("J&N"), respectfully submit this Memorandum of Law in opposition to the motion for sanctions filed by Defendant Lorna Hajdini ("Ms. Hajdini"). ECF Nos. 90, 92–95.

## PRELIMINARY STATEMENT

Ms. Hajdini asks the Court to dismiss this action with prejudice and to make Plaintiff and his counsel pay her fees. She also seeks a court-approved notice to the press. Her record, however, comes nowhere near the clear and convincing proof of fraud that such relief requires. Once its inflammatory labels are set aside, the motion raises a question about the credibility of a single witness and offers conjecture about a second. Neither warrants ending Plaintiff's case this early, while the competing accounts have yet to be tested in discovery.

Plaintiff's sister, Chandani Rana ("Ms. Rana"), signed her recantation more than a year after her July 2025 sworn affirmation, and she did so only after JPMC served her with a subpoena. The recantation conflicts with that affirmation and with her recorded June 2025 interview. Ms. Hajdini nonetheless treats the conflict as proof that Plaintiff and his counsel committed fraud, even though the law regards a recantation of this kind with the "utmost suspicion." Even now, Ms. Rana does not say that her brother was never harassed. Her only statement on that subject is that she "cannot say whether" her brother's allegations "are true or false." Ms. Hajdini leaves that sentence out while calling the entire case a "calculated fraud." Hajdini Mem. at 1. Two irreconcilable accounts from one witness cannot show that Plaintiff knowingly engineered a fraud on the Court.

The recording also casts doubt on the recantation itself. Weeks before she signed her affirmation, Plaintiff's former counsel at Outten & Golden LLP put open-ended questions to Ms. Rana about two encounters with Ms. Hajdini. Her account covered far more than the three-line "Things to say" text message from Plaintiff that Ms. Hajdini calls a script. Hajdini Mem. at 7, 13. By all appearances the exchange was spontaneous, and Ms. Rana met each follow-up question with specific detail about what she said she saw pass between her brother and Ms. Hajdini. J&N

relied on that recording when it drafted the allegations about Ms. Hajdini in the original Complaint and the Amended Complaint.

Her accusation against Allan Flott ("Mr. Flott") is more tenuous still. Ms. Hajdini calls his affirmation "perjured" and invites a criminal referral. Hajdini Mem. at 13, 19 n.12. Yet JPMC itself concedes that Mr. Flott has not recanted, and no later statement from him contradicts his July 2025 sworn account. Although his lawyer took part in the October exchanges in which counsel discussed "proposed corrective affirmations," nothing in the record shows Mr. Flott retracting anything. All Ms. Hajdini offers about him is one lawyer's report of what another lawyer said. Hearsay of that kind is not evidence of fraud, much less clear and convincing evidence.

Ms. Hajdini also seeks dismissal of the whole action without addressing the race discrimination and retaliation claims that run throughout the Amended Complaint and do not depend on either witness. Am. Compl. ¶¶ 1–31, 45–54, 57, 84, 100, 104–241 (ECF No. 53). To take one example, a message from Defendant Kelly Crowe to the group asked, "Can I bring the other brown boy?" In another, a teammate quipped that a Nepalese barbershop would "probably accept your rupees, Chirayu." *Id.* ¶¶ 3, 8–9, 111. Less than three weeks after Plaintiff complained in writing about race discrimination, JPMC put him on indefinite leave and cut off his system access. It later cut his pay by more than half. *Id.* ¶¶ 143, 159–162, 167, 179. Those facts give rise to an inference of discrimination and retaliation that has no connection to either witness's affirmation. *Id.* ¶¶ 242–248, 253–259, 263–265, 269–279, 283–285.

The demand for sanctions against J&N should be rejected as well. Sanctioning counsel requires clear evidence of counsel's own subjective bad faith. Ms. Hajdini asserts that J&N "either knew or should have known" the allegations were false. Hajdini Mem. at 15. But she supplies no clear evidence of actual knowledge, and "should have known" cannot substitute for subjective bad faith. The witness evidence did not come from J&N. Prior counsel interviewed Ms. Rana and obtained both affirmations. Another law firm had already filed the affirmations in state court. J&N reasonably relied on that evidence in bringing this action. When discovery later

revealed that some of the allegations were wrong, J&N promptly removed them from the pleading before Ms. Hajdini filed her motion for sanctions. Her claim that J&N withdrew "without correcting anything" is therefore refuted by the docket. *Id.*; ECF No. 53. Nothing has shown the allegations about Ms. Hajdini to be false, and counsel has no duty to drop supported allegations simply because a witness may since have retreated from her earlier account. Because Ms. Hajdini chose remedies outside Rule 11, she must prove counsel's subjective bad faith and obtain an explicit court finding of it.

Ms. Hajdini's motion, in short, offers credibility disputes and conjecture where the law demands clear and convincing proof of fraud on the Court. She has not carried her burden as to Plaintiff or as to his counsel. Her remaining demands, including the press notice, rest on the same missing proof. The Court should deny the motion in full.

