UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------- X

CHIRAYU S. RANA,

Plaintiff,

-against-

JPMORGAN CHASE BANK, N.A., LORNA HAJDINI, BRANDON GRAFFEO, JON WOLTER, and KELLY CROWE,

Defendants.

----------------------------------------------------- X

Case No. 1:26-cv-06351-LAK

**DEFENDANTS' RESPONSE TO DECLARATION OF JON L. NORINSBERG, ESQ. PURSUANT TO THE COURT'S NOVEMBER 2, 2026 ORDER**

Defendants JPMorgan Chase Bank, N.A. ("JPMorgan"), Lorna Hajdini, Brandon Graffeo, Jonathan Wolter, and Kelly Crowe (together, "Defendants") write jointly in response to the Declaration Pursuant to the Court's November 2, 2026 Order (the "J&N Declaration") (Dkt. No. 128) submitted by Plaintiff's current counsel at Joseph & Norinsberg, LLC ("J&N"). J&N has not satisfied the Court's requirements. Defendants therefore request that J&N be prevented from withdrawing as counsel until counsel has remedied the issues set forth below. In addition, Defendants request that the Court order that all documents be appropriately maintained and preserved, and that Plaintiff be ordered to obtain new counsel by November 30, 2026, and if no counsel has appeared by that date, complete his document production within 21 days of that date to avoid any further delay of discovery in this case.

## I. Relevant Procedural Background

J&N moved to withdraw as counsel for Plaintiff on October 14, 2026. Dkt. Nos. 55–57. On October 19, 2026, the Court granted Plaintiff additional time to respond to Ms. Hajdini's counterclaims and to respond to written discovery requests where responses "will become due

after the date hereof" through and including November 6, 2026, but then expressly ordered that Plaintiff's "preexisting obligations to produce documents on or before October 16 . . . are unaffected by this order." Dkt. No. 68. The Court then granted J&N's withdrawal motion, effective November 9, 2026, so long as certain conditions were satisfied, including J&N filing by November 8, 2026, "an affidavit or declaration attesting that plaintiff's entire 'case file' has been preserved and all requested materials, including approximately 50,000 documents, forensic images and electronically stored information previously collected, either have been produced or remain intact and available following their withdrawal." Dkt. No. 118.

Defendants JPMorgan and Ms. Hajdini served requests for production of documents on Plaintiff on August 25, 2026 and agreed to extend Plaintiff's deadline to produce documents responsive to those requests until October 16, 2026. J&N did not make a preliminary production of documents on Plaintiff's behalf until October 30, 2026. On November 4, 2026, counsel for Lorna Hajdini raised with J&N specific deficiencies regarding Plaintiff's first production, including, *inter alia*: (1) several text messages produced appear to refer to attachments, voicemails and/or links that were not otherwise included in Plaintiff's production;[1] (2) multiple text messages produced appear to have gaps/missing communications;[2] (3) Plaintiff produced a significant number of text messages bearing the word "DELETED" (either in entire chains or specific messages within a chain) without explaining what that means; (4) Plaintiff produced certain materials (e.g., screenshots, photographs, and other renderings of electronic communications) in

[1] This includes, for example, a text message that Plaintiff's (then) girlfriend sent Plaintiff stating "Read all of this," "Please read all of it" and "File a complaint verbatim to what it says there ASAP", but the production does not include the materials she is telling Plaintiff to read.

[2] This includes, for example, a text message where Plaintiff's (then) girlfriend asks Plaintiff, "Did you say anything to Jon" (presumably Jonathan Wolter) and this message is followed by three responses from Plaintiff that are blank (and have the "DELETED" reference), to which his girlfriend responds, "Just send him the first one."

PDF, without any metadata; (5) where the initial production did include metadata, the underlying RSMF files themselves were not produced, making it virtually impossible to reliably determine which attachment (assuming they were even produced) corresponds to which particular message or fully evaluate message-level information concerning deletions, attachments, and other provenance issues; and (6) various materials were redacted on the basis of purported privilege, but no privilege log had been produced. Counsel for Ms. Hajdini requested confirmation that J&N would cure the issues through a complete production by November 8, 2026. This communication is attached hereto as **Ex. A**. That same day, counsel for JPMorgan joined in each of the positions and requests taken by counsel for Ms. Hajdini and identified certain additional deficiencies. This communication is attached hereto as **Ex. B**. J&N did not respond to either of counsel's November 4, 2026 emails. On November 6, 2026, counsel for JPMorgan followed up regarding Plaintiff's production, asked for J&N's availability to meet and confer, and specifically identified concerns with J&N making the Court-ordered certification before addressing the discovery deficiencies identified by Defendants:

> Your firm cannot make the certification required by the Court's order while substantial questions remain unanswered concerning missing documents and attachments, incomplete communications, deleted messages, and underlying electronic records and metadata. These materials fall squarely within the Court's reference to "all requested materials." Unless and until your firm investigates and accounts for these missing materials and other deficiencies, an attestation that the missing materials have been preserved, much less that they remain "intact and available," would not be accurate, particularly in light of the concerns we've identified this week. Merely asserting that your firm retains Plaintiff's case file does not satisfy the Court's order[.]

**Ex. C**. Again, instead of complying with its discovery obligations, J&N not only did not respond to JPMorgan, but instead filed the J&N Declaration in an apparent attempt to absolve itself of having to do so. *See, e.g.* J&N Declaration ¶ 19 (purporting to represent to this Court that a

successor counsel, if any, would be able to consult with Plaintiff, and evaluate the identified discovery issues).

Shortly before filing the J&N Declaration, counsel made a supplemental document production on Plaintiff's behalf, bringing the total number of documents produced by Plaintiff to approximately 2,770 documents of the 50,000 they assert were imaged from Plaintiff's devices. That production did not rectify *any* of the deficiencies or issues Defendants had identified with regard to the October 30 production.

Plaintiff's counsel has not served responses to the interrogatories served by Brandon Graffeo on October 2, 2026.

## II. There Are Glaring Deficiencies in the Discovery Produced Thus Far That J&N Is Uniquely Capable of Rectifying

While the Court has not expressly required that J&N complete Plaintiff's entire document production prior to withdrawal, the production J&N has to date made is self-evidently deficient—and J&N is in the best position to cure these deficiencies on Plaintiff's behalf. The deficiencies Defendants have identified so far to J&N do not concern the size of the production or the fact that additional documents exist. Rather, they relate to internal omissions and inconsistencies within the set of documents that *were* produced. Those deficiencies include missing attachments, missing metadata, references to deleted documents/communications which have not been clarified, and references to other non-privileged communications that have not been produced. J&N has also failed to produce signed statements allegedly in their possession since the outset of the case.

Instead of addressing any of Defendants' concerns with the documents and ESI J&N produced, J&N filed the Declaration attesting that Plaintiff's case file has been preserved. This latest maneuver by J&N falls short of their obligations and seeks to circumvent the narrow and

specific conditions the Court expressly imposed in its November 2, 2026, Order for J&N's withdrawal as counsel. *See* Dkt. No. 118.

The J&N Declaration contends the two productions it has made "completes [their] review and production of responsive, non-privileged documents." J&N Declaration ¶ 13. J&N further asserts that they are "not in a position to undertake" work to cure these deficiencies. J&N Declaration ¶ 18. But prior to withdrawing, J&N should be required, at a minimum, to identify whether: (1) the identified missing documents and communications exist in the "case file" they represent that they maintain; (2) the identified documents or portions of documents were deleted, and if so, when, why, and by whom, as right now the deletions apparent in the production are unexplained; (3) any documents were withheld on the basis of privilege, and if so, produce a privilege log compliant with all applicable rules; (4) metadata exists such that documents can be reproduced with that information later on; and (5) reproduce materials for which they included metadata to include underlying RSMF files to allow correlation of communications and attachments. J&N should also be required to produce the materials they have repeatedly referenced in the pleadings they submitted on Plaintiff's behalf. None of this requires collaboration with Plaintiff and J&N is certainly in a position to cure these deficiencies. Indeed, it would be far less burdensome for J&N, which has already reviewed these documents, to complete that process rather than pushing that burden to successor counsel, if any, who would be starting anew.