## STATEMENT OF FACTS

### Ms. Rana's Recorded Interview Preceded Her Affirmation

The account Ms. Hajdini calls fabricated was recorded before any affirmation existed. In or about June 2025, Ms. Rana described the encounters to Plaintiff's then-counsel, Gregory S. Chiarello of Outten & Golden LLP. Norinsberg Supp. Decl. (ECF No. 102-1) ¶ 11.[1] For more than twenty minutes, counsel asked open-ended questions and Ms. Rana supplied the answers. Mr. Chiarello began by telling her that he did not "want to be overly restrictive," that "[t]here's no right or wrong answer," and that he was "really interested in hearing" "what you were able to observe." Tr. 3:16–20. Before turning to the encounters, Ms. Rana explained how she knew who Ms. Hajdini was. Her brother and his friend kept discussing the same woman from his

[1] The interview was captured in four audio files. Carroll Decl. Exs. A–D. Terra J. Carroll of Carroll Audio Services, an evidentiary media specialist, joined those files into a single recording without altering their content. She prepared one version without tones and one with a tone at each transition. *Id.* ¶¶ 5–9 & Exs. E–F. Magna Legal Services prepared a certified transcript of the combined recording dated October 29, 2026. Norinsberg Decl. Ex. A. J&N reviewed the audio before filing the original Complaint and relied on it in preparing that pleading. *Id.* ¶ 3. Citations to the transcript are by page and line (e.g., "Tr. 4:16").

workplace, so she "asked to see a picture, and LinkedIn was the only picture that was available." Tr. 5:23–6:6.

The first encounter took place in midsummer 2024. Ms. Rana was "walking out to my Uber" when she saw her brother and Ms. Hajdini "across the street, like on the corner." Tr. 4:4–21, 5:2–9. She described Ms. Hajdini as "all over him" and "trying to whisper in his ear." Tr. 4:16, 7:19–22. She also drew a line between Ms. Hajdini's conduct and her brother's response: "it's not like he was leaning into it or anything." Tr. 9:3–4.

The second encounter came later and took place inside Ms. Rana's own walk-up building. She was on her way to a friend's "pregame" one evening when she crossed paths with her brother and Ms. Hajdini as they arrived. Tr. 9:13–22, 13:21–24. Ms. Hajdini was "very, very intoxicated" and "super loud," and when Ms. Rana looked back, she saw her "stumbling up the stairs." Tr. 9:19–20, 11:23–25. The recording speaks for itself, and anyone listening can hear how Ms. Rana responded to counsel's open-ended questions. Carroll Decl. Exs. E–F. Ms. Rana's sworn affirmation, signed on July 28, 2025, recounts the same two encounters. Kreger Decl. (ECF Nos. 75, 77) Ex. 1 ¶¶ 5–9. Directly above her signature, she acknowledged her understanding "that this document may be filed in an action or proceeding in a court of law." *Id.* at 2.

Mr. Flott, a family friend who attended grade school with Ms. Rana, gave his own sworn affirmation in July 2025. Kreger Decl. Ex. 2 ¶ 1. He described a September 13, 2024 concert at Barclays Center at which a woman seated beside Plaintiff kept touching him while he "did not look comfortable with the situation." *Id.* ¶¶ 2–5. His affirmation goes on to recount events he saw and heard at the apartment later that month, while he was a guest there. *Id.* ¶¶ 9–13. Above his signature, too, is an acknowledgment that the document may be filed in court. *Id.* at 3. JPMC received both affirmations before any lawsuit was filed. JPMC Mem. at 3. On May 1, 2026, Daniel J. Kaiser of Kaiser Saurborn & Mair, P.C. submitted both in a state court action (the "State Action"), swearing that "[m]ultiple witnesses corroborate Plaintiff's legal claims." Kaiser Aff. ¶ 5 (NYSCEF Doc. No. 3).

When J&N commenced this action on July 27, 2026, it had already reviewed the recording. ECF No. 1. J&N reasonably relied on it, together with the sworn statements and other evidence, when it drafted the allegations against Ms. Hajdini. Norinsberg Decl. ¶ 3.

**The Recantation Conflicts With the Recording**

After JPMC subpoenaed her, Kreger Decl. Ex. 3, Ms. Rana signed a short declaration on October 22, 2026. It retracts her claim to have been an eyewitness: "I did not see them. I was not present for any of the events it describes." *Id.* Ex. 6 ¶ 3. On the conduct itself, it goes no further. Ms. Rana states that she has no personal knowledge of what her brother described and that she "cannot say whether" his allegations "are true or false." *Id.* ¶ 12.

The declaration contradicts both what Ms. Rana said in the recorded interview and her earlier sworn affirmation. She now denies that her brother visited her apartment at any point in 2024 or had independent access to it. *Id.* ¶ 11. In the recorded interview, she said that "my brother has a key to my place." Tr. 15:2–4; *see also* Tr. 5:13–16 ("[M]y brother has a key to my house."). She also explained that she was away "from like all of last summer through November" and that "typically people stay at my house when I'm gone." Tr. 14:17–20. It is also at odds with her affirmation. Although she now claims she was assured that her affirmation "would never be filed in court," Kreger Decl. Ex. 6 ¶ 9, the acknowledgment she signed says the opposite, *id.* Ex. 1 at 2.

Defendants filed it on October 22, 2026, and four days later Ms. Hajdini and JPMC moved for sanctions. Kreger Decl. ¶ 30; ECF Nos. 84–87, 90, 92–95. Ms. Hajdini "joins and endorses" JPMC's motion. Hajdini Mem. at 1 n.1. JPMC's motion accuses Plaintiff of manipulating that very interview, yet three days after filing, JPMC's counsel was still asking Plaintiff to produce the recording. JPMC Mem. at 10; Norinsberg Decl. Ex. B. Neither movant served a Rule 11 motion.

**Defendants Have No Recantation From Mr. Flott**

Ms. Hajdini calls Mr. Flott's affirmation "also perjured," Hajdini Mem. at 13, but he has not taken it back. Defendants have not obtained a declaration or deposition testimony from him.