With respect to signed statements that should be produced by J&N, Plaintiff's Amended Complaint (Dkt. No. 53) specifically identifies documents Plaintiff "preserved" but has not produced. *See* Am. Compl. ¶¶ 213, 221, 224 and 298 (chronologically, identifying preserved (1) "text messages, and meetings" with a Senior Partner of an unidentified fund; (2) "memorialized . . . text message" from a Managing Partner "corroborating JPMorgan's interference;" (3) "executed

sworn affidavits in Mr. Rana's possession" from certain JPMorgan employees; and (4) "witness interviews"). These alleged statements are specifically referenced in the pleadings ***drafted and filed by J&N*** and therefore are presumably in J&N's possession (and have been since commencement of this action).[3] As with the other deficiencies, the Court should order J&N to either produce the records or admit that they do not exist.

It merits note that Plaintiff's October 30 supplemental Rule 26(a)(1) Initial Disclosures, supplemental responses to Ms. Hajdini's Interrogatories, and Plaintiff's supplemental responses to JPMorgan's Interrogatories are similarly deficient. On November 3, 2026, Ms. Hajdini's counsel sent J&N a letter outlining those deficiencies as they pertain to Ms. Hajdini's Interrogatories. J&N did not respond. Also on November 3, 2026, JPMorgan's counsel sent J&N a letter outlining deficiencies in Plaintiff's supplemental Rule 26(a)(1) Initial Disclosures and supplemental responses to JPMorgan's Interrogatories. J&N did not respond. Instead, J&N made a blanket assertion that it could not cure these deficiencies because they require "substantive engagement between Plaintiff and his counsel" and J&N is unable to undertake this engagement "[i]n light of the breakdown in the relationship." J&N Declaration ¶ 18. This is insufficient. And finally, J&N has not submitted any responses to the interrogatories served by Mr. Graffeo on October 2, 2026, (which J&N concedes were served before J&N filed its motion to withdraw), despite getting a short extension to do so on October 15, 2026. J&N Declaration ¶ 15.

Defendants respectfully request that Your Honor require J&N to fully cure ***all*** identified deficiencies in the discovery it has produced—identified herein and in the referenced

[3] Further, Plaintiff's production to date includes a text message from Plaintiff to his then-public relations firms stating, "We have 3 new witnesses coming forward. Signed documents." J&N should also produce all such signed documents or confirm they do not exist.

communications from Defendants—prior to being permitted to withdraw from this case, and order Plaintiff to cooperate fully in that process.[4]

## III. Plaintiff's Documents Must Be Maintained and Not Purged

The Court ordered J&N to either produce the "requested materials" in full or make concrete arrangements to ensure their preservation. J&N has not adequately complied with either option. The J&N Declaration notes that Plaintiff's case file will be maintained on J&N's secure server and on the vendor's secure platform until November 30, 2026, or, to the extent that Plaintiff has not retained a successor counsel by November 30, 2026, the files will remain in J&N's possession until December 30, 2026. J&N Declaration ¶¶ 6, 9. This is plainly insufficient and highly likely to result in prejudice to Defendants.

Even if Plaintiff can secure new counsel to litigate his claims in this case, there is no guarantee that will happen by December 30, 2026 (and as the Court has seen, new counsel may elect to withdraw, too, as recently occurred with the successor counsel Plaintiff tried to obtain to replace J&N). J&N's arbitrary and unilateral deadline on maintaining Plaintiff's files is unprecedented and creates a serious risk that documents will be lost, destroyed, or concealed by Plaintiff. For this reason, Defendants submit that J&N should be required to maintain the documents on its vendor's secure platform until the production has been completed by J&N or its successor.

Defendants understand there are costs associated with such maintenance. Against the backdrop of allegations that have now been shown to be fabricated, including through Plaintiff's

---

[4] The J&N Declaration notes that Defendants have not produced documents in connection with Plaintiff's document requests. However, Defendants' document productions are not yet due and Defendants agreed to produce documents on or before November 23, 2026. In any event, *Defendants'* document productions have no bearing on J&N's request to withdraw.

own sister's recanted affidavit, any burden in continually maintaining the documents until they can be produced is far outweighed by the prejudice to Defendants if the documents are *not* maintained by J&N. This is particularly the case where, as noted above, even the documents produced so far reflect that they have been altered and/or fail to account for relevant and responsive materials and metadata.

J&N has also admitted that Plaintiff has secured litigation funding in this matter. *See* Dkt. No. 38.[5] Either J&N or that funder, having undertaken the risks associated with this litigation, should be required to bear the costs of preserving the documents. It would simply be unfair for the risk of their loss or destruction or further delay to fall on Defendants.