JPMC concedes that he "has not yet recanted." JPMC Mem. at 6. Everything Defendants report about him reaches them secondhand through Ms. Rana's lawyer. That lawyer concedes he "had not been in personal contact with" Mr. Flott, and he simply relays what Mr. Flott's lawyer reportedly said. Kreger Decl. ¶¶ 21–22, 25–26. Although Mr. Flott's lawyer participated when counsel exchanged messages on October 13 and 14 about "proposed corrective affirmations," no further statement from Mr. Flott has surfaced. Rodriguez Oct. 22 Decl. (ECF No. 74-1) ¶¶ 31–32.

**J&N Decided to Withdraw Before Any Notice of a Recantation**

J&N decided on October 8, 2026 to withdraw as counsel, and it informed Plaintiff in writing. That decision came before J&N had heard of any possible recantation. ECF No. 57 ¶ 6; Norinsberg Supp. Decl. ¶¶ 2–4, 8. Ms. Hajdini herself recognizes that on October 9, 2026, J&N informed Plaintiff it could not continue as his counsel. Hajdini Opp. 10 (ECF Nos. 73, 74). Plaintiff asked the firm to hold its motion until after the holiday weekend so that he could look for new counsel, and J&N agreed. Norinsberg Supp. Decl. ¶ 5. J&N filed the Amended Complaint on October 12, which fell within the amendment deadline the Court had set. ECF Nos. 49, 53. The amendment corrected allegations that discovery had shown to be inaccurate. Among them were the allegations about Plaintiff's father, who Plaintiff had confirmed is alive in his September 30 responses to JPMC's requests for admission. Spangler Decl. (ECF No. 87) Ex. B, Resp. No. 14; *compare* ECF No. 1 ¶¶ 135, 209–210, *with* ECF No. 53.

The amendment left the witness-based allegations in place, because nothing comparable to Plaintiff's own admission had disproved them. They rested on a contemporaneous recorded interview and two sworn affirmations. J&N moved to withdraw two days later. ECF Nos. 55–57.

## ARGUMENT

### I. THE CONTESTED RECANTATION IS NOT PROOF OF FRAUD.

#### A. Ms. Hajdini Cannot Carry Her Clear and Convincing Burden.

To establish fraud on the court, Ms. Hajdini must prove by clear and convincing evidence that Plaintiff "sentiently set in motion some unconscionable scheme calculated to interfere with

the judicial system's ability impartially to adjudicate a matter." *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002) (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)). A fee sanction imposed under the inherent power likewise demands "an explicit finding" of bad faith. *Wilson v. Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012) (per curiam). That finding needs "clear evidence" and "a high degree of specificity in the factual findings." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (per curiam) (quoting *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)). Ms. Hajdini's motion falls well short of both standards. She has not deposed or cross-examined either witness. Nor does she offer forensic or documentary proof that either sworn account is false.

**B. Courts Treat Recantations With the "Utmost Suspicion."**

Ms. Hajdini treats the recantation as settled fact. On that foundation she seeks a fraud finding and a dismissal with prejudice, along with sanctions against counsel. Second Circuit law points the other way. It is "axiomatic that witness recantations 'must be looked upon with the utmost suspicion,'" because they are "very often unreliable and given for suspect motives." *Haouari v. United States*, 510 F.3d 350, 353 (2d Cir. 2007) (first quoting *Ortega v. Duncan*, 333 F.3d 102, 107 (2d Cir. 2003) (internal quotation marks omitted); then quoting *Dobbert v. Wainwright*, 468 U.S. 1231, 1233–34, 105 S. Ct. 34 (1984) (Brennan, J., dissenting from denial of certiorari)). *Ortega* directs courts to "weigh all the evidence of perjury before it, including but not limited to the recantation." 333 F.3d at 107. Those principles developed in habeas cases, but they carry the same force when a movant asks a court to treat a recantation as proof of fraud. Nor do conflicting statements show, on their own, which one is false. *Brown v. Artus*, 647 F. Supp. 2d 190, 206 (N.D.N.Y. 2009) (adopting report and recommendation) (rejecting a sanctions motion premised on an asserted conflict between a defendant's declaration and prison meeting minutes, because "the submission of inconsistent statements alone is insufficient to establish that a statement was false").

The two sworn accounts Ms. Rana has now given are inconsistent. In July 2025 she affirmed that she twice saw Ms. Hajdini with her brother, and in October 2026 she declared that she saw nothing. Kreger Decl. Ex. 1 ¶¶ 5–9; *id.* Ex. 6 ¶ 3. The June 2025 recorded interview describes the same two encounters as the July 2025 affirmation. Her recent declaration conflicts with her earlier statements on matters within her own knowledge, including her brother's access to her apartment and what she understood about how her affirmation could be used. *See supra* Statement of Facts. Ms. Hajdini picks the account she prefers and labels the other a fraud, without the weighing that *Ortega* requires. These conflicts raise genuine questions about Ms. Rana's credibility. They fall well short of clear and convincing proof that Plaintiff or his counsel knowingly set out to deceive the Court.