## IV. Plaintiff Must Be Ordered to Preserve All Relevant Material and Proceed with Production to Avoid Further Prejudice to Defendants

As described in previous submissions (*see* Dkt. Nos. 74, 76, 78), Defendants have already been significantly prejudiced by the delay in Plaintiff's discovery responses and document productions. It is not clear whether Plaintiff will be able to secure a fifth law firm willing to undertake his representation, but Defendants should not be required to wait indefinitely for that decision to be made, or for Plaintiff's document production to be completed or discovery deficiencies rectified. Accordingly, Defendants request that Your Honor require Plaintiff to find successor counsel on or before November 30, 2026—with his complete document production and deficiency corrections to be made within 21 days of that date—or proceed *pro se*.[6]

---

[5] Notably, when Ms. Hajdini's counsel asked J&N to identify the funder(s), they refused to do so. Ms. Hajdini also served Interrogatories seeking the identity of the funder(s), to which J&N has not responded. J&N should also be required to identify the funder(s) and/or sources of Plaintiff's litigation funding before they are permitted to withdraw.

[6] Should Plaintiff ultimately proceed *pro se*, Defendants will respectfully ask the Court to provide appropriate procedural protections to ensure that discovery is completed timely and without further concealment or obstruction by Plaintiff.

In the meantime, since no substitute counsel has appeared on Plaintiff's behalf to date, the Court should order Plaintiff personally to take all steps necessary to preserve—and not to cause to be deleted or destroyed—all documents, communications, records, data, and ESI concerning the claims and defenses at issue in this litigation. Given that Plaintiff may soon be proceeding *pro se* and indications that Plaintiff has already undertaken efforts to delete potentially relevant information,[7] Plaintiff should be reminded of his preservation obligations, which include suspending routine deletion and ensuring that all documents, communications, records, data, and ESI in his possession, custody, or control that may relate to this litigation are preserved, regardless of format or location, including active data, archived data, backup data, cloud-hosted data, and information maintained by any third-party service-provider acting on his behalf.

## CONCLUSION

For the reasons stated herein, Defendants request that Your Honor require: (1) J&N to continue as counsel of record until deficiencies in the document productions to date, initial disclosures, and responses to outstanding discovery requests have been fully made and cured; (2) J&N to maintain all documents collected, maintained, or otherwise stored on their vendor's secure server without their unilaterally imposed time limitation and until an appropriate transfer can be made; (3) Plaintiff to secure new counsel on or before November 30, 2026, or proceed *pro se* at that time if new counsel is not secured, with discovery responses and document productions to be made within 21 days of that date; and (4) Plaintiff to immediately take all steps necessary to preserve all materials in his possession in any way related to this litigation.

---

[7] By way of example, Plaintiff's production indicates that in May 2026, after he filed suit in the Supreme Court of the State of New York, he sought out a vendor to conduct "cyber hygiene" and have his "phone and cellular devices cleaned."

Dated: November 10, 2026

**GREENBERG TRAURIG, LLP**

*/s/ Sylvia E. Simson*
Sylvia E. Simson
Lauren Rosenblatt
Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9200
Sylvia.Simson@gtlaw.com
Lauren.Rosenblatt@gtlaw.com

Kristine J. Feher
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Feherk@gtlaw.com

*Attorneys for Brandon Graffeo, Jonathan Wolter, and Kelly Crowe*

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Melissa C. Rodriguez*
Melissa C. Rodriguez
Sam S. Shaulson
101 Park Avenue
New York, NY 10178
(212) 309-6001
Melissa.Rodriguez@morganlewis.com
Sam.Shaulson@morganlewis.com

*Attorneys for Lorna Hajdini*

**WINSTON TAYLOR LLP**

*/s/ Cardelle B. Spangler*
Cardelle B. Spangler (*admitted pro hac vice*)
Sarah N. Kreger (*admitted pro hac vice*)
300 N. LaSalle Dr.
Chicago, Illinois 60654
(312) 558-5600
Cardelle.Spangler@winstontaylor.com
Sarah.Kreger@winstontaylor.com

*Attorneys for JPMorgan Chase Bank, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 10, 2026, I caused a copy of the foregoing to be filed using the Court's CM/ECF system, which I understand will transmit notice to all counsel of record.

*/s/ Sarah N. Kreger*

*Attorney for Defendant JPMorgan Chase Bank, N.A.*