Judges in this District have declined to impose terminating sanctions on comparable records. The defendants in *Duka v. Alliance Tri-State Construction, Inc.*, No. 20 Civ. 6648 (ER), 2021 U.S. Dist. LEXIS 186975, at *13–14 (S.D.N.Y. Sept. 29, 2021), sought terminating sanctions on the theory that the plaintiff had tried to procure false testimony. Their proof consisted of text messages and a witness's sworn declaration that contradicted his own earlier written statement, and the court denied the motion. The decisions Defendants invoke rested on far more. *See Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 134–35 (2d Cir. 2023) (dismissal based on forensic proof that the plaintiff fabricated a text message); *Binh Thanh Imp. Exp. Prod. & Trade Joint Stock Co. v. Amazon.com Servs. LLC*, No. 23 Civ. 292 (LGS), 2026 U.S. Dist. LEXIS 152089, at *3–4, *10–12 (S.D.N.Y. July 9, 2026) (forensic proof developed at an evidentiary hearing); *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 281–84 (2d Cir. 2021) (findings that counsel lied under oath and violated court orders). Nothing of that kind exists here. Defendants' own principal authority makes the point. *Binh Thanh* set *Duka* apart because there "inconsistent statements and text messages did not clearly and convincingly establish wrongdoing," unlike the "repeated fabrications and cover-up" that Gilimex committed. *Binh Thanh*, 2026 U.S. Dist. LEXIS 152089, at *31–32 n.5. Ms. Hajdini's record is of the *Duka* kind.

Nor does the recantation deny the underlying harassment. What Ms. Rana retracts is her claim to have seen the encounters. As to the harassment itself, her position is that she "cannot say whether" her brother's allegations "are true or false." Kreger Decl. Ex. 6 ¶ 12. Ms. Rana adds that when her brother spoke with her in June 2025, he told her Ms. Hajdini "had sexually harassed and racially abused him," and she believed him. *Id.* ¶¶ 5–6. If the Court were ultimately to find that she did not witness the encounters, Plaintiff's own firsthand account of his dealings with Ms. Hajdini would be unaffected, because it never depended on a corroborating witness. Am. Compl. ¶¶ 55–84, 93, 97, 107. Ms. Hajdini's own written communications document part of it. *Id.* ¶¶ 60–62. In any event, a false eyewitness account would be the witness's own act. Ms. Hajdini's motion would then still require proof that Plaintiff knowingly procured that account as part of a scheme to defraud the Court. *McMunn*, 191 F. Supp. 2d at 445. Her papers do not come close to that showing.

## II. MS. HAJDINI SUBSTITUTES RHETORIC AND SPECULATION FOR PROOF.

### A. The Recorded Interview Differs Markedly From the "Script."

Ms. Hajdini's fabrication theory turns on a June 11, 2025 text message headed "Things to say," which contains three short lines of quoted dialogue. Rodriguez Decl. (ECF Nos. 94, 95) Ex. D at 00047. She says that through it Plaintiff "supplied the substance of Chandani's affirmation." Hajdini Mem. at 13. Her exhibit omits a number of pages from the same thread, including Bates pages 00041 through 00046. Rodriguez Decl. Ex. D. Even on the pages she chose, the comparison with the recording substantially undercuts the charge. The interview covers far more ground than the message. The message does not mention the LinkedIn photograph through which Ms. Rana recognized Ms. Hajdini. It does not say where or when either encounter occurred, and it does not describe her brother's reaction. It says nothing about the walk-up building or the friend's pregame. Nor does it mention the conversations Ms. Rana recalled between her brother and Mr. Flott about Ms. Hajdini, both at her apartment and at her parents' house in Virginia. Tr. 16:23–17:10. Each of those details is in the interview, and weeks later her affirmation set out the same two encounters. Kreger Decl. Ex. 1 ¶¶ 4–9.

Where the message and Ms. Rana's account overlap, they still diverge. The message's "I own your career," for example, surfaces in the interview only as a remark her brother "complained about" afterward, and she did not claim to have heard it. Tr. 12:25–13:3. Her affirmation reports a remark about "owning" and "Brownie," but she qualified it as something that "sounded like, 'I own you Brownie,' or something similar to that," and added that "at first I thought she was speaking to me." Kreger Decl. Ex. 1 ¶ 9. Those qualifications are absent from the message. The interview and the affirmation also omit the message's line that "no one will ever believe your word over mine." Ms. Hajdini has not shown by clear and convincing evidence that the message generated a fabricated account.

The coaching charge rests on nothing firmer. Ms. Hajdini takes up JPMC's charge that Plaintiff "coached her with notes and whispers during her interview with his attorney." JPMC Mem. at 10. JPMC made that charge before it had obtained the recording from Plaintiff. Three days after JPMC moved, its counsel asked J&N to confirm that the recording and transcript would be included in the next day's production. Norinsberg Decl. Ex. B. Ms. Hajdini repeats the charge anyway. The recording undercuts that charge. Prior counsel put open-ended questions to Ms. Rana that were plainly designed to draw out her own account of what she knew and what she saw. Tr. 3:16–20. The recording and its transcript are now before the Court.

What the recording captures sounds like a spontaneous conversation. The exchange moves quickly from question to answer, and Ms. Rana and counsel sometimes speak over one another. Tr. 7:20–25, 10:20–11:4; Carroll Decl. Exs. E–F. Follow-up questions draw out details the message never mentions, such as the layout of her building's entry, where "it's like the stairs, the airlock, little space with a mailbox." Tr. 10:9–15. When she cannot remember something she says so, as when counsel asked what Ms. Hajdini was wearing and she answered, "No, honestly." Tr. 15:15–19. She marks her inferences as inferences, as when she says, "I assume that's what it entailed in that moment." Tr. 13:4–5. Whatever weight the Court assigns it, the recording lends no support to the coaching and scripting accusations in these sanctions motions.

**B. Ms. Hajdini's Accusations Are Not Evidence.**

Lacking any proof of actual fraud, Ms. Hajdini turns to invective. She calls the case a "calculated fraud," Hajdini Mem. at 1, and says Plaintiff enlisted two witnesses "to lie on his behalf," *id.* at 13. She brands Mr. Flott's affirmation "also perjured" and suggests a criminal referral. *Id.* at 13, 19 n.12. Each of those charges assumes the very fact she must prove, which is that the witnesses' sworn accounts are false. Repeating the accusation in stronger terms does not supply that proof. Fraud on the court requires clear and convincing evidence of a deliberate scheme to interfere with the Court's ability to decide the case impartially. *McMunn*, 191 F. Supp. 2d at 445. A brief's characterizations are not evidence of any kind, and they cannot fill the gap.

Here, the witness on whom she relies will not say the allegations are false, and Mr. Flott has given no recantation at all. Kreger Decl. Ex. 6 ¶ 12; JPMC Mem. at 6. Neither witness has been deposed or cross-examined. Ms. Hajdini nonetheless asks the Court to treat one witness's contested recantation as proof that both witnesses lied. She also asks the Court to treat the absence of any recantation from the other witness as proof of perjury. A call for a criminal referral on that record does not strengthen her motion. It shows how far her accusations outrun the evidence. Ms. Hajdini has not shown by clear and convincing evidence that Plaintiff's claims are fraudulent or that this case must be dismissed on that ground.

**C. Attacks on Plaintiff's Credibility Do Not Prove That Any Witness Lied.**

Unable to show that either affirmation is false, Ms. Hajdini turns to Plaintiff's prior employment, his relationship history, and his statements about his father. Hajdini Mem. at 3–5. None of it shows that either witness invented an encounter. J&N removed the father allegations once discovery showed them to be wrong, and it served Plaintiff's admissions that his father is alive and that he has never been married. *See infra* Point IV.D; Spangler Decl. Ex. B, Resp. Nos. 14, 22. Ms. Hajdini even faults Plaintiff both for pleading the relationship allegation and for removing it. Hajdini Mem. at 5 (comparing ECF No. 1 ¶ 72 with ECF No. 53 ¶ 72). These attacks may bear on how a factfinder ultimately views Plaintiff. They are not evidence that either witness lied, and they do not amount to a fraud on the Court.

### D. Mr. Flott Has Not Retracted His Affirmation.

Ms. Hajdini brands Mr. Flott a perjurer, but she cannot point to a single statement in which he retracts his account. Instead, she relies on what Ms. Rana's lawyer says Mr. Flott's lawyer told him. Kreger Decl. ¶¶ 21–22, 25–26. That is hearsay upon hearsay, not evidence of perjury. The Second Circuit, moreover, has ruled that an unsworn letter from a recanting witness did not qualify as "evidence," "much less 'clear and convincing' evidence." *Haouari*, 510 F.3d at 354.[2] Here, Defendants have no statement from Mr. Flott at all. Ms. Rana's recantation cannot fill the gap, because her denials are confined to her own knowledge and she does not claim to have been at the apartment during his stay. Kreger Decl. Ex. 6 ¶ 11 ("[t]o my knowledge"). A later repudiation by Mr. Flott, if one ever came, would not end the inquiry either. The Court would still have to weigh it against the account he swore to in July 2025 and the rest of the record. Standing alone, it would not show that Plaintiff procured false testimony or that J&N relied on that account in bad faith.

## III. THE RACE DISCRIMINATION AND RETALIATION CLAIMS STAND ON THEIR OWN.

The paragraphs Ms. Hajdini attacks as fabricated are 85 through 98 of the Amended Complaint. Hajdini Mem. at 15. The race discrimination and retaliation claims at the center of this case have nothing to do with either challenged witness. Am. Compl. ¶¶ 1–31, 45–54, 57, 84, 100, 104–241. The proof of those claims comes from JPMC. Members of his own team used the phrase "the other brown boy" about him in a group chat and made a joke about his "rupees." *Id.* ¶¶ 3, 8–9, 111. JPMC removed him from work within three weeks of his written complaint of race discrimination. On the recorded call announcing that decision, its Employee Relations Partner acknowledged what the complaint alleged and disclaimed any suggestion that Plaintiff had done something wrong. *Id.* ¶¶ 143, 159–162, 167, 179. On those facts Plaintiff pleads claims

[2] Although *Haouari* decided that question on a successive habeas application, the same reasoning governs a motion that seeks sanctions for fraud.

under four statutes: Section 1981, Title VII, the NYSHRL, and the NYCHRL. *Id.* ¶¶ 242–248, 253–259, 263–265, 269–279, 283–285.

Dismissal is "the harshest of sanctions," reserved for "extreme situations," and it "has harsh consequences for clients, who may be blameless." *Mitchell v. Lyons Prof'l Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013) (internal quotation marks omitted). These claims would survive even if the Court gave the two affirmations no weight at all, and JPMC's own records and employees can prove them. Ms. Hajdini adopts JPMC's argument that the remaining claims "cannot be cleanly separated from the tainted proof." JPMC Mem. at 16 (quoting *Binh Thanh*, 2026 U.S. Dist. LEXIS 152089, at *32). That concern arose in *Binh Thanh* because any trial would have relied on the same witnesses who had authenticated the fabricated documents. Neither Ms. Rana nor Mr. Flott has anything to say about the group chats or JPMC's response to Plaintiff's complaint. A court weighing dismissal must also look at "lesser remedial measures." JPMC Mem. at 9 (quoting *Binh Thanh*, 2026 U.S. Dist. LEXIS 152089, at *20). Ms. Hajdini never explains why a narrower remedy would fall short, even if she could establish misconduct as to the allegations she challenges. The *Duka* court, confronting a similarly disputed record, found that "no other sanctions would be appropriate" either. *Duka*, 2021 U.S. Dist. LEXIS 186975, at *14 n.3.

## IV. MS. HAJDINI'S DEMAND AGAINST J&N FAILS AS A MATTER OF LAW.

### A. Ms. Hajdini Offers Speculation, Not Proof of Bad Faith.

Ms. Hajdini seeks sanctions against J&N under 28 U.S.C. § 1927 and the Court's inherent power. Hajdini Mem. at 12, 14–16. Each requires bad faith. A court that invokes its inherent power to punish an attorney's conduct on behalf of a client "must make an explicit finding of bad faith." *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000). That finding requires "clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes." *Eisemann*, 204 F.3d at 396 (quoting *Dow Chem.*, 782 F.2d at 344). Section 1927 reaches only conduct "so completely without merit as to require the conclusion that [it] must have been undertaken for some improper

purpose such as delay." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). Bad faith also "is personal" and "may not automatically be visited" on others. *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (quoting *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1089 (2d Cir. 1977)). Whatever Ms. Hajdini alleges against Plaintiff therefore cannot be charged to his lawyers.

Ms. Hajdini's own words show how much of her case against J&N rests on speculation. "Surely J&N obtained, reviewed, and investigated these communications." Hajdini Mem. at 11. "At any of these points, J&N either knew or should have known that Plaintiff's allegations were made up." *Id.* at 15. "Should have known" is the language of negligence. Sanctions against counsel under § 1927 and the inherent power require subjective bad faith, and Ms. Hajdini's own formulation shows that she cannot make that showing. Her fallback is that bad faith may be inferred "from the clear lack of merit" of counsel's claims. *Id.* at 12 (quoting *Banus v. Citigroup Glob. Mkts., Inc.*, 757 F. Supp. 2d 394, 399 (S.D.N.Y. 2010) (Kaplan, J.)). *Banus* drew that inference only after the Court had dismissed the claims. It then found that the suit was "completely without merit" and an attempt at "simply stalling" a debt collection. 757 F. Supp. 2d at 400, 402. No court has found any claim here meritless, and allegations resting on a recorded interview and two sworn affirmations are not "entirely without color."

*Rossbach* shows how high the bar is. The client's fabrication there had been proven after a full evidentiary hearing, and the district court found that counsel had facilitated it through negligent or reckless conduct. Even so, the Second Circuit set aside the sanction against counsel and sent the matter back so that the district court could apply the correct standard, because the record lacked an explicit finding of bad faith. *Rossbach*, 81 F.4th at 131, 136, 143–44. *Binh Thanh*, on which Defendants principally rely, is to the same effect. After finding fraud on forensic proof developed at an evidentiary hearing, the court considered on its own whether to sanction the plaintiff's lawyers. It declined, explaining that such sanctions "require clear evidence and an explicit finding that counsel acted in bad faith." *Binh Thanh*, 2026 U.S. Dist. LEXIS 152089, at *35 n.6. If proven client fraud was not enough to sustain sanctions against

counsel without an explicit finding of bad faith, a disputed recantation and an unretracted affirmation cannot sustain them here.

**B. Ms. Hajdini Mislabels Advocacy as Bad Faith.**

Ms. Hajdini next tries to recast counsel's advocacy as misconduct. She points to J&N's positions in the State Action, including its description of the demand for the witnesses' identities as "witness intimidation with a caption on it" and Mr. Norinsberg's statement that he "stands behind every filing he has made." Hajdini Mem. at 9–10. Those statements addressed a contested discovery question that the state court resolved by order, and Plaintiff complied. JPMC Mem. at 4; Kreger Decl. ¶ 13. Arguing hard for a position a court later rejects is not bad faith. Ms. Hajdini also cites press statements describing "sworn witness accounts" and an "extensive pre-suit investigation." Hajdini Mem. at 10. Sworn witness accounts did exist, and Ms. Hajdini identifies nothing in those statements that was false when made. New York's trial-publicity rule reaches a lawyer's public statements only when they "will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." N.Y. Rules of Prof'l Conduct R. 3.6(a). The Supreme Court has upheld that standard as "a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair trials." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075, 111 S. Ct. 2720, 2745 (1991). Ms. Hajdini does not identify a single statement that posed any risk to this proceeding, let alone the substantial likelihood of material prejudice the rule requires.

Ms. Hajdini also describes online abuse directed at her. Hajdini Mem. at 2, 11–12, 16–17. J&N condemns that abuse without reservation. Ms. Hajdini, however, offers no evidence that the firm had any role in it, and she cannot attribute the conduct of strangers to counsel because counsel represents her adversary. Stripped of these points, what remains is J&N's representation of Plaintiff and its decision to keep the witness-based allegations in the Amended Complaint. Advocacy for a client is not an improper purpose, and the retained allegations are addressed below. *See infra* Point IV.D.

**C. J&N Reasonably Relied on the Recording and the Affirmations.**

From the outset, the challenged allegations rested on a colorable basis, and J&N acted reasonably in relying on it. None of that evidence originated with J&N. What it inherited was a recording of Ms. Rana answering open-ended questions from Plaintiff's prior counsel, along with two sworn affirmations given weeks later. Another firm had already filed both affirmations in the State Action and attested that multiple witnesses corroborated Plaintiff's claims. *See supra* Statement of Facts; Kaiser Aff. ¶ 5. Ms. Hajdini identifies no role J&N played in preparing either affirmation, and she has not shown that either one is false.

Nor did J&N take the affirmations on faith. The firm reviewed the recorded interview before filing the original Complaint. J&N reasonably relied on that recording, together with the sworn statements and other evidence, in drafting the allegations about Ms. Hajdini in both pleadings. Norinsberg Decl. ¶ 3. Under *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329–30 (2d Cir. 1995), a lawyer "is entitled to rely on the objectively reasonable representations of the client." The same decision explains that when the record shows "an objectively reasonable evidentiary basis for the claim," a court need not examine "the adequacy of the attorney's pre-filing investigation." *Id.* at 1329 (quoting *Calloway v. Marvel Ent. Grp.*, 854 F.2d 1452, 1470 (2d Cir. 1988), *rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 110 S. Ct. 456 (1989)). That rule answers Ms. Hajdini's speculation about what J&N "[s]urely" investigated, Hajdini Mem. at 11, and it carries even more weight under the bad-faith standard that governs her motion. J&N relied not only on Plaintiff's own firsthand account of his dealings with Ms. Hajdini, Am. Compl. ¶¶ 55–84, 93, 97, 107, but also on two sworn affirmations and the recorded interview, each of which corroborated that account. Two other firms had obtained or filed the affirmations before J&N became involved. Acting on that record does not show bad faith. It is what a careful litigator would have done in the same position.

**D. J&N Corrected What Discovery Disproved.**

Ms. Hajdini also faults J&N for continuing to litigate after October 9 and for seeking to withdraw "without correcting anything." Hajdini Opp. 10, 16; Hajdini Mem. at 15. Her argument

merges two distinct issues. The first concerns counsel's duties. Although J&N had resolved to withdraw, it had not yet asked the Court for leave, and it was still counsel of record. Local Civ. R. 1.4(b); N.Y. Rules of Prof'l Conduct R. 1.3(b), 1.16(d); *see* ECF No. 118 at 2.[3] That role obligated J&N to fix allegations that discovery had disproved, and it did so. On September 30, 2026, J&N served Plaintiff's admission that his father is alive. Spangler Decl. Ex. B, Resp. No. 14. J&N promptly amended the Complaint to delete every allegation concerning Plaintiff's father. *Compare* ECF No. 1 ¶¶ 135, 209–210, *with* ECF No. 53. JPMC, whose motion Ms. Hajdini joins, nonetheless told the Court that Plaintiff had "taken no steps to correct his pleading." JPMC Mem. at 8. Ms. Hajdini adopted that accusation after the docket had already refuted it. The failure she asks the Court to punish never occurred.

The second issue asks whether the allegations about Ms. Hajdini had been shown to be false, and they had not. Ms. Hajdini says Mr. Selvey "expressly told" Mr. Norinsberg that Ms. Rana was recanting. Hajdini Mem. at 15. Mr. Norinsberg's sworn account of that October 12 call is already before the Court: Mr. Selvey said only that his client "was considering recanting" and that "no final decision had yet been made." Norinsberg Supp. Decl. ¶ 8. Her own lawyer's declaration, which recounts a later call, says neither "expressly" nor "was recanting." Rodriguez Oct. 22 Decl. ¶ 34. Ms. Rana did not sign her declaration until October 22. Kreger Decl. ¶ 30 & Ex. 6. A recantation, even once signed, would not have required J&N to amend the pleading a second time. At most it would have called into question the credibility of a witness who had by then given conflicting accounts, and it would have done nothing to Mr. Flott's sworn account. What Defendants now offer is exactly that kind of contested recantation, from a witness who "cannot say whether" the allegations "are true or false," Kreger Decl. Ex. 6 ¶ 12, and nothing at all from Mr. Flott. Counsel could reasonably continue to rely on the earlier sworn evidence. *See*

[3] The Court granted J&N's motion to withdraw effective November 9, 2026. ECF No. 118. J&N files this memorandum for itself and, with Plaintiff's consent, as his limited-scope counsel on the sanctions motions only. *See* ECF No. 129 (Notice of Limited-Scope Appearance); ECF No. 102 at 9 (consent to retained jurisdiction).

Fed. R. Civ. P. 11(b). J&N fixed what discovery showed to be wrong and kept what the evidence supported.

**E. Ms. Hajdini Chose to Forgo Rule 11 and Must Prove Subjective "Bad Faith."**

What Ms. Hajdini really challenges is J&N's decision to keep the witness-based allegations, and that challenge belongs under Rule 11. Her reliance on *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023), for the "later advocacy" of a statement confirms as much. Hajdini Mem. at 16; *see* Fed. R. Civ. P. 11(b)(3). Ms. Hajdini did not bring that theory under Rule 11. She relies on § 1927 and the inherent power, and those authorities demand more. Had she served a Rule 11 motion and allowed counsel twenty-one days to withdraw or correct the challenged contention, she would have needed to show only objective unreasonableness. Fed. R. Civ. P. 11(c)(2); *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175–77 (2d Cir. 2012). Having chosen other remedies, she must prove counsel's subjective bad faith by clear evidence, and the Court must expressly find it. *Seltzer*, 227 F.3d at 42; *Wilson*, 702 F.3d at 724; *Rossbach*, 81 F.4th at 143–44.

That heightened standard reflects the caution the inherent power demands. The Supreme Court has cautioned that inherent powers "must be exercised with restraint and discretion." Where the Rules speak to the conduct in question, "the court ordinarily should rely on the Rules rather than the inherent power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 50, 111 S. Ct. 2123, 2132, 2136 (1991). When a court raises Rule 11 on its own, counsel likewise has no safe harbor, and in that setting the Second Circuit requires subjective bad faith. *In re Pennie & Edmonds LLP*, 323 F.3d 86, 91 (2d Cir. 2003) (vacating sanction against firm that had permitted client to submit false affidavit); *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (per curiam). *Mata* applied that standard and drew the line that decides this motion: "While an inadequate inquiry may not suggest bad faith, the absence of any inquiry supports a finding of bad faith." 678 F. Supp. 3d at 464. The lawyers in *Mata* "continued to stand by the fake opinions after judicial orders called their existence into question." *Id.* at 448. J&N reviewed a recorded

interview and two sworn affirmations before it pleaded, and no court has found any of that evidence false.

## V. MS. HAJDINI'S DEMANDS FOR FEES AND OTHER RELIEF HAVE NO BASIS.

### A. Ms. Hajdini Ties No Fees to Any Conduct by J&N.

Ms. Hajdini asks that J&N be held jointly and severally liable for "all fees Ms. Hajdini has incurred since the outset of this litigation," including "the state court litigation." Hajdini Mem. at 16, 18–19. The Supreme Court confines an inherent-power fee award "to the fees the innocent party incurred solely because of the misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104, 137 S. Ct. 1178, 1184 (2017). An award covering all of a party's fees is reserved for exceptional cases. Even then, a court may shift every fee from the start of the suit, or from some later point, only if none of those fees would have been incurred but for the misconduct. *See id.* at 110–11, 137 S. Ct. at 1187–88. This litigation began long before J&N. Plaintiff's internal complaint was submitted through prior counsel in May 2025. Hajdini Mem. at 5. The affirmations were signed in July 2025. Kreger Decl. Exs. 1, 2. Another firm then commenced the State Action. Kaiser Aff. ¶ 5. J&N's involvement began when Plaintiff retained the firm on June 2, 2026. Norinsberg Decl. ¶ 3. J&N cannot be the but-for cause of a lawsuit that was already underway. Section 1927 imposes the same causal limit, because it reaches only fees "reasonably incurred because of such conduct." 28 U.S.C. § 1927. Ms. Hajdini identifies no fee caused by any act of bad faith by J&N, and she cannot shift any portion of her defense bill to opposing counsel, much less the entire bill, simply by calling the action fraudulent. *See Seltzer*, 227 F.3d at 42.

### B. The Court Should Not Order a Press Campaign.

Ms. Hajdini asks the Court to order J&N to send a "Court-approved factual notice" to every outlet and reporter with which Plaintiff, J&N, "or any third party publicity agents communicated." Hajdini Mem. at 17–18. No finding supports that demand. The notice she proposes would place the Court's authority behind one side's version of a contested dispute that

no factfinder has resolved. *Liebowitz* approved an order requiring a lawyer to serve the sanctions opinion on his clients and file it in his cases. 6 F.4th at 272, 292–93. That lawyer had repeatedly lied to the court, including under oath, and had compiled a record of sanctions from judges across the country. *Id.* at 272, 281–82. Nothing in the decision required a firm to publicize an adversary's account of an unresolved dispute. An order compelling counsel's speech about a pending matter, extending to outlets contacted by unnamed third parties, would raise serious First Amendment concerns. *Cf. Gentile*, 501 U.S. at 1075–76, 111 S. Ct. at 2745.

### C. Ms. Hajdini Has No Basis to Question Counsel Under Oath.

Ms. Hajdini also asks the Court to order J&N to produce its documents and communications and to require Mr. Norinsberg and his colleagues "to testify under oath about what they knew, when they knew it." Hajdini Mem. at 16 n.10. The request is as sweeping as it is baseless. It is not confined to particular facts or tied to any showing of need, and as framed it would reach J&N's communications with Plaintiff and its work product, which remain protected and belong to Plaintiff. Rule 11 "does not require a party or an attorney to disclose privileged communications or work product in order to show that the signing of the pleading, motion, or other paper is substantially justified." Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment. J&N has disclosed what is reasonably necessary to respond to the accusation against it. N.Y. Rules of Prof'l Conduct R. 1.6(b)(5)(i). If the Court concludes that any further inquiry is warranted, it should be confined to specific, non-privileged facts and conducted with appropriate protections. Her suggestion that the Court refer the matter to prosecutors, Hajdini Mem. at 19 n.12, is utterly without foundation as to J&N and a gross overreach.

## CONCLUSION

Ms. Hajdini has presented a contested recantation from one witness and a secondhand forecast about another. That is a credibility dispute, not a fraud on the Court, and it is properly tested through discovery and cross-examination. Ms. Hajdini has shown no bad faith by J&N, and her remaining demands rest on the same missing proof. Plaintiff and J&N respectfully

request that the Court deny the motion in its entirety, including the requested referral directed at J&N.

Dated: New York, New York
November 9, 2026

Respectfully submitted,

JOSEPH & NORINSBERG, LLC

By: ______________________
Jon L. Norinsberg
825 Third Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
jon@norinsberglaw.com

*Attorneys for Joseph & Norinsberg, LLC and, for the limited purpose of opposing the motions for sanctions, for Plaintiff Chirayu S. Rana*

## CERTIFICATE OF COMPLIANCE

Local Civil Rule 7.1(c) limits a memorandum in opposition to a motion to 8,750 words, and the Individual Practices of the Honorable Lewis A. Kaplan allow such a memorandum up to thirty-five double-spaced pages. I certify that this Memorandum of Law complies with both. Counting footnotes but not the caption, the tables of contents and authorities, the signature block, or this certificate, the Memorandum of Law contains 7,652 words according to the word-processing program used to prepare it. It is no longer than thirty-five double-spaced pages.